UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:

LEXI DEVELOPMENT COMPANY, INC[1].,

Debtor.

_____/

Case No. 10-27573-AJC
Chapter 11

## EMERGENCY MOTION PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 552 AND FED. R. BANKR. P. 4001 AND 9014, FOR AN INTERIM AND FINAL ORDER AUTHORIZING THE USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION
### (Emergency Hearing Requested)

### Basis For Emergency Relief

**The Debtor seeks to continue to operate its business in the ordinary course, to preserve the value of the estate, and to facilitate the Debtor's reorganization. Without the immediate use of cash collateral, the Debtor will not be able to meet its obligations or operate its business and continue to develop, market, sell and rent residential and commercial units necessary for its day-to-day operations. The Debtor believes a hearing on this Motion is required as soon as possible.**

Lexi Development Company, Inc. ("***Debtor***"), by and through its undersigned counsel, moves

this Court, on an emergency basis, pursuant to 11 U.S.C. §§ 361, 362, 363, and 552, Fed. R. Bankr.P.

4001(b) and 9014, and Local Rules 4001-2, 9013-1(F) and (G) and 9075-1, for the entry of an

Interim and Final Order Authorizing the Use of Cash Collateral and Granting Adequate Protection

---

[1]The Debtor's current mailing address is 7301 SW 57 Ct, Ste 565, South Miami, FL 33143. The last four digits of the Debtor's tax identification number are 1551.

Firm Clients\5294\5294-1\00723638.WPD.

("*Emergency Motion*"). In support of the Emergency Motion, the Debtor states as follows:

## Background

1.     On June 23, 2010, ("*Petition Date*"), the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code.

2.     This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 157(b) and 11 U.S.C. §§ 105 and 363(c)(2).

3.     The Debtor continues to manage and operate its business as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed.

4.     The Debtor is a Florida corporation which owns and is developing a 164 Unit, 19 story, mixed-use residential and retail bayview condominium development located at 1700 Kennedy Causeway, North Bay Village, Florida, known as the "The Lexi" ("*Property*").

5.     As of the Petition Date, 114 of the 164 residential units in the Property have been sold and closed. The Debtor and its principal have spent, and will continue to spend, significant time and resources developing, managing, marketing, selling and renting the remaining units and commercial space. Despite operating within one of the worst, if not the worst, real estate markets in South Florida history, the Debtor has been extremely successful in selling units in the Property. Of the 32 condominium units sold in North Bay Village area in excess of $300,000 in the past 18 months, 16 were units located in the Property and sold by the Debtor. Of the fifty 50 remaining units, 8 units are approved and ready to be closed over the next eight weeks, and 27 units are currently rented and generating income which funds the Debtor's operations. The Property also has 2 commercial units consisting of ground floor retail and an outparcel. One portion of the retail space is rented to the

2
LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

Firm Clients\5294\5294-1\00723638.WPD.

Mario the Baker Restaurant, which is currently operating and open for business. Further, the City of North Bay Village has signed a lease to utilize 7,000+ square feet of the retail space as its brand new City Hall. The permits for the new City Hall have been obtained and the build-out work has commenced. The Lexi is known as one of, if not the, premier building in North Bay Village, and that reputation will only be enhanced by the continued unit sales, the retail tenants and the new City Hall.

## Pre-Petition Senior Loan Agreements

6.     On December 5, 2005 ("**Closing Date**"), the Debtor executed and delivered to Regions Bank ("**Regions**"), acting for itself and as administrative agent and collateral agent for Banco Popular North America ("**Banco Popular**"), Bank Midwest, N.A. ("**Bank Midwest**") and First Charter Bank ("**First Charter**"), collectively ("**Lenders**"), a Construction Loan Agreement in the original principal amount of \$56,875,000. Attached hereto as Exhibit "A" is a copy of the Construction Loan Agreement.

7.     As of the Petition Date, \$10,160,000 of the original \$56,875,000 loan amount remains outstanding, not including any asserted default rate interest which the Debtor disputes.

8.     On the Closing Date, the Debtor executed and delivered to Regions a Promissory Note ("**Note**") in the original principal amount of \$25,000,000. Attached hereto as Exhibit "B" is a copy of the Note.

9.     The Debtor also executed and delivered Promissory Notes in favor of: (1) Bank Midwest in the original principal amount of \$10,937,500; (2) First Charter in the original principal amount of \$10,000,000; and (3) Banco Popular in the original principal amount of \$10,937,500

3
LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

Firm Clients\5294\5294-1\00723638.WPD.

(collectively, **"Lender Notes"**). Copies of the Lender Notes are attached hereto as Exhibit "C." Fifth Third Bank (**"Fifth Third"**) later came to own and hold the Promissory Note executed and delivered to First Charter as successor.

10.     On the Closing Date, the Debtor also extended and delivered to Regions, as collateral agent for its benefit and the benefit of the Lenders, a Florida Real Estate Mortgage, Assignment of Leases, and Rents and Security Agreements (**"Mortgage"**) as collateral (**"Pre-Petition Collateral"**) for and securing payment of the Note and Lender Notes. A copy of the Mortgage is attached hereto as Exhibit "D."

11.     On the Closing Date, Scott and Amy Greenwald each executed a guaranty of payment and a guaranty of completion (**"Greenwald Guaranties"**).

12.     Upon information and belief, on January 23, 2009, the Lenders purportedly sold and assigned to their loan and related rights to Lexi North Bay LLC (**"North Bay"**), which upon information and belief is an entity owned and controlled by RAM Real Estate (**"RAM"**). RAM describes itself on its website (www.ramrealestate.com) as a company that is aggressively pursuing the acquisition, development and redevelopment of commercial, multi-family communities and mixed-use real estate throughout the Southeast.

## The North Bay Litigation

13.     On August 4, 2009, North Bay filed a Verified Amended Complaint for foreclosure, captioned *Lexi North Bay LLC v. Lexi Development Company, Inc.,et. al.,* pending in the Circuit Court of the 11th Judicial Circuit Court In and For Miami-Dade County Florida, Case No.: 09-45018 CA *("North Bay Complaint")*.

4
LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

Firm Clients\5294\5294-1\00723638.WPD.

14.      On September 10, 2009, the Debtor filed its Answer, Affirmative Defenses and Counterclaim which asserted claims ("*Lexi Counterclaims*") against North Bay for breach of contract, breach of the implied covenant of good faith and fair dealing, and tortious interference with a business relationship.

15.      The Lexi Counterclaims also allege that the Lenders and North Bay breached the Loan Documents by failing to comply with certain requirements set forth in the Loan Documents.

16.      On December 16, 2009, the Court entered an Order on Motion to Enforce Assignment of Leases and Rents ("*Rents Order*"), which was negotiated by the Debtor and North Bay and consented to by North Bay, a copy which is attached hereto as Exhibit "E."

17.      On May 27, 2010, the Debtor and North Bay participated in a Court ordered mediation which resulted in an impasse.

## Debtor's Rental Income

18.      The Debtor estimates that as of the Petition Date, and at least for the next six (6) months, it will generate between approximately $50,000 and $60,000 in monthly revenue from the rental of residential and commercial units ("*Rental Revenue*"), which amount will be reduced as individual units close. These funds shall be utilized according to the terms of the Rents Order which essentially allows the Debtor to use North Bay's cash collateral to fund the Debtor's operations. The Rents Order provides that the Rental Revenue may be used as follows:

•       The direct expenses of operation and maintenance of the retail portion of the Property subject to the Mortgage - including maintenance, fees, utilities, sales taxes and condominium association fees.

5
LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

Firm Clients\5294\5294-1\00723638.WPD.

•      The direct expenses for the operation and maintenance of the residential portion of the Property subject to the Mortgage - including maintenance and utilities for unsold utilities and leased units.

•      The payment of critical employees.

•      The payment of condominium association fees.

•      Buildout costs in connection with the retail space to be leased to North Bay Village.

•      Residential Unit buildout costs for units under contract for sale.

The Rents Order also provides that the proceeds from closings shall be available for residential unit build-out costs for units as sold and not otherwise provided for from the Rental Revenue.

### Debtor's Anticipated Sales Income

19.     The Debtor has 9 residential units approved for sale by North Bay and ready to be closed over the next eight (8) weeks, in addition to other sales for units that are currently being marketed. The pending unit sales will result in approximately $2,375,000 in available net proceeds, which, along with the proceeds from future sales, can be used to fund additional build-out costs for the new City Hall, other administrative expenses of the Debtor, and to pay down the loan..

### Relief Requested

20.     The proceeds of the Pre-Petition Collateral, specifically the Debtor's Rental Income and Anticipated Sales Income (together, the "***Debtor's Income***") constitute the cash collateral ("***Cash Collateral***") of North Bay. Without the use of the Cash Collateral, the Debtor does not have the funds to continue to operate its business including, but not limited to, building out the remaining

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

Firm Clients\5294\5294-1\00723638.WPD.

residential and retail portions of the Property, marketing, selling and renting the residential and retail portions of the Property, as well other expenses such as condominium fees, insurance, utilities, and related operating expenses. This will deprive the Debtor of its ability to reorganize.

21.     The Debtor seeks to use the Cash Collateral for those purposes and in the amounts set forth in the budget, a copy of which is attached hereto as Exhibit "F" ("*Budget*").[2] The Debtor's Income will be sufficient to fund the Debtor's expenses as set forth in the Budget.

22.     The Budget includes payments to Jerome Miller, 47 year old cousin of the Debtor's President Scott Greenwald, who is a licensed Florida real estate sales associate and a marketing professional, who, in exchange for acting as property manager for the Debtor, receives $2,000 per month as a 1099 independent contractor. Further, he has the use of unit 1407 to live in and work from which has an approximate value of $2,000 per month. Mr. Miller's salary was included and approved in the Rents Order. No other insiders shall be paid, consistent with the Budget.

23.     The Debtor requests that (i) unpaid professional fees and expenses incurred by the Debtor prior to the occurrence of the Termination Date (as will be defined in the Final Order granting this Motion) pursuant to Section 330 of the Bankruptcy Code, in an aggregate amount not to exceed the amount of reasonable fees awarded by the Court (and in the case of the Debtor's counsel, Meland Russin & Budwick, P.A. after application of its retainer) ("*Debtor's Professionals' Carveout*"), and (ii) fees payable to the Clerk of the Court or United States Trustee pursuant to 28 U.S.C. § 1930 in this bankruptcy case ("*Trustee Carveout*") (the "*Debtor's Professionals' Carveout*" and the

---

[2]The Debtor requests that it be allowed variances with any line item provided that such variances shall not exceed 5% and be subject to preapproval by the Agent.

7
LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

Firm Clients\5294\5294-1\00723638.WPD.

"*Trustee Carveout*" being collectively referred to as "*Carveout*") shall be paid out of the Debtor's Income, and such amounts may be included in the Approved Budget.

24.     In the event there is a Creditors' Committee appointed in this bankruptcy case, such Creditors' Committee shall negotiate any professional fees' carveout with North Bay directly, as such fees are not included in the Debtor's Professionals' Carveout.

25.     Nothing contained in any Order granting this Motion shall be deemed or construed to waive, reduce or otherwise prejudice the rights of (a) North Bay or any other party in interest to object to the allowance of compensation for services rendered by, or reimbursement for expenses incurred by, any professional person retained by the Debtor or the Creditors' Committee (if appointed) in this Bankruptcy Case or (b) any such professional person to apply to the Bankruptcy Court for allowance of such compensation or reimbursement in such amounts as such professional person may request; provided, however, there is no restriction in the ability of the Debtor to make payments to estate professionals to the extent permitted by both an approved budget and an appropriate order of the Bankruptcy Court, and such permitted payments shall not be subject to any claim or interest of North Bay to the extent allowed pursuant to Section 330 of the Bankruptcy Code.

26.     **The Debtor proposes to grant North Bay Liens on post-petition collections of the Debtor.** In order to provide North Bay with adequate protection of its alleged interest in the Pre-Petition Collateral existing as of the Petition Date, the Debtor agrees to grant to North Bay, *nunc pro tunc* to the Petition Date, dollar for dollar to the extent used, sold, leased, extinguished or otherwise impaired, or to the extent heretofore granted but rendered ineffective pursuant to §552 of the Bankruptcy Code, a first priority lien against and security interest in all presently owned and

8
LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

Firm Clients\5294\5294-1\00723638.WPD.

hereafter acquired property which is not subject to a prior perfected and enforceable pre-petition lien, but excluding all proceeds of property recovered or transfers avoided by or on behalf of the Debtor, its estate or any subsequent chapter 11 or chapter 7 trustee under Sections 544 through 550, inclusive, of the Bankruptcy Code (collectively,"***Post Petition Collateral***"). The Replacement Lien shall have priority over all presently existing and hereafter arising liens in the Post Petition Collateral, and the Replacement Lien shall be binding on the Debtor, any successor in interest to the Debtor (including, without limitation, any trustee appointed in this case and in any superseding case under Chapter 7 of the Bankruptcy Code) and creditors who have extended or may hereafter extend credit to the Debtor or its estate.

27.    The liens and security interests granted to North Bay herein shall be valid and perfected without the need for the execution or filing of any further document or instrument, otherwise required to be executed or filed under non-bankruptcy law. Notwithstanding that no documents need be executed or filed to create or perfect the liens and security interests granted hereunder, the Debtor shall execute and deliver to the North Bay such further documents as they may reasonably request to evidence and give notice of the security interest granted hereunder, including without limitation UCC-1 Financing Statements or UCC-3 Statements of Change. If North Bay, in its sole discretion, shall choose to file such financing statements, security agreements, or other instruments, or otherwise confirm perfection of such security interest and liens, all such financing statements or similar instruments shall be deemed to have been filed or recorded as of the Petition Date, and relief from the automatic stay provisions of 11 U.S.C. §362(a) for the purpose of filing said instruments is hereby granted.

9
LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

Firm Clients\5294\5294-1\00723638.WPD.

28.     The Debtor submits that use of Cash Collateral as set forth herein is in the best interests of the estate and its creditors, since the use of Cash Collateral shall enable the Debtor to continue operating in the ordinary course of its businesses and preserve the value of its assets.[3]

## Argument

29.     The Debtor's use of Cash Collateral is governed by the provisions of 11 U.S.C. §§ 363 and 361. *See, In re River Oaks Limited Partnership*, 166 B.R. 94 (Bankr. E.D. Mi. 1994). The value of a creditor's interest in property must be declining in order for the creditor to be lacking adequate protection for purpose of a debtor's proposed use of cash collateral. *See, In re Mullen*, 172 B.R. 473 (Bankr. D. Mass. 1994).

30.     The determination as to whether a creditor is adequately protected pursuant to Section 363 should be based on factors such as whether the value of the security exceeds the debt, or whether there is a reorganization plan that provides for full payment to the creditor. *River Oaks*, 166 B.R. at 98. Here, North Bay is adequately protected as the value of the Property clearly exceeds the value of the outstanding principal, as well as any allegedly accrued interest.[4] *See*, 11 U.S.C. §§ 361(2) and 363(e); *In re Certified Corporation*, 51 B.R. 768 (Bankr. D. Hawaii 1985). In addition, North Bay

_____

[3]At this time, the Debtor has not completed an analysis of the perfection or validity of North Bay's interest, or whether any of the claims or security interest of North Bay is subject to avoidance or subordination. Nothing in this Motion is intended or should be construed as an admission by the Debtor as to the nature, extent, or priority of the claims or security interest of North Bay. Rather to the extent the North Bay has an interest in the Cash Collateral, the Debtor proposes to provide North Bay with the adequate protection described herein.

[4]The Debtor denies that any default occurred. However, assuming, *arguendo*, that a default is determined to have occurred, the Collateral is worth significantly more then the outstanding principal and all accrued contract and default interest.

10
LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

Firm Clients\5294\5294-1\00723638.WPD.

is adequately protected because the Debtor's continued sales of the remaining units shall yield a higher net return than North Bay could realize if it foreclosed the mortgage and liquidated the assets. In addition, a liquidation would effectively place the Debtor out of business. *See, Baybank-Middlesex v. Ralar Distributors, Inc.*, 69 F.3d 1200 (1st Cir. 1995). Such a result would be disastrous to the Debtor, its creditors and equity interest holders as a liquidation sale of the Property would bring significantly less value than an organized, efficient sales process conducted by the Debtor in the context of a bankruptcy case.

31.     A Debtor may demonstrate adequate protection by proving the existence of *inter alia*, (1) an equity cushion, (2) a third party guaranty, or (3) substitute collateral. *See, In re Phoenix Steel Corp.*, 39 B.R. 218 (Bankr. Del. 1984). The Debtor believes that the value of the Property which secures the secured claim of North Bay is approximately $21,500,000, and is well in excess of the amount allegedly owed to North Bay, including any asserted default interest, and thus a significant equity cushion exists. North Bay is also afforded additional adequate protection as a result of the Greenwald Guaranties and the Debtor's Income.

32.     Any committee appointed pursuant to 11 U.S.C. § 1102 shall have forty-five (45) days after such appointment to analyze and object to the validity, priority and extent of North Bay's purported liens in any of the collateral purporting to secure North Bay's claimed indebtedness.

## Bullet Point Summary Required Pursuant to Court's Guidelines CG-7 (rev. 06/02/08)

33.     The following is a bullet point summary of the essential terms of the proposed use of Cash Collateral:

•       The Debtor seeks authority to use Cash Collateral of North Bay for those

11
LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

Firm Clients\5294\5294-1\00723638.WPD.

purposes and in the amounts set forth in the budget, a copy of which is attached hereto as Exhibit "F." The Cash Collateral will come from the Debtor's Income.

The Debtor proposes to grant North Bay with replacement liens on post-petition collections of the Debtor.

- This Motion provides for the Debtor's Professionals' Carveout in an aggregate amount not to exceed the amount of reasonable fees awarded by the Court (and in the case of the Debtor's counsel, Meland Russin & Budwick, P.A. after application of its retainer) and the Trustee Carveout for fees payable to the Clerk of the Court or United States Trustee pursuant to 28 U.S.C. § 1930 in this bankruptcy case. However, in the event there is a Creditors' Committee appointed in this bankruptcy case, such Creditors' Committee shall negotiate any professional fees' carveout with North Bay directly, as such fees are not included in the Debtor's Professionals' Carveout.

- A proposed Order is attached hereto as Exhibit "G."

## Statement of Exigent Circumstances

34. The Debtor relies on the revenue generated by the sales and rental of residential and commercial units in order to pay its expenses and operate its business. The Debtor needs access to the Cash Collateral in order to pay condominium association fees, utilities, vendors, insurance and other expenses incidental to the operation of its business, and to pay for construction build-outs for

12
LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

Firm Clients\5294\5294-1\00723638.WPD.

residential and commercial units that are to be sold or leased.. The Debtor respectfully requests that the Court consider this Emergency Motion as soon as its calendar permits. Pursuant to Rule 9075-1, the Debtor represents that it will promptly confer with opposing counsel in an effort to resolve the issues raised in this Emergency Motion in advance of the hearing thereon.

35.     Pursuant to Bankruptcy Rule 4001(b)(2), a final hearing may be commenced by this Court on this Emergency Motion no earlier than 15 days from the service of this Emergency Motion. Prior to any final hearing on this Emergency Motion, the Debtor requires immediate authority to use Cash Collateral to preserve the viability of its business.

36.     Pursuant to Bankruptcy Rule 4001(b), the Debtor requests that this Court expeditiously conduct a preliminary hearing to authorize the Debtor's use of Cash Collateral in such amounts as are necessary to avoid immediate and irreparable harm to the Debtor's estate pending a final hearing on this Emergency Motion.

WHEREFORE, the Debtor respectfully requests that this Court set this Motion for hearing at the earliest possible time, enter an order authorizing the use of North Bay's asserted Cash Collateral on an interim basis, setting a final hearing with respect to the relief sought herein fourteen (14) days from the date of the order approving this interim relief, and for any further relief this Court deems just and proper.

## REMAINDER OF PAGE LEFT INTENTIONALLY BLANK

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

Firm Clients\5294\5294-1\00723638.WPD.

Dated: July 1, 2010.                    s/Joshua W. Dobin
                                        Joshua W. Dobin, Esquire
                                        Florida Bar No. 93696
                                        jdobin@melandrussin.com
                                        MELAND RUSSIN & BUDWICK, P.A.
                                        3000 Wachovia Financial Center
                                        200 South Biscayne Boulevard
                                        Miami, Florida 33131
                                        Telephone: (305) 358-6363
                                        Telecopy: (305) 358-1221

                                        *Attorneys for Debtor*

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 WACHOVIA FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD,  MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

Firm Clients\5294\5294-1\00723638.WPD.