

**ORDERED in the Southern District of Florida on August 03, 2010.**

A. Jay Cristol, Judge
United States Bankruptcy Court

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:

LEXI DEVELOPMENT COMPANY, INC.,     Case No. 10-27573-AJC
                                     Chapter 11
            Debtor.
_____/

**INTERIM ORDER (1) GRANTING EMERGENCY MOTION FOR INTERIM ORDER AUTHORIZING USE OF CASH COLLATERAL; (II) GRANTING ADEQUATE PROTECTION; AND (III) SCHEDULING A FINAL HEARING**

**THIS MATTER** came before the Court on July 2, 2010 at 2:00 p.m. on the Emergency Motion Pursuant to 11 U.S.C. §§ 361, 362, 363, and 552, Fed. R. Bankr.P. 4001(b) and 9014, and Local Rules 4001-2, 9013-1(F) and (G) and 9075-1, for entry of an Interim and Final Order Authorizing the Use of Cash Collateral and Granting Adequate Protection [D.E.12] (the "*Motion*"). The Court having considered the Motion, the record in this matter, having heard argument of counsel for the Debtor and the Office of the United States Trustee, and having been advised that secured

1

creditor, Lexi North Bay, LLC ( "*North Bay*") is in agreement with the Debtor as to the interim relief, it is

**ORDERED** as follows:

1. The Motion is **GRANTED** on an interim basis.

2. The Debtor is authorized to use Cash Collateral from the Debtor's Income, as defined in the Motion, for an interim period of ninety (90) days, to the extent of available cash for those purposes and in those amounts set forth in the Budget, attached hereto as Exhibit "A" through the date of the final hearing scheduled pursuant to Paragraph 10 of this Order ( "*Final Hearing*").

3. North Bay shall be granted an administrative expense claim pursuant to Sections 507 and 503 of the Bankruptcy Code to the extent of the diminution, if any, in the value of its interests in the Cash Collateral as of the Petition Date ("*Administrative Expense Claim*").

4. Any Administrative Expense Claim granted hereunder shall be subordinate only to (I) fees payable pursuant to 28 U.S.C. § 1930(a)(6); and (ii) the payment of accrued and unpaid professional fees and expenses allowed by the Court of the Debtor's counsel, Meland Russin & Budwick, P.A., after first applying any prepetition retainer received, awarded by the Court (the "*Debtor's Professional's Carve-Out*"). The (I) Debtor's Professional's Carve-Out, consisting of any awarded unpaid professional fees and expenses incurred by the Debtor in this bankruptcy case pursuant to Section 330 of the Bankruptcy Code, prior to the occurrence of the Termination Date (which shall be established in the final order) in an aggregate amount not to exceed the amount of reasonable fees awarded by the Court (and after application of Meland Russin & Budwick, P.A.'s

retainer), and (ii) fees payable to the Clerk of the Court or the United States Trustee pursuant to 28 U.S.C. § 1930 in this bankruptcy case (***"Trustee Carve-Out"***), shall be paid out of the Debtor's Income as defined in the Motion and as included in the Budget. The fees pursuant to 28 U.S.C. § 1930(a)(6) can be paid even if the amount is higher than the line item in the Budget approved by North Bay. Nothing herein shall be construed as a waiver or prohibition of North Bay's right to object to any professional fees sought in this case.

5. North Bay is also granted a replacement lien on and in all property, owned, acquired or generated post-petition by the Debtor and its continued operations to the same extent and priority and of the same kind and nature as North Bay had prior to the filing of this bankruptcy case (***"Post-Petition Collateral"***). The Post-Petition Collateral excludes all proceeds of property recovered or transfers avoided by or on behalf of the Debtor, its estate or any subsequently appointed trustee, pursuant to Sections 544 through 550, inclusive, of the Bankruptcy Code.

6. This replacement lien in the Post-Petition Collateral (***"Replacement Lien"***) granted to North Bay is deemed to be valid and perfected to the same extent as existed as of the Petition Date without the need for the execution, filing or recording of any further documents or instruments, otherwise required to be executed or filed under non-bankruptcy law.

7. North Bay is deemed to be adequately protected by the granting of a Replacement Lien and Administrative Expense Claim as set forth above, in addition to the respective guaranties of Scott and Amy Greenwald, the substantial equity cushion, and the revenue generated from rentals and sales which are pending closing; however, to the extent that the foregoing is not sufficient to adequately protect North Bay, it is entitled to a priority claim for such shortfall in accordance with

Section 507(b).

8. Notwithstanding any other provision of this Interim Order, the finding that North Bay's interests are adequately protected is without prejudice to the rights of North Bay to seek modification of the adequate protection provided in this Interim Order and without prejudice to the rights of the Debtor or any other party in interest to contest any such requested modification.

9. The Debtor shall furnish North Bay with such financial and other information in the manner provided for in the Rents Order as defined in the Motion.

10. Any committee appointed pursuant to 11 U.S.C. § 1102 shall have forty-five (45) days after such appointment to analyze and object to the validity, priority and extent of North Bay's purported liens in any of the collateral purporting to secure the North Bay's claimed indebtedness.

11. A final hearing to consider the relief sought in the Motion shall be held before the Court on **August 31**, 2010 at **2:30** **p**.m. (the "Final Hearing") **in Courtroom 1410, 51 S.W. First Avenue, Miami, FL.**

12. The Debtor is permitted to use Cash Collateral as set forth in the Budget attached hereto as Exhibit "A", provided that without further leave of the Court a variance not exceeding 5% for any line item is permitted, provided such variance shall not exceed 5% of the total budget for any monthly budget period.

13. The Budget includes payments to Jerome Miller, cousin of the Debtor's President Scott Greenwald, who, in exchange for acting as property manager for the Debtor, receives $2,000 per month as a 1099 independent contractor. Further, he has the use of unit 1407 to live in and work from which has an approximate value of $2,000 per month. Mr. Miller's salary was included and approved in the Rents Order. No other insiders shall be paid, consistent with the Budget.

4

14.     The amount of $100,000 from the sales of the Debtor's units shall be held in reserve in the Debtor's DIP account to be used by the Debtor, as might be needed, for items budgeted in the attached Exhibit "A", including the build out of the space subject of the lease with North Bay Village for its City Hall. North Bay and the Debtor agree that the Debtor can request from North Bay the use of additional amounts of North Bay's Cash Collateral for closing costs and build out expenses as necessary.

15.     Debtor shall on or before July 31, 2010, August 31, 2010 and September 30, 2010 pay to North Bay the net income for the respective month, expected to be the Net Projected Income for that month as set forth in the Budget attached hereto as Exhibit "A." In the event that the net income for a month is less than the Net Projected Income budgeted for that month due to the postponement, for reasons beyond the Debtor's control, of closings of unit sales, then following such delayed closings, the Debtor shall immediately pay to North Bay the proceeds of such delayed closings in the amount by which the payment for the prior month was less than the Net Projected Income for that prior month.

16.     Nothing herein shall be construed as a waiver by North Bay of any defaults it may claim existed as of the Petition Date or any of the rights of North Bay under the Loan Documents in the event of a default.

17.     The relief provided herein, including the Debtor's use of North Bay's Cash Collateral, shall be *nunc pro tunc* to the date of the hearing on this Motion, July 2, 2010.

18.     The authority to use Cash Collateral granted by this Order shall expire on the date of the Final Hearing, unless extended by the entry of a final order or upon conversion of the case to Chapter 7.

### 

**Submitted by:**
Joshua W. Dobin, Esquire
Florida Bar No. 93696
jdobin@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3000 Wachovia Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221
*Attorneys for the Debtor*

**Copies to:**
Joshua W. Dobin, Esquire
(Attorney Dobin shall serve a copy of this Order upon all interested parties upon receipt and file a certificate of service.)

The Lexi
Projected Total Income and Expenses

THE LEXI

| | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|
| Rental Income | $66,190 | $53,590 | $51,665 | $51,665 | $51,665 | $51,665 | $326,440 |
| Sales Proceeds | $1,815,000 | $1,020,000 | $334,000 | $409,667 | $385,000 | $334,000 | $4,297,667 |
| Total Projected Income | $1,881,190 | $1,073,590 | $385,665 | $461,332 | $436,665 | $385,665 | $4,624,107 |
| | | | | | | | |
| Expenses | | | | | | | |
| Total Rental Expenses | $41,691 | $36,191 | $35,591 | $34,791 | $33,191 | $32,591 | $214,046 |
| Total Cost of Sales | $300,008 | $157,078 | $73,405 | $81,539 | $78,888 | $73,405 | $764,322 |
| Buildout Cost Reserve | $100,000 | $0 | $0 | $0 | $0 | $0 | $0 |
| Buildout - City of North Bay Village Space | $47,500 | $47,500 | $47,500 | $47,500 | $47,500 | $47,500 | $285,000 |
| Attorney Fees | $30,000 | $30,000 | $20,000 | $20,000 | $20,000 | $20,000 | $140,000 |
| US Trustee Fees | $4,875 | $0 | $0 | $10,400 | $0 | $0 | $15,275 |
| Total Expenses | $524,074 | $270,769 | $176,496 | $194,230 | $179,579 | $173,496 | $1,518,643 |
| | | | | | | | |
| Net Projected Income | $1,357,116 | $802,821 | $209,169 | $267,102 | $257,087 | $212,169 | $3,105,463 |

Exhibit A

THE LEXI

The Lexi
Projected Rental Income and Expenses

| | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|
| Rental Income | $56,190 | $53,590 | $51,665 | $51,665 | $51,665 | $51,665 | $326,440 |
| | | | | | | | |
| Expenses | | | | | | | |
| Apt. Maintenance and Expenses * | $5,000 | $3,000 | $3,000 | $3,000 | $3,000 | $3,000 | $20,000 |
| Accounting and Administrative | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $1,000 | $6,000 |
| Building Management - Jerry Miller | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $2,000 | $12,000 |
| Sales Tax | $191 | $191 | $191 | $191 | $191 | $191 | $1,146 |
| Condominium Fee Payment | $33,500 | $30,000 | $29,400 | $28,600 | $27,000 | $26,400 | $174,900 |
| Total Rental Expenses | $41,691 | $36,191 | $35,591 | $34,791 | $33,191 | $32,591 | $214,046 |
| | | | | | | | |
| Net Rental Income | $24,499 | $17,399 | $16,074 | $16,874 | $18,474 | $19,074 | $112,394 |

* Apartment Maintenance and Expensess includes FPL bills and deposits, air conditioning and misc. repairs, etc.

THE LEXI

The Lexi
Projected Sales Income and Expenses

| | July | August | September | October | November | December | Total |
|---|---|---|---|---|---|---|---|
| July Sales * | | | | | | | |
| 1003 | $300,000 | | | | | | |
| 1508 | $375,000 | | | | | | |
| 1707 | $370,000 | | | | | | |
| 1907 | $370,000 | | | | | | |
| 2008 | $400,000 | | | | | | |
| Total July Sales | $1,815,000 | | | | | | $1,815,000 |
| August Sales * | | | | | | | |
| 910 | | $320,000 | | | | | |
| 1509 | | $300,000 | | | | | |
| 1601 | | $400,000 | | | | | |
| Total August Sales | | $1,020,000 | | | | | $1,020,000 |
| Projected September Sales - C Unit ** | | | $334,000 | | | | $334,000 |
| Projected October Sales - A Unit ** | | | | $409,667 | | | $409,667 |
| Projected November Sales - B Unit ** | | | | | $385,000 | | $385,000 |
| Projected December Sales - C Unit ** | | | | | | $334,000 | $334,000 |
| Total Sales | | | | | | | $4,297,667 |
| | | | | | | | |
| Cost of Sales | | | | | | | |
| Residential Buildouts | $38,000 | $23,000 | $12,500 | $12,500 | $12,500 | $12,500 | $111,000 |
| Seller Credits | $20,000 | $25,300 | $10,020 | $12,290 | $11,550 | $10,020 | $89,180 |
| Estimated Real Estate Taxes Due | $122,346 | $63,115 | $25,000 | $25,000 | $25,000 | $25,000 | $285,461 |
| RE Commissions and Closing Costs | $119,663 | $45,663 | $25,885 | $31,749 | $29,838 | $25,885 | $278,682 |
| Total Cost of Sales | $300,008 | $157,078 | $73,405 | $81,539 | $78,888 | $73,405 | $764,322 |
| | | | | | | | |
| Net Sales Proceeds | $1,514,992 | $862,922 | $260,595 | $328,128 | $306,113 | $260,595 | $3,533,344 |

* July and August Sales are based on Actual Contracts in Place.
** Projected September - December Sales are Projected at 1 Sale Per Month At 97% of the Average Asking Price of Available Units
Average Sales Per Month    1 Assumes Selling 1 A Unit, 1 B Unit and 2 C Units over 4 months

| Unit Type | A | B | C | Sold Units |
|---|---|---|---|---|
| Average Asking Price Available Units | $409,667 | $385,000 | $334,000 | $1,462,667 |
| Square Feet | 1,753 | 1,735 | 1,458 | |
| Additional Sales | 1 | 1 | 2 | 4 |
| Sales Proceeds | 409,667 | 385,000 | 668,000 | 1,462,667 |
| Sold SF | 1,753 | 1,735 | 2,916 | 6,404 |
| Average Buildout | $12,500 | | | |
| Average RE Taxes Due | $25,000 | | | |
| Total Sales - 6 Month Period | 12 | | | |