

**ORDERED in the Southern District of Florida on April 24, 2013.**

A. Jay Cristol, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
*Miami Division*
www.flsb.uscourts.gov

IN RE:

LEXI DEVELOPMENT COMPANY, INC.,          CASE NO.  10-27573-BKC-AJC

            Debtor.                                          CHAPTER 11
_____/

### ORDER GRANTING IN PART AND DENYING IN PART MELAND RUSSIN AND BUDWICK P.A.'S FOURTH INTERIM FEE APPLICATION [D.E. 213]

**THIS MATTER** came before the Court on April 4, 2013 at 11:00 a.m. upon Lexi Development Company, Inc.'s (Debtor) Counsel, Meland Russin & Budwick P.A.'s Fourth Interim Fee Application [D.E. 213] and Secured Creditor Lexi North Bay LLC's ("North Bay") Objection to same [D.E. 222]. The Court having considered argument of counsel and having reviewed the record in these proceedings has decided that, for the reasons set forth herein, the Fourth Interim Fee Application is denied.

1. Debtor, Lexi Development Company, Inc. ("Lexi" or "Debtor") borrowed in excess of $56 million secured by a mortgage on the condominium project, the Lexi (the "Senior Loan"). The Debtor's principal's parents, who later assigned their interest to Great Florida Bank ("GFB"), also loaned the Debtor an aggregate of $8 million through a mezzanine loan (the "Junior Loan").

2. After certain modifications and a forbearance agreement, the Debtor defaulted on the Senior Loan in December, 2008. North Bay's predecessor sold the defaulted note to North Bay in January of 2009. After maturity in April of 2009, North Bay commenced a state court foreclosure case in June. The following June of 2010—on the eve of the hearing on North Bay's motion for final summary judgment of foreclosure—the Debtor filed its Chapter 11 case. [D.E. 1].

3. As part of the Bankruptcy proceedings, both Lexi and GFB brought suit in an adversary proceeding, Adv. Case No. 10-03254, against North Bay based on allegations that North Bay's predecessor breached an Intercreditor Agreement between the Senior Lender and Junior Lender. The Debtor and GFB alleged that GFB was entitled to an equitable lien prior in right, title and interest to the first mortgage interest of North Bay because North Bay's predecessor failed to provide GFB a copy of any written notice of default sent to the Debtor as purportedly required under the Intercreditor Agreement. The Debtor also argued in that lien adversary proceeding that North Bay should not be entitled to default rate interest as a result of the same alleged breach.

4. Following cross summary judgment motions of the parties in the adversary case, this Court entered an Order denying North Bay's Motion for Summary Judgment and granting, in part, Lexi and GFB's Motions, finding that "North Bay is precluded from asserting a claim for

default-rate interest under the loan it acquired from Regions Bank." [Adv. Case No. 10-03254, D.E. 118].

  5. This Court also made specific findings on the application and effect that default-rate interest to North Bay would have on the Debtor's estate:

> 15. North Bay asserts the right to collect default interest at a 25% rate on the Regions Loan from at least as early as December 6, 2008. (ECF#113, Ex. C 41:7-23).1 As a result, North Bay asserts that $13,340,561.68 in default rate interest has accrued on the Regions Loan since December 6, 2008, and that the $14,762,583.15 that has been paid by Lexi on the Regions Loan to North Bay since that date (including application of a $998,241.83 reserve account acquired by North Bay from Regions) has reduced the principal balance of the loan by less than $2 million, from $17,287,339.61 to $15,462,875.32. (ECF#113, Ex. D).
>
> 16. If North Bay is permitted to recover default interest, there will be no recovery by GFB or any other party in interest. Lexi's Amended Disclosure Statement represents the reorganization value of the Property to be approximately $13 million, which is less than the amount of remaining principal and default interest claimed by North Bay. (Case No. 10-27573 ECF#162 Ex. B).

[Adv. Case No. 10-03254, D.E. 118].

  6. North Bay appealed that Order and determination [Adv. Case No. D.E. 137], which is briefed and pending resolution in the US District Court of the Southern District of Florida. *See* Case No. 12-cv-22589-KMW.

  7. On March 4, 2013, Debtor's counsel filed a Fourth Interim Fee Application requesting the Court approve a net award of $273,092.16 and "authorizing and directing the Debtor to issue a check in payment of the awarded fees and costs . . ." [D.E. 213].

  8. North Bay does not challenge the reasonableness of the amount of the fees and expenses requested. Rather, North Bay challenges payment of such fees and expenses as interim compensation pursuant to 11 U.S.C. § 331 until resolution of the pending appeal resolving North

Bay's entitlement to default-rate interest.

9. Section 331 of the Bankruptcy Code does not set forth explicit guidelines on how decisions on compensation should be made by the Court. *In re KNM Roswell Limited Partnership*, 126 B.R. 548, 557 (Bankr. N.D. Ill. 1991). "It is clear, however, that § 331 does not permit the Court to allow fees to be paid in a manner which would conflict with other sections of the Code." *Id*.

10. Under the Code, a secured creditor is to be protected to the extent of the value of its collateral because a secured creditor is not to be deprived of the benefit of its bargain. *See In re American Resources Management*, 51 B.R. 713, 719 (Bankr. D.Utah 1985). Thus, attorneys' fees and expenses—such as those sought in the Debtor's Counsel's Motion—cannot be paid at the expense of secured creditors. *In re KNM Roswell,* 126 B.R. at 557; *see also In re American*, 51 B.R. at 719 ("Post-petition attorneys' and accountants' fees are administrative expenses and may not be given priority over existing liens and superpriority claims."). Rather, these fees may be paid only to the extent that the value of the debtor's assets exceeds the amount of the secured creditor's claim or only to the extent that the attorney's services benefitted the secured creditor. *In re KNM Roswell,* 126 B.R. at 557.

11. Here, secured creditor, North Bay (1) has not consented to the payment of fees and expenses, (2) has not benefitted from the from Debtor's counsel's services because the vast majority of the fees requested are derived from adverse litigation with North Bay, and (3) has a secured claim that could exceed the value of the Debtor's collateral should it prevail on appeal.

12. Thus, while no objection has been raised with respect to the reasonableness or entitlement of the fees and costs requested, this Court finds that it would be inappropriate and premature to order payment of the awarded interim compensation to Debtor's Counsel until

resolution of the appeal addressing secured creditor, North Bay's right to default-rate interest. North Bay's reliance on *In re KNM Roswell Limited Partnership*, 126 B.R. 548, is well taken. In that case, the court found that the value of a shopping mall securing a secured creditor's note through a mortgage had not been established. Thus, the court explained that it was impossible to say whether there were sufficient assets in the debtor's estate to cover the secured lender's claims. It also found that rents on the shopping mall were part of the perfected lien of the secured creditor as of the date of the debtor's bankruptcy petition. With those facts, the court denied the debtor's counsel's application for interim payment of attorneys' fees and expenses under § 331 from post-petition rents without assurance that there would be assets to pay administrative expenses: "the Court will not allow the use of secured assets, i.e., the Roswell Mall rents, for the payment of attorney's fees . . . ."

13.     Moreover, Debtor's counsel's reference to the Cash Collateral Orders entered in this case and the "Debtor's Professional's Carve Outs" therein does not alter the result. *See, e.g.,* D.E. 209. First, the Cash Collateral Orders specifically state that "Nothing herein shall be construed as a waiver or prohibition of North Bay's right to object to any professional fees sought in this case." *See, e.g.* D.E. 209, ¶ 4. The language of this retained right is not limited to an objection of reasonableness. Second, the Cash Collateral Orders provide for an administrative expense claim to North Bay "to the extent of the diminution, if any, in the value of [North Bay's] interest in the Cash Collateral as of the Petition Date," and that *only that administrative expense claim* is subordinate to, *et. alia,* "the payment of accrued and unpaid professional fees and expenses allowed by the Court of the Debtor's counsel . . ." *See, e.g.* D.E. 209, ¶ 3, 4. Until the value of North Bay's secured claim—including its entitlement to default rate interest—is finally resolved, it cannot be determined whether North Bay's interests in the collateral were diminished

through the payment of Cash Collateral or whether North Bay has an administrative expense claim. Based on the foregoing undisputed facts and the conclusions of law, it is

**ORDERED** that Lexi Development Company, Inc.'s (Debtor) Counsel, Meland Russin & Budwick P.A.'s Fourth Interim Fee Application is GRANTED IN PART AND DENIED IN PART as follows:

A. The Court APPROVES AND AWARDS to the Applicant the full amount of the fees and costs sought in the Fourth Interim Fee Application.

B. Payment of the approved and awarded fees, however, is DENIED WITHOUT PREJUDICE at this time, subject to reconsideration following resolution of the appeal pending in Adversary Case No. 10-3254-BKC-AJC-A.

# # #

Submitted by:

Laura Fortney Gross, Esq.
Gunster, Yoakley & Stewart, P.A.
One Biscayne Tower
2 South Biscayne Blvd., Suite 3400
Miami, FL  33131-1897
Telephone: (305) 376-6000
Email: lgross@gunster.com

*[Attorney Gross is directed to serve a copy of this Order upon all parties in interest and file a certificate of service]*