UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:

LEXI DEVELOPMENT COMPANY, INC.[1],          Case No. 10-27573-AJC
                                            Chapter 11

                    Debtor.
_____/

### DEBTOR'S FOURTH AMENDED DISCLOSURE STATEMENT

Lexi Development Company, Inc., the Debtor under chapter 11 of Title 11 of the United States Code, files its *Fourth Amended Disclosure Statement* ("**Disclosure Statement**") in support of its *Fourth Amended Plan of Reorganization* ("**Plan**" or "**Plan of Reorganization**").

**NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT REGARDING THE PLAN OR THE SOLICITATION OF ITS ACCEPTANCE.**

**ALL CREDITORS AND INTEREST HOLDERS ARE HEREBY ADVISED AND ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND THE PLAN IN THEIR ENTIRETY BY REFERENCE TO THE PLAN, THE EXHIBITS HERETO AND OTHER DOCUMENTS REFERENCED AS FILED WITH THE COURT PRIOR TO OR CONCURRENT WITH THE FILING OF THIS DISCLOSURE STATEMENT. SUBSEQUENT TO THE DATE HEREOF, THERE CAN BE NO ASSURANCE MADE THAT (A) THE INFORMATION AND REPRESENTATIONS CONTAINED HEREIN ARE MATERIALLY ACCURATE; OR (B) THIS DISCLOSURE STATEMENT CONTAINS ALL MATERIAL INFORMATION.**

**AFTER THE EFFECTIVE DATE OF THE PLAN, A PORTION OF CERTAIN DISTRIBUTIONS UNDER THE PLAN MAY BE SUBJECT TO SUBSTANTIAL DELAYS FOR CREDITORS AND INTEREST HOLDERS WHOSE CLAIMS AND INTERESTS ARE CLASSIFIED IN CLASSES THAT CONTAIN CONTESTED CLAIMS OR INTERESTS. ALSO, THERE ARE NO ASSURANCES AS TO THE PERCENTAGE OF DISTRIBUTIONS TO GENERAL UNSECURED CREDITORS WHOSE CLAIMS ARE CLASSIFIED IN CLASSES THAT CONTAIN CONTESTED CLAIMS. THE AMOUNT OF ANY DISTRIBUTION MAY VARY SUBSTANTIALLY DEPENDING UPON THE TOTAL AMOUNT OF ALLOWED GENERAL UNSECURED CLAIMS AND ALLOWED EXECUTORY CONTRACT REJECTION CLAIMS.**

---

[1] The Debtor's current mailing address is 7301 SW 57 Ct, Ste 565, South Miami, FL 33143. The last four digits of the Debtor's tax identification number are 1551.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

THIS DISCLOSURE STATEMENT HAS BEEN REQUIRED TO BE PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND NOT IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER APPLICABLE NON-BANKRUPTCY LAW.

THIS DISCLOSURE STATEMENT MAY NOT BE RELIED ON FOR ANY PURPOSE OTHER THAN TO DETERMINE WHETHER TO VOTE IN FAVOR OF OR AGAINST THE PLAN. NOTHING CONTAINED HEREIN WILL CONSTITUTE AN ADMISSION OF ANY FACT OR LIABILITY BY ANY PARTY, BE ADMISSIBLE IN ANY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY OR BE DEEMED CONCLUSIVE EVIDENCE OF THE TAX OR OTHER LEGAL EFFECTS OF THE REORGANIZATION OF THE DEBTOR ON HOLDERS OF CLAIMS OR INTERESTS. AS TO CONTESTED MATTERS, ADVERSARY PROCEEDINGS AND OTHER CLAIMS AND CAUSES OF ACTIONS OR THREATENED ACTIONS AGAINST THIRD PARTIES, THIS DISCLOSURE STATEMENT SHALL NOT BE CONSTRUED AS AN ADMISSION OR STIPULATION, BUT RATHER AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS.

THE FINANCIAL INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT HAS BEEN PREPARED BY THE DEBTOR AND HAS NOT BEEN SUBJECT TO INDEPENDENT REVIEW OR TO CERTIFIED AUDIT. THE DEBTOR HAS MADE EVERY EFFORT TO ENSURE THAT THE INFORMATION CONTAINED HEREIN IS COMPLETE AND ACCURATE; HOWEVER, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THIS INFORMATION IS WITHOUT ANY INACCURACY.

## ARTICLE I
## INTRODUCTION AND REPRESENTATIONS

### A.    Introduction and Summary of Plan

The Debtor has prepared and is disseminating this Disclosure Statement to holders of claims against it for the purpose of soliciting acceptance of its Plan of Reorganization. The Debtor believes this Disclosure Statement contains the information that is material, important and necessary for its creditors to arrive at an informed decision in exercising their right to vote for the Plan. A copy of the Plan accompanies this Disclosure Statement as "**Exhibit A**." For a class of claims to accept the Plan, acceptances must be filed by at least 2/3 in amount and more than 1/2 in number of the Allowed Claims for such claims that actually vote on the Plan. A failure to vote on the Plan does not constitute either an acceptance or rejection of the Plan.

As discussed in greater detail below, the Plan contemplates that the Debtor will continue its efforts to market and sell the Project (as defined herein).

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

## B.    Representations

NO REPRESENTATIONS CONCERNING THE DEBTOR, OR THE PLAN ARE AUTHORIZED OTHER THAN AS SET FORTH HEREIN. ANY REPRESENTATIONS OR INDUCEMENTS TO SECURE YOUR ACCEPTANCE OF THE PLAN OTHER THAN AS CONTAINED HEREIN SHOULD NOT BE RELIED UPON BY YOU. THE INFORMATION CONTAINED HEREIN HAS NOT BEEN REVIEWED OR PASSED UPON BY AN ACCOUNTANT. THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS WITHOUT ANY INACCURACY ALTHOUGH ALL SUCH INFORMATION IS ACCURATE TO THE DEBTOR'S BEST KNOWLEDGE, INFORMATION AND BELIEF. THE COURT HAS NOT VERIFIED THE ACCURACY OF THE INFORMATION CONTAINED HEREIN, AND THE COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT DOES NOT IMPLY THAT THE COURT ENDORSES OR APPROVES THE PLAN, BUT ONLY THAT IF THE INFORMATION IS ACCURATE, IT IS SUFFICIENT TO PROVIDE AN ADEQUATE BASIS FOR CREDITORS AND INTEREST HOLDERS TO MAKE INFORMED DECISIONS WHETHER TO APPROVE OR REJECT THE PLAN.

## C.    Defined Terms

Most words or phrases used in this Disclosure Statement shall have their usual and customary meanings. The words or phrases when used in the context of the Plan and Disclosure Statement with initial capital letters shall have definitions set forth in the Plan. Unless otherwise defined, the terms used in this Disclosure Statement shall have the same meaning as in the Bankruptcy Code or Rules.

## D.    Holders of Claims Entitled to Vote

Pursuant to the Bankruptcy Code, only holders of Allowed Claims or equity interests in classes of claims or interests that are impaired under the Plan and that will receive distributions under the Plan are entitled to vote to accept or reject the Plan. Under applicable bankruptcy law, any proof of claim filed by an alleged creditor is presumed to be an Allowed Claim until such time as the Debtor (or another party in interest) objects to such a claim. In the event of an objection to a filed claim, **a claimant is not permitted to vote on the Debtor's proposed plan until such time as the claim is temporarily allowed by the Bankruptcy Court for voting purposes. In this regard, the burden is on the claimant to have a claim subject to objection temporarily allowed and the Debtor strongly recommends that parties with claims subject to an objection seek legal counsel to discuss their eligibility to vote.** Classes of claims or interests in which the holders of claims or interests will not receive or retain any property under the Plan are deemed to have rejected the Plan and are not entitled to vote on the Plan; classes of claims or interests in which the holders of claims or interests are unimpaired under the Plan are deemed to have accepted the Plan and are not entitled to vote on the Plan. Under the Plan Classes 2, 3, 6 and 7 are impaired. Holders of Allowed Claims under one or more of such Classes are entitled to vote on the Plan.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

### E.    Cramdown

If all of the applicable requirements of section 1129(a) of the Bankruptcy Code, other than subparagraph 8 thereof, are determined by the Bankruptcy Court to have been satisfied with respect to the Plan, then the Debtor may seek confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code. For purposes of seeking confirmation of the Plan under section 1129(b), the Debtor reserves the right to modify or vary the terms of the Plan or the treatment of the Claims or interests of those Classes that rejected the Plan so as to comply with the requirements of section 1129(b).

## ARTICLE II
## BACKGROUND INFORMATION

### A.    The Debtor and Summary of Reasons for Filing Petition

The Debtor is a Florida corporation which owns and developed a 164 unit, 19 story, mixed-use residential and retail bayview condominium development located at 1700 Kennedy Causeway, North Bay Village, Florida, known as "The Lexi" (the "***Property***"). Despite the majority of its development and operations occurring within one of the worst, if not the worst, real estate markets in South Florida history, the Debtor has been extremely successful in selling units in the Property with all but two residential units sold, and the Debtor continues to own approximately 20,000 square feet of retail space and an outparcel. As of May 31, 2019, the Debtor's assets totaled approximately $7,874,000, consisting of approximately $14,000 in cash in the Debtor's Debtor-in-Possession bank account (the "***DIP Account***"), two remaining residential condominium units with an estimated aggregate value of $860,000, retail space and an outparcel with a combined estimated value of $7,000.000.

The Debtor's Property is located in Miami-Dade County, with a street address of 1700 Kennedy Causeway, North Bay Village, Florida. The retail space on the Property is rented to a pizza restaurant, sushi restaurant, a real estate business, a synagogue and a healthcare business, which are currently operating and open for business. The Lexi is known as one of, if not the premier building in North Bay Village.

The Debtor filed this Chapter 11 proceeding as a result of the consequences associated with one of the worst economic and real estate downturns in history, as well as a complete seizure of the credit markets. Further, the Debtor was forced to address and defend against the efforts of a note purchaser attempting to obtain the Property from the Debtor through litigation. Via the Debtor's Chapter 11 proceeding, the Debtor intends to effectively and efficiently reorganize by continuing to market, sell and rent residential and commercial units located in the Property, which will result in the preservation of its business as a going concern and the maximization of funds available for distribution for all of the Debtor's creditors and equity holders.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

### B.    Prepetition Foreclosure Litigation Filed by Lexi North Bay, LLC

On December 5, 2005 (the ***"Closing Date"***), Regions Bank (***"Regions"***), as part of a consortium of lenders, made a $56,875,000 first mortgage loan to the Debtor (the ***"Loan"***) for the construction of the Debtor's condominium project ("***Project***"). On the Closing Date, Allen & Jill Greenwald (the ***"Greenwald Lenders"***) provided the Debtor with $6 million in mezzanine financing, which was secured by the equity interests in the Debtor. On the same day, Regions, the Debtor and the Greenwald Lenders entered into an Intercreditor Agreement (the ***"Intercreditor Agreement"***).

On June 23, 2008, the Debtor and Regions executed and delivered a Modification Agreement ("***Modification Agreement***"), extending the loan and requiring the Debtor to place $2 million in a reserve collateral account to be held at Regions, which funds those parties agreed would be provided by the Greenwald Lenders who were borrowing that sum from Great Florida Bank (***"GFB"***) in order to loan the funds to the Debtor. As a precondition to its agreement to loan the Debtor this $2 million, on June 20, 2008, Regions, the Greenwald Lenders and GFB entered into a letter agreement (the ***"Letter Agreement"***) that modified and made GFB a party to the Intercreditor Agreement.

In January of 2009, Lexi North Bay, LLC (***"North Bay"***), which is an entity owned and controlled by RAM Real Estate (***"RAM"***), an investor and lender, purchased the Loan from Regions at a discount, as a defaulted loan.    In June 2009, North Bay sued the Debtor in state court, to foreclose its claimed first mortgage lien (the "***Foreclosure Action***").

On the Petition Date, the Debtor and Scott and Amy Greenwald (also defendants in the Foreclosure Action) jointly removed the Foreclosure Action to this Court, where it was assigned Adversary Proceeding Case Number 10-03254-AJC. On July 14, 2010, North Bay filed a motion to remand the Foreclosure Action to State Court. The Debtor filed a response in opposition to this motion on August 18, 2010, to which Scott and Amy Greenwald filed a joinder on the same date.  North Bay filed a reply in support of its motion on August 30, 2010. The motion to remand was heard by the Court on September 20, 2010 and on December 14, 2010, the Court entered the Order Granting Lexi North Bay, LLC's Motion to Remand [ECF No. 25].

The Debtor has paid North Bay and its predecessor over $60,000,000 in principal and note rate interest under the loan. The last payment of principal and note rate interest was paid by the Debtor at the end of 2012 and there is no dispute that the principal and note rate interest has been paid in full to North Bay. During the pendency of the Foreclosure Action and the bankruptcy case, the Debtor has sold and closed all but two residential units and paid North Bay $17,287,430 in principal plus $1,140,280 of note rate interest, totaling $18,427,620. Further, pre-petition and pursuant to an Order in the State Court foreclosure action, the Debtor and North Bay reached an agreement on the use of the rental income generated at the Property which allows the Debtor to use North Bay's cash collateral to fund the Debtor's operations (***"Rental Income"***).

The Foreclosure Action was stayed as to the Debtor and was ultimately dismissed pursuant to the Settlement Agreement with North Bay described in Subsection (D)(8) below.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

### C.    Mezzanine Lender: NBV LOAN ACQUISITION, LLC

The Debtor's mezzanine lender, NBV Loan Acquisition, LLC ("**NBV**") (successor in interest to Florida Community Bank, N.A. ("**FCB**") and Great Florida Bank ("**GFB**")), has a judgment against the Debtor for $14,629,325 .

FCB acquired GFB on January 31, 2014, at which time Claim No. 7 and related assets at issue in this action and in the related adversary proceedings (Case Nos. 10-AP-3582-AJC and 10-AP-3254-AJC) were assigned to FCB, who was thereupon substituted in the place and stead of GFB in this case and the adversary proceedings. On January 20, 2016, the Court entered its *Order Upon Defendant/Cross-Plaintiff's/Counter-Plaintiff's, Florida Community Bank, N.A. (1) Motion for Substitution of Party [ECF 220] and (2) Motion for Protection, etc. and Supplement Thereto* [ECF 222 & 229] pursuant to which NBV was substituted as the party of record in the place and stead of FCB in the Lien Adversary Proceeding. On December 19, 2015, FCB filed its Motion for Substitution of Party [ECF No. 272] which was granted on February 4, 2016 [ECF No. 289] pursuant to which NBV was substituted as the party of record in the place and stead of FCB in the above-captioned bankruptcy case.

GFB funded the mezzanine loans originally provided to the Debtor by Allan and Jill Greenwald, the parents of Scott Greenwald, the Debtor's principal. The mezzanine loans were provided in two portions: $6,000,000 in 2005 and $2,000,000 in 2008. At the time the loans were made, Allan and Jill Greenwald assigned all of their interests and rights in the loans as collateral to GFB.

### D.    The Bankruptcy Case

On June 23, 2010 ("**Petition Date**"), the Debtor filed a Voluntary Petition for relief under chapter 11 of the United States Bankruptcy Code [ECF No. 1]. The Debtor continues to manage and operate its business as a debtor in possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been sought or appointed.

On July 1, 2010, the Debtor filed its Case Management Summary.

On July 1, 2010, the Debtor filed its application to employ Peter D. Russin, Esquire, and the law firm of Meland Russin & Budwick, P.A. ("**MRB**") [ECF No. 15], which was approved on an interim basis on July 13, 2010 [ECF No. 30]. A final order was entered on August 20, 2010 [ECF No. 55].

On July 1, 2010, the Debtor also filed its application to employ Gary L. Brown, Esquire, and the law firm of Eisinger, Brown, Lewis, Frankel, Chaiet & Krut P.A. as Special Counsel for Certain real estate closings [ECF No. 20], which was approved on an interim basis on July 13, 2010 [ECF No. 32]. A final order was entered on August 20, 2010 [ECF No. 56].

Additionally, on July 1, 2010, the Debtor filed its *Emergency Motion for (I) Order Authorizing the Sale of Residential Condominium Units Pursuant to 11 U.S.C. 363, Free and Clear of All Liens, Claims and Encumbrances and (II) Establishing Procedures for Future Sales*

*of Condominium* Units [ECF No. 13] which was approved by the Court on August 30, 2010 [ECF No. 59].

The 341 Meeting of Creditors was held on July 23, 2010 [ECF No. 8]. The United States Trustee docketed a notice of non-appointment of a committee of unsecured creditors pursuant to 11 U.S.C § 1102.

On November 15, 2010, the Debtor filed its Disclosure Statement [ECF No. 85] and Plan of Reorganization [ECF No. 84].

On November 19, 2015 the Debtor filed its Ex Parte Application to Employ Elliot B. Kula, W. Aaron Daniel and Kula & Associates, P.A. (the "**K&A Application**") [ECF No. 267] to represent the Debtor regarding current and potential appellate issues in the Bankruptcy Court, the District Court and the Eleventh Circuit Court of Appeals. The K&A Application was approved on November 20, 2015 [ECF No. 268].

On February 22, 2016, the Debtor filed its Second Amended Disclosure Statement [ECF No. 292] and Second Amended Plan of Reorganization [ECF No. 293].

On January 28, 2019, the Debtor filed its Third Amended Disclosure Statement [ECF No. 398] and Third Amended Plan of Reorganization [ECF No. 399].

### 1.    Claims Bar Date

On June 25, 2010, the Bankruptcy Court set a deadline requiring anyone holding or asserting a claim against the Debtor to file a proof of claim on or before October 21, 2010 (the "**Claims Bar Date**") [ECF No. 8].

### 2.    Purchase and Sale Agreements and Closings

On July 1, 2010, the Debtor filed *Debtor's Emergency Motion for (I) Order Authorizing the Sale of Residential Condominium Units Pursuant to 11 U.S.C. 363, Free and Clear of All Liens, Claims and Encumbrances and (II) Establishing Procedures for Future Sales of Condominium Units* [ECF No. 13], which was granted by Court Order dated July 30, 2010 [ECF No. 42].

Further, on August 30, 2010, the Court entered its *Order Establishing Procedures for Future Sales of Condominium Units* [ECF No. 59], which provides that the Debtor is authorized to undertake the following procedures with respect to the future sales of unsold units:

a.    Periodically, the Debtor shall provide to (a) North Bay (b) counsel to any statutory committee, and (c) any other party asserting a lien against the Debtor (collectively, the "**Sales Notice Parties**") a list (the "**List**") of unsold units as to which a purchase and sale agreement has been received by the Debtor, which List shall set forth the proposed gross cash sale

prices offered by the prospective purchaser and the total net sales proceeds generated from the sale.

b.     Any Sales Notice Party objecting to the proposed sales price of any unsold unit on the list must provide written notice of the objection to undersigned counsel for the Debtor within ten days of receipt of the List.

c.     If the Debtor does not receive an objection to the proposed sale described on the List within such ten-day period, the Debtor may proceed to close the sale of each unsold unit described on the List for a price equal to or greater than the gross sale price listed on the List, free and clear of all liens, claims and encumbrances. The Debtor shall remit the net sales proceeds to North Bay in accordance with the Cash Collateral Order or an agreement between North Bay and the Debtor. The Debtor may pay any and all normal and customary costs of closing, including brokerage commissions, and any real estate taxes owed. The Debtor will promptly file with the Court a Certificate of No Objection as to the relevant units and serve such Certificate on the Sales Notice Parties.

d.     If any Sales Notice Party timely serves a written objection to the proposed sales price of any unsold unit, the Debtor shall file a motion seeking a resolution of such dispute.

### 3.     The Use of Cash Collateral

From August 2010 through January 2013, the Court entered nine interim cash collateral orders, all of which were agreed to by North Bay. Pursuant to the terms of the *Order (I) Granting Ninth Agreed Motion for Continued Interim Approval of Use of Cash Collateral; (II) Granting Adequate Protection; and (III) Scheduling a Final Hearing* (the "***Ninth Cash Collateral Order***"), the Debtor was required to pay to North Bay the remaining amounts owed to North Bay on its claim representing principal and note rate interest." [ECF No. 209]. On December 5, 2012, the Debtor made a wire payment to North Bay in the amount of $453,038.00 representing the remaining amounts owed to North Bay for principal and note rate interest (the "***Final Payment***").

Since the expiration of the Ninth Cash Collateral Order, the Debtor continues to operate its business and has paid its expenses for such operations from its funds in its DIP Account and from the proceeds of debtor-in-possession financing, as set forth below. Those expenses include, but are not limited to, advertising, insurance, taxes, condominium association fees, utilities and buildout expenses, all of which are in connection with the Debtor's business and its day-to-day operations, and all of which have been disclosed in the monthly DIP Reports filed by the Debtor.

On January 13, 2016 North Bay filed its *Motion to Prohibit Use of Cash Collateral and to Compel Turnover of Cash Collateral* (the "***Motion to Prohibit***") [ECF No. 277] which was objected to by the Debtor [ECF No. 283] and, pursuant to the Settlement of the Lien Adversary Proceeding described in subsection 8 below, has been withdrawn by North Bay with prejudice.

### 4. DIP Reports

As required under the Bankruptcy Code, the Debtor files its Debtor-In-Possession Monthly Operating Reports. All DIP Reports are available for review by parties in interest.

### 5. Marketing of Property

Scott Greenwald, President of the Debtor, has successfully procured purchasers of Units and has continued to market and sell Units. Although he could be entitled to be paid for these actions, Mr. Greenwald is receiving zero compensation or commissions for these efforts and has undertaken them solely to benefit the estate and its creditors. To date, Mr. Greenwald is responsible for selling and closing 72 Units. The Debtor may utilize a broker to sell the remaining Units.

Note: As a result of continued unit sales from the rental pool, the Residential Rental Income has declined.

### 6. Condominium Association

The Lexi Condominium Association, Inc. (“*Association*”) was incorporated on July 26, 2007. First Service Residential provides management for the Association. Turnover of the Condominium Association to the other unit owners occurred on March 30, 2011, pursuant to the Court's Order Granting Motion for Order Authorizing Turnover [ECF No. 117].

The Association filed Claim No. 10-1 as a secured claim for its alleged statutory lien granted pursuant to Chapter 718, Florida Statutes, as well as the lien rights contained in the Declaration of Condominium in the amount of $368,293.67. Claim No. 10-1 has been resolved as further described in Article III, Section B(3) below.

Further, the Association filed Claim Nos. 11-1 and 11-2 (amending Claim No. 11-1) as an unsecured claim as contingent and unliquidated to the extent the Association has any claims against the Debtor, which include, without limitation, construction and management issues, warranty claims, construction defects, the completion of construction, including improvements. Claim Nos. 11-1 and 11-2 have been resolved as further described in Article III, Section B(3) below.

The Debtor and the Association have also previously addressed and resolved other issues between them including the payment of postpetition assessments, clarifications regarding rights involving certain areas of the Property, leases with retail tenants, exhaust vents, parking spaces and waste management, etc., and although these matters were resolved in the ordinary course of operations between the Debtor and the Association, in an abundance of caution, the Debtor will be filing a Rule 9019 settlement motion with the Court on negative notice so a corresponding order can be entered prior to Confirmation.

On or about January 24, 2019, at a duly noticed Special Meeting of the Board of

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

Directors and a Membership Meeting of the Association, the Board of Directors and members of the Association approved the adoption of a special assessment in the amount of approximately $6,225,000 for the purposes of funding a construction project at the Property, which includes mandatory remediation and amenity improvements.  By virtue of its ownership of two residential units and two commercial units at the Property, the Association asserts that the Debtor's obligation for the special assessment totals $502,903 (the "Special Assessment") which may be payable in a lump sum or monthly over a 10-year period.  The Debtor's monthly payment to the Association of the Special Assessment is reflected in the projections attached to this Disclosure Statement.  The Debtor reserves its rights to object to the adoption, amount and allocation of this Special Assessment.

**7.     Commercial Rental Space**

Neal Property Management Inc. provides management services for the Commercial Rental Space.

**8.     Adversary Proceedings**

On June 23, 2010, North Bay filed its Joint Notice of Removal [ECF No. 1] in Case No. 10-03254-AJC. This adversary proceeding was closed on December 15, 2010.

On September 9, 2010, the Debtor filed its *Complaint to Determine the Validity, Priority and Extent of Liens ("**Lien Adversary Proceeding**")* [ECF No. 1 in Case No. 10-03582-AJC]. Pursuant to the Lien Adversary Proceeding the Debtor sought a determination of the validity, priority, and extent of North Bay's and GFB's conflicting asserted liens over the Property along with other claims. GFB, in turn, cross-claimed against North Bay, seeking (1) imposition of an equitable lien; and (2) determination of the validity, priority and extent of North Bay's and GFB's asserted liens.

The Debtor has paid North Bay and its predecessor over $60,000,000 in principal plus note rate interest under the loan. The last payment of principal and note rate interest was paid by the Debtor at the end of 2012, and there is no dispute that the principal and note rate interest has been paid in full to North Bay. However, the main previously remaining (but now settled) dispute in this case regarded the propriety of North Bay's claim to prepetition default interest on the loan and GFB's crossclaim. These issues were to be resolved by the Lien Adversary Proceeding. All pending motions for summary judgment were denied by the Bankruptcy Court, and the parties were ordered to proceed to trial on March 17, 2016 (Adv. Case No. 10-03582-AJC; ECF No. 214) (the "*Trial*").

Trial of the Adversary Proceeding moved forward as scheduled, commencing on March 17, 2016. Additional trial days were scheduled for April 15, 2016, April 20, 2016, April 21, 2016, and April 22, 2016. However, prior to the continued trial date of April 22, 2016, the Debtor, NBV, North Bay, Scott Greenwald, Amy Greenwald, Allen Greenwald and the Estate of Jill Greenwald (each a "*Party*" and together the "*Parties*") participated in good-faith settlement negotiations and reached an amicable resolution and on April 21, 2016, entered into a Settlement

Term Sheet (the "*Settlement Agreement*") resolving the main remaining dispute in the Lien Adversary Proceeding.

On May 3, 2016, Debtor filed its *Motion for Approval of Compromise and Settlement with Lexi North Bay, LLC and NBV Loan Acquisition, LLC* (the "**Motion to Approve Settlement**") [ECF No. 305].

On May 19, 2016, North Bay filed its Response to the Motion to Approve Settlement (the "**North Bay Response**") [ECF No. 313], pursuant to which North Bay represented to the Court that the Settlement Motion "accurately reflects the terms of the parties [Settlement Agreement] and that the settlement is in the best interests of the estate and all the creditors" and requested that the Court approve the Settlement Agreement.

The Settlement Agreement fully sets forth the settlement terms agreed to by the Parties. The key terms of the Settlement Agreement are the following:[2]

a.  Lexi shall pay to North Bay the sum of $3,500,000.00 (plus interest) as described in Exhibit A to the Settlement Agreement on the terms described therein (the "**North Bay Payment**") in full and final payment of any and all amounts North Bay has claimed or may claim is due under the various notes and other loan documents associated with North Bay's loan to Lexi. Lexi shall pay North Bay $1,000,000 of the North Bay Payment (the "**North Bay Initial Payment**") within five (5) business days of an Order granting the instant Motion becoming final and non-appealable (the "**Payment Date**"). The balance of $2.5 million payable to North Bay shall be evidenced by a note and mortgage the terms of which are more particularly described on Exhibit A to the Settlement Agreement. The North Bay Loan Documents described in Exhibit A to the Settlement Agreement shall be executed by the Parties on the Payment Date.

b.  Lexi shall file a motion seeking approval of the Settlement Agreement (the "**9019 Motion**") on or before May 3, 2016 and shall promptly seek the entry of an Order granting same. North Bay and NBV shall use their best effort to assist Lexi in this regard.

c.  Lexi shall include the treatment of North Bay's claim in Lexi's Third Amended Plan, which North Bay shall support and vote for. However, nothing in the Settlement Agreement is contingent on plan approval.

d.  No later than April 26, 2016 (which has been extended by the Parties to May 3, 2016), North Bay and its parent or subsidiary companies,

---

[2] To the extent the terms set forth in this Disclosure Statement differ from those set forth in the Settlement Agreement, the Settlement Agreement controls. Further, as of the date hereof, all of the settlement terms, requirements and obligations have been complied with, addressed and completed by the respective settlement parties.

affiliates, past and present officer, shareholders, members, directors, attorneys employees, agents, partners (whether general or limited), successors, executors, administrators, licensees, or assigns, on the one hand, and Lexi, Alan Greenwald and the Estate of Jill Greenwald, Scott and Amy Greenwald, and NBV and each of their parent or subsidiary companies, affiliates, past and present officers, shareholders, members, directors, attorneys, employees, agents, partners (whether general or limited), successors, executors, administrators, licensees, or assigns, on the other hand, shall exchange mutual general releases, which shall be effective upon payment in full of the North Bay Payment but in no event shall liability for any Party to North Bay exceed the balances due of the amounts set forth on Exhibit A (the North Bay Payment) to the Settlement Agreement.

e. NBV's claims against Lexi, which shall be subordinate to any and all obligations of Lexi to North Bay pursuant to the terms of the Settlement Agreement, shall not be released as part of the settlement. Lexi and NBV shall seek to resolve NBV's claims against Lexi promptly subject to Bankruptcy Court approval.

f. Within five (5) business days of payment in full of the North Bay Initial Payment, the Parties shall file a stipulation of dismissal with prejudice of the Adversary Proceeding in its entirety, with each party to bear its own fees and costs.

g. Within five (5) business days of payment in full of the North Bay Initial Payment, the state court litigation claims currently pending by NBV against Lexi and North Bay shall be dropped with prejudice with all Parties to bear their own fees and costs.

h. Within five (5) business days of payment in full of the North Bay Initial Payment, the state court action brought by North Bay against the Guarantors shall be dismissed without prejudice, with all parties to bear their own fees and costs. The counterclaims brought by Guarantors against North Bay in such state court action shall be dismissed with prejudice.

i. North Bay shall withdraw with prejudice any and all pending motions and other pending pleadings it has filed in Lexi's bankruptcy, including, but not limited to, any and all motions for stay relief, motions to prohibit use of cash collateral, North Bay's Plan, and North Bay's Disclosure Statement, but not until an Order granting the 9019 Motion becomes final and non-appealable.

j. The Parties reserve all rights and claims they do or may have against Regions Bank and participating banks, which rights and claims are not

and shall not be released. Nothing in the Settlement Agreement shall be construed as effectuating any such release in favor of Regions Bank and participating banks.

    k.   The Parties agree to prepare and execute any and all documents reasonably necessary to effectuate the Settlement Agreement promptly.

    l.   Lexi and NBV shall jointly move to vacate the District Court's September 17, 2014, docketed September 18, 2014, appellate order (the *"Appellate Order"*). North Bay will not oppose such motion. Lexi and NBV agree that the Appellate Order shall have no force and effect.

    m.   In compliance with and pursuant to Paragraph 22 of the Intercreditor Agreement, North Bay, as Senior Loan Agent, approves of the sale, assignment, and transfer of the Junior Debt (as defined in the Intercreditor Agreement) from Great Florida Bank to Florida Community Bank to NBV.

On June 2, 2016 the Court entered its *Order Granting Debtor's Motion for Approval of Compromise and Settlement with Lexi North Bay, LLC and NBV Loan Acquisition, LLC* (the "***Order Approving Settlement***") [ECF No. 318].

No other adversary proceedings have been filed in this bankruptcy proceeding.

### 9.    Debtor in Possession Financing

Pursuant to a supplemental agreement between North Bay and the Debtor, the Debtor would receive a $250,000 discount off the $2,500,000 it was required to pay North Bay on its Note and Mortgage in connection with the Settlement Agreement if that payment was made prior to or on May 31, 2017. Accordingly, the Debtor sought post-petition Debtor in Possession financing in an amount up to $3,600,000 to be used by the Debtor to (1) pay off North Bay in time to qualify for the $250,000 discount and (2) utilize the remaining funds for business operations and other expenses in furtherance of the Debtor's Chapter 11 case. NBV agreed to provide the financing, and on May 15, 2017, the Debtor filed its Emergency Motion for Authority to Obtain Post Petition Financing [ECF No. 337] (***"NBV DIP Loan"***). The Condominium Association filed its Objection to Debtor's Emergency Motion For Authority to Obtain Post Petition Financing [ECF No. 345], which was denied by the Court as it was ultimately resolved by agreement with the Debtor as set forth in the Court's *Order Granting (I) Debtor's Emergency Motion for Authority to Obtain Post Petition Financing; (II) Resolving Creditor Lexi Condominium Association, Inc's Objection to Debtor's Emergency Motion to Obtain Post-Petition Financing (ECF No. 345); and (III) Resolving and Settling Creditor Lexi Condominium Association Inc.'s Claims Numbers 10 and 11-2 in their Entirety* [ECF No. 346][3].

A few months later, on September 6, 2017, the Debtor filed its Motion for Authority to

_____

[3] The settlement with the Condominium Association is set forth in the treatment of Class 3 below.

Obtain Postpetition Financing from Marquis Bank [ECF No. 350] in which Marquis Bank would be replacing NBV as the Debtor's senior secured lender (*"Marquis DIP Loan"*). The Court entered its *Order Granting Debtor's Motion For Authority to Obtain Postpetition Financing form Marquis Bank on October 11, 2017 [ECF No. 358]*, enabling the assignment of the NBV DIP Loan to Marquis Bank, and to enable the Debtor to utilize the financing proceeds to fund tenant improvements and related costs and commissions in connection with leasing opportunities, fund business operations and other expenses of the Debtor, and the payment of the Debtor's professionals as approved by the Court.

## ARTICLE III
## CHAPTER 11 PLAN

THE FOLLOWING IS A SUMMARY OF THE PLAN. THE FOLLOWING SUMMARY IS QUALIFIED IN ITS ENTIRETY BY THE PLAN, WHICH IS ATTACHED HERETO AS "**EXHIBIT A**." IF THERE IS ANY INCONSISTENCY BETWEEN THE DISCLOSURE STATEMENT AND THE PLAN, THE PLAN CONTROLS. THIS SUMMARY ONLY HIGHLIGHTS SUBSTANTIVE PROVISIONS OF THE PLAN. CONSIDERATION OF THIS SUMMARY WILL NOT, NOR IS IT INTENDED TO, CREATE A THOROUGH UNDERSTANDING OF THE PLAN. ALL HOLDERS OF CLAIMS AND INTERESTS ARE URGED TO REVIEW THE PLAN CAREFULLY. THE PLAN, IF CONFIRMED, WILL BE BINDING ON THE DEBTOR AND ALL HOLDERS OF CLAIMS AND INTERESTS.

A.    **Administrative Claims**

1.    **Professional fees**: At this time the Debtor does not know the amount of attorneys' fees and costs that will ultimately be sought by the Debtor's attorneys. In this complicated case that has spanned nearly nine years, there has been significant litigation and numerous appeals. As such, as of May 31, 2019, MRB has unpaid fees of $2,257,507.88 and unpaid costs of $28,028.77. MRB may file additional interim fee applications and will be filing a final fee application. The attorneys' fees and costs and other professional fees shall be paid in full on the Effective Date of the Plan or as otherwise agreed between the Debtor and each administrative claimant.

The Debtor reserves the right to retain an accountant and special litigation or tax appeal counsel, if required.

2.    **United States Trustee Fees:** The Debtor shall pay the U.S. Trustee the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6), within ten (10) days of the Effective Date, for pre-confirmation periods. The Debtor shall further pay the U.S. Trustee the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements made by the Debtor, respectively, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code.  After the Confirmation Date, the Debtor shall file a quarterly Post-Confirmation Operating Report which shall include, among other things, all payments made

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

under the Plan and payments made in the ordinary course of business. The Post-Confirmation Operating Report shall be filed quarterly until the Court enters a Final Decree, dismisses the case, or converts the case to another chapter in bankruptcy.

      **3.**      **Time for filing Administrative Claims:** The Debtor intends to file a Motion to Set Administrative Claims Bar Date which will result in the entry of order of the Court setting an Administrative Claims Bar Date. Failure to timely file an Administrative Claim prior to the Administrative Claims Bar Date will result in such claim being forever barred and discharged unless otherwise ordered by the Court. This requirement shall not apply to post-petition ad valorem taxes.

      **4.**      **Approval of Administrative Claims:** All Administrative Claims are subject to allowance by the Bankruptcy Court and its determination of the reasonableness of the amounts. Any party in interest can object to any claim for administrative fees and expenses.

      **5.**      **Payment of Allowed Administrative Claims:** The holders of Allowed Administrative Claims shall receive, on account of such claims, cash in the amount of such claims (i) on the later of the Effective Date or within ten (10) days any such claims are determined to be Allowed or (ii) at the option of the Debtor, in accordance with the ordinary business terms of payment of such claims. Professionals employed at the expense of the estate of the Debtor and entities who may be entitled to reimbursement for the allowance of fees and expenses from the estate of the Debtor pursuant to §503(b) of the Bankruptcy Code, shall receive cash in the amount awarded to such professionals and entities at such times and only in accordance with the final order entered pursuant to §330 or §503 of the Bankruptcy Code.

    **B.**      **Secured Claims**

    **1.**      **Allowed Secured Claim of Miami-Dade County Tax Collector (Class 1):**

      Class 1 consists of the Allowed Secured Claim of The Miami-Dade County Tax Collector (the "***MDCTC***"), plus statutory interest, for accrued and unpaid real property taxes for the Property (the "***MDCTC Claim***"). MDCTC filed Claim No. 1 in the amount of $1,567,542.21, which includes estimated taxes for 2010 and taxes for Units which had not been sold as if the time of filing. The MDCTC Claim has been eliminated by payments made from the Unit sales and the cash collateral account. All real estate taxes are paid through 2018 with only future prorations of 2019. The real estate taxes will continue to be paid out of Unit closings as they occur. Class 1 is unimpaired under the Plan.

    **2.**      **Allowed Secured Claim of Marquis Bank (Class 2):**

      Class 2 consists of the Allowed Secured Claim of Marquis Bank, arising from the Marquis DIP Loan, who shall have an Allowed Secured Claim for up to $3,600,000 (plus interest) secured by the Debtor's real property.

      <u>Pricing, Economic Terms and Fees</u>: Interest accrues on the amount borrowed under the DIP Facility at 6% per annum for a term of sixty (60) months. Repayment calls for 10 monthly

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

interest only payments followed by 49 monthly principal and interest payments based on a 25-year amortization schedule with the remaining principal, accrued interest and any other charges due at maturity.

> Collateral:

- First mortgage, security interest and assignment of rents and leases on a 22,447 SF, commercial condominium unit lot located at 1700 Kennedy Causeway, Unit CU-1, North Bay Village, FL 33141. Miami-Dade County Folio#: 23-3209-051 -1650.
- First mortgage, security interest and assignment of rents and leases on a commercial condominium unit lot located at 1700 Kennedy Causeway, Unit CU-2, North Bay Village, FL 33141. Miami-Dade County Folio#: 23·3209-051-1660.
- First mortgage, security interest and assignment of rents and leases on a 1,735 SF, 2-Bedroom/2-Bath.room, residential condominium unit lot located at 7901 Hispaniola Ave., Unit 706, North Bay Village, FL 33141. Miami-Dade County Folio#: 23-3209-051-0720.
- First mortgage, security interest and assignment of rents and leases on a 1,735 SF, 2-Bedroom/2-Bathroom, residential condominium unit lot located at 7901 Hispaniola Ave., Unit 808, North Bay Village, FL 33141. Miami-Dade County Folio#: 23- 3209-051-1010.
- First Mortgage, Security Interest, and Assignment of Rents and Leases on a 5,000 SF Lot located approximately at the Northeast corner of the Lexi Condo building site located at 1700 Kennedy Causeway, North Bay Village, FL 33141.

> Recourse: Unconditional and unlimited guarantees from Scott Greenwald and Amy Greenwald.

Class 2 is impaired under the Plan and the holder of Allowed Class 2 claim is entitled to vote on the Plan.

### 3.    Allowed Secured Claim of Lexi Condominium Association (Class 3):

Class 3 consists of the Allowed Secured Claim of the Lexi Condominium Association, Inc. (the "*Association*") (the "*Association Secured Claim*").  The Association filed Claim No. 10-1 for its alleged statutory lien granted pursuant to Chapter 718, Florida Statutes, as well as the lien rights contained in the Declaration of Condominium in the amount of $368,293.67. The Association also filed Claim 11-1 as an unsecured claim that is contingent and unliquidated to the extent the Association has any claims against the Debtor arising from alleged defects in construction and filed amended Claim 11-2 as an unsecured claim stemming from alleged defects in construction, in the amount of $1,878,593 (the "*Association Unsecured Claim*"). The Association Secured Claim and Unsecured Claim have been resolved pursuant to the *Order Granting (I) Debtor's Emergency Motion for Authority to Obtain Postpetition Financing; (II) Resolving Creditor Lexi Condominium Association, Inc's Objection to Debtor's Emergency Motion to Obtain Post-Petition Financing [ECF No. 345]; and (III) Resolving and Settling Creditor Lexi Condominium Association Inc.'s Claims Numbers 10 and 11-2 In Their Entirety* [ECF No. 346] ("*Association Settlement*").

The Association Settlement fully sets forth the settlement terms agreed to by the Debtor and the Condominium Association. Pursuant to the Association Settlement, $185,762.16 was paid by the Debtor to the Association from the NBV DIP Loan, and the remaining amount of $184,146.83 will be an allowed secured claim and will be paid upon the Effective Date of the Debtor's Chapter 11 Plan (***"Association Secured Claim"***).

The Association will withdraw the Association Unsecured Claim (Claim No. 11-1 and 11-2) in its entirety upon full satisfaction of the Association Secured Claim. The Association hereby agrees not to raise any objection to said treatment or to the Debtor's Plan as may be amended, on any grounds whatsoever and agrees to vote the full amount of the Association Secured Claim in favor of the Plan, provided the Association receives the treatment of the Association's Secured Claim as set forth herein. Class 3 is impaired under the Plan and holder of Allowed Class 3 claim is entitled to vote on the Plan.

**4.      Allowed 11 U.S.C. § 365(j) Claims (Class 4):**

Class 4 consists of all Allowed 11 U.S.C. § 365(j) Claims. Section § 365(j) of the Bankruptcy Code limits any lien rights of a purchaser whose contract has been rejected under Section 365 to that portion of the purchase price the purchaser has paid. Thus, the holders of Allowed 11 U.S.C. § 365(j) claims maintain a lien limited to the extent of their paid (but used) deposit against their particular Unit upon Court approval of such rejection. The Debtor does not know when any particular Unit relating to each individual deposit will be sold, only that all Units owned by the Debtor that are subject to the Allowed Class 4 Claims will be ultimately sold. When each Unit owned by the Debtor that is subject to an Allowed Class 4 Claim is sold, the lien that was attached to the particular Unit will attach to the Debtor's interest in the Net Sales Proceeds resulting from the sale of the Unit. The Debtor does not expect to reject any of the Purchase and Sale Agreements. If the Debtor does not reject any of the Purchase and Sale Agreements, there will be no holders of Allowed Class 4 Claims.

Holders of Allowed Class 4 Claims shall retain their lien securing their Allowed Class 4 Claim until such Allowed Class 4 Claim is paid in full. Such Class 4 Claimants shall be paid in full from the Net Sales Proceeds from the sale of their particular Unit after Classes 1, 2 and 3 have been paid in full. To the extent that the Net Sales Proceeds are insufficient to pay any Allowed Class 4 Claims, any deficiency shall be treated as an Allowed Class 6 Claim, pursuant to the terms set forth in the Plan. The Debtor reserves the right to object to, settle, compromise or adjust by mediation, arbitration or otherwise the Allowed Class 4 Claim. Class 4 Claims are unimpaired.

**5.      Allowed Priority Deposit Claims (Class 5):**

Class 5 is comprised of the holders of Allowed Priority Deposit Claims. Section § 507(a)(7) of the Bankruptcy Code establishes a priority for "allowed unsecured claims of **individuals**, to the extent of $2,600.00 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, . . . of property, for

the personal, family or household use of such individuals, that were not delivered or provided." This would apply both to the deposit of a leased rental Unit or a deposit for the purchase and sale of a Unit.

### A.    Claimants Whose Purchase and Sale Agreement(s) Have Been Properly Terminated

In the event it is adjudicated by the Court that a purchaser is entitled to a return of its deposit, or if the purchaser has properly terminated its Purchase and Sale Agreement, the purchaser shall be entitled to the return of the portion of its deposit currently held in escrow. The balance of the deposit claim shall be treated as an Allowed General Unsecured Claim (Class 6), as described below. The Debtor is unaware of any such claimants.

### B.    Claimants Who Breached or Defaulted Under Their Purchase and Sale Agreement

In the event a purchaser breached or defaulted under their Purchase and Sale Agreement, the Debtor is entitled to retain the purchaser's entire deposit and the purchaser shall have no claim against the Debtor.

### C.    Claimants Who Perform Fully Under a Lease for a Unit

In the event a lessee to a Lease for a Unit fully performs, once the Lease is terminated claimant shall receive a refund of any security deposit in accordance with the terms of the specific lease agreement.

### D.    Claimants Who Default Under a Lease for a Unit

In the event a lessee to a Lease for a Unit defaults under the Lease, claimant shall forfeit any security deposit and be liable for any statutory damages as set forth in the specific lease agreement.

The Debtor reserves the right to object to, settle, compromise or adjust by mediation, arbitration or otherwise the Allowed Class 5 Claims. Class 5 Claims are unimpaired.

### 6.    Allowed General Unsecured Claims (Class 6):

Class 6 consists of all of the Debtor's Allowed General Unsecured Claims excluding the Allowed Unsecured Claim of Scott Greenwald (Class 7).  All holders of Allowed General Unsecured Claims shall be paid from Rental Income and the Net Sales Proceeds generated by the sale or liquidation of the Debtor's Assets and any Third Party Litigation Claims, including without limitation, the sale of the Units of the Property, in accordance with and as set forth on Exhibit C, at the agreed upon or allowed amount on the Effective Date, only after the Allowed Class 2, Allowed Class 3, Allowed Class 4, and Allowed Class 5 Claims have been paid in full. In the event there are insufficient funds to pay all of the Debtor's Allowed General Unsecured Claims in full, then a first and final *pro rata* distribution shall be made. The Debtor reserves the

right to object to, settle, compromise or adjust by mediation, arbitration or otherwise the Allowed Class 6 Claims. Class 6 Claims are impaired. Class 6 is impaired under the Plan and holders of Allowed Class 6 claims are entitled to vote on the Plan.

### 7.    Allowed Unsecured Claim of Scott Greenwald (Class 7)

Class 7 consists of the Allowed Unsecured Claim of Scott Greenwald totaling $789,363 (Claim No. 6-1). Of particular note, Scott Greenwald voluntarily subordinated his Allowed Unsecured Claim to Class 6. Accordingly, the Allowed Unsecured Claim of Scott Greenwald shall be paid from the Net Sales Proceeds generated by the sale or liquidation of Assets and any Third Party Litigation Claims, including without limitation, the sale of the Units for the Property only after the Allowed Class 2, Allowed Class 3, Allowed Class 4, Allowed Class 5, and Allowed Class 6 Claims have been paid in full. Class 7 Claims are impaired.

### 8.    Equity Interests (Class 8):

Class 8 consists of all holders of allowed equity interests in the Debtor. All Class 8 Equity Interests shall revest in the Reorganized Debtor on the Effective Date.

The holders of allowed equity interests in the Debtor shall retain their equity interests and each holder of an allowed Class 8 equity interest shall receive their pro rata distribution of any and all funds only after Classes 1 through 7 are paid in full.

### ARTICLE IV
### MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

### A.    Source and Application of Funds Upon Confirmation

The Plan is a plan of reorganization. The Debtor's principal sources of revenue are comprised of the Rental Income and the Net Sales Proceeds generated by the sale or liquidation of its Assets and any Third Party Litigation Claims, including without limitation, the sale of the Units of the Property in accordance with and as set forth on the attached Exhibit C. On June 17, 2019, the Debtor filed its Application for an Order Authorizing the Employment of Drew A. Kristol and Marcus and Millichap Real Estate Investment Services Company of Florida as Real Estate Broker and to Approve Representation Agreement [ECF No. 428].

The Plan provides that all Closings on the sales of Units shall be free and clear of liens, claims, encumbrances and interests with liens, claims, encumbrances and interests attaching to the proceeds of such sales. The Allowed Claims shall be paid pursuant to the terms set forth above.

### B.    Prosecution of Third-Party Litigation Claims

The Debtor's Plan will also be implemented through the prosecution of claims against third parties, if any. On the Effective Date, the Reorganized Debtor shall be authorized, except as provided for in the Plan, to commence and prosecute any and all third-party litigation claims that

arose before, on or after the Petition Date. Proceeds, if any, realized from any third-party litigation claims shall be added to Available Cash. Third Party Litigation claims that have already been initiated and prosecuted by the Debtor include breach of contract, lender liability and damage claims against Regions Bank ("***Regions***"), acting for itself and as administrative agent and collateral agent for Banco Popular North America ("***Banco Popular***"), Bank Midwest, N.A. ("***Bank Midwest***"), First Charter Bank ("***First Charter***"), and Fifth Third Bank ("***Fifth Third***").

On May 14, 2010, Great Florida Bank, predecessor in interest to NBV[4], filed a Complaint (the "***Complaint***") naming the Debtor and other defendants in the action captioned NBV Loan Acquisition, LLC v. Lexi Development Company, Inc., Regions Bank, First Third Bank, N.A. (f/k/a First Charter Bank), Banco Popular North America, Bank Midwest, N.A., and Lexi North Bay, LLC, Case No. 10-28467 CA-15, pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "***State Court Action***"). The single claim against the Debtor sought an equitable lien on real property; however, that claim was automatically stayed when the Debtor filed this bankruptcy proceeding.

On August 9, 2016, the Debtor filed its Cross-Claim against Regions Bank (the "***Cross-Claim***").

On August 26, 2016, NBV filed an Amended Verified Complaint ("***Amended Complaint***"), which did not include any claims against the Debtor.

On October 13, 2016, Regions Bank moved to dismiss the Cross-Claim.

On November 23, 2016, this Court granted NBV's motion to modify the automatic stay in order to assert a claim against the Debtor in the State Court Action. [ECF No. 329].

On December 7, 2016, NBV filed its Verified Amendment to the Amended Complaint (the "***Verified Amendment***"), adding a claim against the Debtor for pre-petition breach of contract.

The Cross-Claim alleges a cause of action against Regions Bank for breach of contract. Specifically, the Cross-Claim arises from beaches of the same contract at issue in the Amended Complaint.

On December 29, 2016, Lexi filed the Notice of Removal [ECF No. 1, Adversary Proceeding No. 16-01754-AJC] ("***Pending Trial Court Case***" or "***AP 16-01754***") which

---

[4] Florida Community Bank, N.A. ("***FCB***") acquired Great Florida Bank ("***GFB***") on January 31, 2014, at which time Claim No. 7 and related assets at issue in this action and in the related adversary proceedings (Case Nos. 10-AP-3582-AJC and 10-AP-3254-AJC) were assigned to FCB, who was thereupon substituted in the place and stead of GFB in this case and the adversary proceedings. On January 20, 2016, the Court entered its *Order Upon Defendant/Cross-Plaintiff's/Counter-Plaintiff's, Florida Community Bank, N.A. (1) Motion for Substitution of Party [ECF 220] and (2) Motion for Protection, etc. and Supplement Thereto* [ECF 222 & 229] pursuant to which NBV was substituted as the party of record in the place and stead of FCB in the Lien Adversary Proceeding. On December 19, 2015, FCB filed its Motion for Substitution of Party [ECF No. 272] which was granted on February 4, 2016 [ECF No. 289] pursuant to which NBV was substituted as the party of record in the place and stead of FCB.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

removed all claims in the State Court Action to the U.S. Bankruptcy Court for the Southern District of Florida.

On May 1, 2018, Lexi, NBV and the Banks (collectively, the "***Parties***") agreed to mediate prior to any trial in the Pending Trial Court Case with respect to the subject matter of NBV's claim and filed the Joint Stipulation for Mediation [ECF No. 177, AP 16-01754], which was approved by the Court on May 7, 2018. *See* ECF No. 185 in AP 16-01754.

On May 8, 2018, the Court entered its Order Granting Bank Group's Motion to Dismiss Crossclaim [ECF No. 187, AP 16-01754], which dismissed the Crossclaim with prejudice.

Mediation between the Parties took place on May 14, 2018, whereby the Parties reached an amicable resolution and entered into a mediated settlement agreement. The Debtor and NBV also settled litigation with Popular Bank f/k/a Banco Popular North America (***"Popular"***), Armed Forces Bank, N.A. as successor by merger to Bank Midwest, N.A. (***"AFB"***) and Fifth Third Bank, N.A., on behalf of itself and as successor to First Charter Bank (***"FTB"***) (Popular, AFB, and FTB when referred together, ***"Banks"***), as set forth in Debtor's *Motion for Approval of Compromise and Settlement* [ECF No. 377]. Pursuant to the settlements the Banks paid $825,000 to NBV and NBV's ultimate claim against the Debtor's estate will be reduced dollar-for-dollar by the $825,000.  Regions did not participate in this mediation, and thus this mediated settlement agreement did not affect NBV's claim against Regions.

On May 7, 2019, the Court granted Regions' Motion for Order Determining Entitlement to Fees, Costs and Expenses Against Lexi [ECF No. 561, AP 16-01754], which found that Regions is entitled to recover from Lexi its reasonable attorneys' fees, costs, and expenses incurred in connection with the Crossclaim and reserved jurisdiction to determine the amount on a subsequent motion and hearing.  The Debtor reserves all of its rights to challenge this entitlement including, without limitation, all re-hearing and appellate rights.

The Court held the trial of AP 16-01754 on January 22-30, February 1, 11, and 22, and March 15, 2019. At the outset of the trial, the Court announced that it will be entering a judgment against the Debtor, and in favor of NBV, in the full amount of NBV's claim. Following trial, on June 7, 2019, the Court entered its Findings of Fact and Conclusions of Law [ECF No. 563, AP 16-01754] and Final Judgment [ECF No. 564, AP 16-01754]. The Court found for Regions on NBV's claims, and entered judgment in favor of NBV and against the Debtor for $14,629,325.00.

**Claims Against Purchasers that have Defaulted on Purchase Contracts**

Pursuant to the terms and conditions of the real estate contracts that purchasers executed in conjunction with the sale of Units in the Project, in the event that a purchaser breached the contract by defaulting on such purchaser's obligation, the Debtor may be pursuing these claims against the purchasers. The actions may seek recovery of, among other things, damages in connection with certain purchaser breaches of their respective Purchase and Sale Agreements. These potential claims are against: Isaac Sleilatt, Westvest, Barazi, Salvatore Polizzi, Jendomar and Joseph Pisano. The Debtor reserves its right to prosecute against them all causes of action

arising out of such parties involvement with the Project including but not limited to breach of contract and all such claims are expressly reserved.

### C.    Cancellation of Instruments and Other Documentation

Except to the extent otherwise provided under the Plan, or the Confirmation Order, upon the Effective Date, all Prepetition agreements of the Debtor, credit agreements, Prepetition loan documents and Post-Petition loan documents to which the Debtor is a party, and all lien claims and other evidence of liens against the Debtor, shall be deemed to be cancelled and of no further force and effect, without any further action on the part of the Debtor. The holders of or parties to such cancelled instruments, agreements, and other documentation will have no remaining rights arising from or relating to such document or the cancellation thereof, except the rights provided pursuant to the Plan and the Confirmation Order and any rights that, by the terms of the applicable agreement, survive the termination of such agreement.

### D.    Revesting of Assets

Except as otherwise provided in the Plan or Confirmation Order, title to all of the Debtor's Assets will revest in the Reorganized Debtor, free and clear of all claims and interests on the Effective Date. After the Effective Date the Reorganized Debtor may operate its respective property and may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, except as otherwise provided in the Plan or Confirmation Order. As of the Effective Date, the Debtor's Estate will be free and clear of all claims and interest except as otherwise provided in the Plan or the Confirmation Order.

### E.    Post-Confirmation Operations

Following Confirmation, the Reorganized Debtor shall execute such documents and take such other actions as are necessary to make effective the transactions provided for in the Plan.

### F.    Post-Confirmation Accounts

The Debtor may establish one or more interest-bearing accounts as it determines may be necessary or appropriate to effectuate the provisions of the Plan consistent with section 345 of the Bankruptcy Code and any orders of the Bankruptcy Court.

### G.    Closing of the Chapter 11 Case

Notwithstanding anything to the contrary in the Bankruptcy Rules or Local Rules providing for earlier closure of the chapter 11 case, when all Contested Claims against the Debtor have become Allowed Claims or Disallowed Claims, and all remaining Assets of the Debtor have been liquidated and converted into Available Cash (other than those Assets abandoned by the Debtor), and such Available Cash has been distributed in accordance with the Plan, or at such earlier time as the Reorganized Debtor deems appropriate, the Reorganized

Debtor shall seek authority from the Bankruptcy Court to close the chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

### H.    Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily allowed by the Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### I.    Voting Classes

Unless otherwise ordered by the Court, each holder of an Allowed Claim in Classes 2, 3, 6 and 7 are impaired and shall be entitled to vote to accept or reject the Plan and shall be required to return its Ballot on or prior to the Ballot Date. Any holder of a Contested Claim or Interest whose entire Claim or Interest is objected to by the Debtor or other person qualified to object prior to Ballot Date shall <u>not</u> have the right to vote to accept or reject the Plan until the Contested Claim or Interest is resolved unless the holder of such Contested Claim or Interest requests an order from the Court pursuant to applicable Bankruptcy Rules temporarily allowing such Contested Claim for voting purposes. Any Ballot received from any such holder of a Contested Claim or Interest shall not be considered in determining whether the Plan has been accepted by a particular impaired Class of Claims or Interests. If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtor may request a ruling at the Confirmation Hearing that the Plan shall be deemed accepted by the holders of such Claims or Interests in such Class.

### ARTICLE V
### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### A.    Rejection of Executory Contracts and Unexpired Leases; Exceptions

EXCEPT FOR THOSE EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT WILL BE THE SUBJECT OF MOTION(S) TO ASSUME OR REJECT TO BE FILED ON OR BEFORE THE DATE OF THE CONFIRMATION HEARING, ALL PURCHASE AND SALE AGREEMENTS AND LEASE AGREEMENTS FOR RESIDENTIAL UNITS WILL BE DEEMED ASSUMED AND ALL OTHER EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF THE DEBTOR WILL BE REJECTED PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE ON THE EFFECTIVE DATE.

### B.    Approval of Rejection; Rejection Damages Claims Bar Date

The Confirmation Order shall constitute an Order of the Bankruptcy Court approving the rejections of all the Debtor's executory contracts and unexpired leases that have not been assumed by the Debtor pursuant to Court Order. Any Claim for damages arising from any such rejection must be filed within 30 days from the date of service of the Confirmation Order or such

Rejection Claim shall be forever barred, shall not be enforceable against the Debtor, its estate or any of their respective properties and shall receive no distribution under the Plan or otherwise on account of such Rejection Claim. **TO REITERATE, THE FAILURE TO TIMELY FILE EXECUTORY CONTRACT REJECTION CLAIMS SHALL BAR SUCH CLAIMS AND THE HOLDERS THEREOF SHALL NOT BE ENTITLED TO ANY DISTRIBUTIONS UNDER THE PLAN.**

### C.    Treatment Under the Plan of Executory Contract Rejection Claims

Unless otherwise ordered by the Bankruptcy Court, an Allowed Executory Contract Rejection Claim shall be treated as an Allowed General Unsecured Claim (i.e., Allowed Class 6) under the Plan.

### D.    Section 1146 Exemption

To the fullest extent permitted under section 1146(a) of the Bankruptcy Code, the execution, delivery or recording of an instrument of transfer made after the Plan is confirmed, or the transfer or sale of any real, personal or other Property by the Debtor, Trustee, or Reorganized Debtor made after the Plan is confirmed, shall be considered a transfer made after confirmation of the Plan and shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax.

The execution, delivery or recording of an instrument of transfer made prior to the confirmation of the Plan, or the transfer or sale of any real, personal or other Property by the Debtor or Trustee made prior to confirmation of the Plan, shall be subject to all applicable transfer taxes.

**ARTICLE VI**
**TAX CONSEQUENCES**


**CERTAIN UNITED STATES FEDERAL**
**INCOME TAX CONSIDERATIONS OF THE PLAN**

**TO ENSURE COMPLIANCE WITH TREASURY DEPARTMENT CIRCULAR 230, CLAIMHOLDERS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE RELIED UPON, AND CANNOT BE RELIED UPON, BY CLAIMHOLDERS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON CLAIMHOLDERS UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS BEING USED IN CONNECTION WITH THE PROMOTION (WITHIN THE MEANING OF CIRCULAR 230) BY THE DEBTOR OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) CLAIMHOLDERS**

**SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.**

A summary description of certain U.S. federal income tax consequences of the Plan is provided below. The description of tax consequences below is for informational purposes only and is subject to significant uncertainties. Only the principal consequences of the Plan for the Debtor and for the holders of Claims who are entitled to vote to confirm or reject the Plan are described below. No opinion of counsel has been sought or obtained with respect to any tax consequences of the Plan, and no tax opinion is being given in this Disclosure Statement. No rulings or determinations of the Internal Revenue Service ("**IRS**") or any other tax authorities have been obtained or sought with respect to the Plan, and the description below is not binding upon the IRS or such other authorities.

The following discussion of U.S. federal income tax consequences is based on the Internal Revenue Code of 1986, as amended (the "**Tax Code**"), regulations promulgated and proposed thereunder and judicial decisions and administrative rulings and pronouncements of the IRS as in effect on the date hereof. Legislative, judicial or administrative changes or interpretations enacted or promulgated in the future could alter or modify the analyses and conclusions set forth below. It cannot be predicted at this time whether any tax legislation will be enacted or, if enacted, whether any tax law changes contained therein would affect the tax consequences to holders. Any such changes or interpretations may be retroactive and could significantly affect the U.S. federal income tax consequences discussed below.

**THIS DISCUSSION DOES NOT ADDRESS FOREIGN, STATE OR LOCAL TAX CONSEQUENCES OF THE PLAN, NOR DOES IT PURPORT TO ADDRESS THE U.S. FEDERAL TAX CONSEQUENCES OF THE PLAN TO SPECIAL CLASSES OF TAXPAYERS (SUCH AS FOREIGN ENTITIES, NONRESIDENT ALIEN INDIVIDUALS, PASS-THROUGH ENTITIES SUCH AS PARTNERSHIPS AND HOLDERS THROUGH SUCH PASS-THROUGH ENTITIES, S CORPS AND CORPORATIONS, MUTUAL FUNDS, INSURANCE COMPANIES, FINANCIAL INSTITUTIONS, SMALL BUSINESS INVESTMENT COMPANIES, REGULATED INVESTMENT COMPANIES, CERTAIN SECURITIES TRADERS, BROKER-DEALERS AND TAX-EXEMPT ORGANIZATIONS). FURTHERMORE, ESTATE AND GIFT TAX ISSUES ARE NOT ADDRESSED HEREIN AND TAX CONSEQUENCES RELATING TO THE ALTERNATIVE MINIMUM TAX ARE GENERALLY NOT DISCUSSED HEREIN.**

**THE DISCUSSION CONTAINED IN THIS DISCLOSURE STATEMENT AS TO FEDERAL TAX CONSIDERATIONS IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE OF AVOIDING PENALTIES.**

**NO REPRESENTATIONS ARE MADE REGARDING THE PARTICULAR TAX CONSEQUENCES OF THE PLAN TO ANY HOLDER OF A CLAIM OR EQUITY INTEREST. EACH HOLDER OF A CLAIM OR EQUITY INTEREST IS STRONGLY URGED TO CONSULT ITS OWN TAX ADVISOR REGARDING THE U.S. FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE PLAN**.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

For purposes of the following discussion, a "US person" is any of the following:

- an individual who is a citizen or resident of the US;
- a corporation created or organized under the laws of the US or any state or political subdivision thereof;
- an estate, the income of which is subject to federal income taxation regardless of its source; or
- a trust that (a) is subject to the primary supervision of a US court and which has one or more United States fiduciaries who have the authority to control all substantial decisions of the trust, or (b) has a valid election in effect under applicable US Treasury regulations to be treated as a US person.

As used herein, the term "U.S. Holder" means a Claimholder that is a United States person, the term "non-U.S. person" means a person other than a United States person and the term "Non-U.S. Holder" means a Claimholder that is a non-U.S. person.

**Certain United States Federal Income Tax Consequences to Holders of Claims**

Holders of Claims should generally recognize gain (or loss) to the extent the amount realized under the Plan (generally the amount of cash received) in respect of their Claims exceeds (or is exceeded by) their respective tax bases in their Claims. The tax treatment of holders of Claims and the character and amount of income, gain or loss recognized as a consequence of the Plan and the distributions provided for by the Plan will depend upon, among other things, (a) the nature and origin of the Claim, (b) the manner in which a holder acquired a Claim, (c) the length of time a Claim has been held, (d) whether the Claim was acquired at a discount, (e) whether the holder has taken a bad debt deduction in the current or prior years, (f) whether the holder has previously included in income accrued but unpaid interest with respect to a Claim, (g) the method of tax accounting of a holder, and (h) whether a Claim is an installment obligation for U.S. federal income tax purposes. **Therefore, holders of Claims should consult their own tax advisors for information that may be relevant to their particular situations and circumstances and the particular tax consequence to such holders as a result thereof**.

The tax treatment of a holder of a Claim that receives distributions in different taxable years is uncertain. If such a holder treats the transaction as closed in the taxable year it first receives (or is deemed to have received) a distribution of cash and/or other property, it should recognize gain or loss for such tax year in an amount equal to the cash and the value of other property actually (and deemed) received in such tax year (other than that received in respect of accrued interest) with respect to its Claim (other than any portion of the Claim that is attributable to accrued interest) plus the estimated value of future distributions (if any) less its tax basis in its Claim (except to the extent its Claim is for accrued interest). A holder should then subsequently recognize additional income or loss when additional property distributions are actually received in an amount equal to the cash and/or value of such other property (other than that received in respect of accrued interest) less the holder's allocable tax basis in its Claim with respect to such subsequent distribution. A holder may have to treat a portion of any such subsequent distribution as imputed interest recognizable as ordinary income in accordance with the holder's method of

tax accounting. If instead the open transaction doctrine applies as a result of the value of the Subsequent Distributions that a holder may receive not being ascertainable on the Effective Date, such holder should not recognize gain (except to the extent the value of the cash and/or other property already received exceeds such holder's adjusted tax basis in its Claim (other than any Claim for accrued interest)) or loss with respect to its Claim until it receives the final distribution thereon (which may not be until the Final Distribution Date). It is the position of the IRS that the open transaction doctrine only applies in rare and extraordinary cases. **Holders of Claims are urged to consult their own tax advisors regarding the application of the open transaction doctrine and how it may apply to their particular situations, whether any gain recognition may be deferred under the installment method, whether any loss may be disallowed or deferred under the related party rules and the tax treatment of amounts that certain holders of Claims may be treated as paying to other holders of Claims**.

Holders of Allowed Claims will be treated as receiving a payment of interest (in addition to any imputed interest as discussed in the preceding paragraph) includible in income in accordance with the holder's method of accounting for tax purposes, to the extent that any cash and/or other property received pursuant to the Plan is attributable to accrued but unpaid interest, if any, on such Allowed Claims. The extent to which the receipt of cash and/or other property should be attributable to accrued but unpaid interest is unclear. Each holder should consult its own tax advisor regarding the determination of the amount of consideration received under the Plan that is attributable to interest (if any). A holder generally will be entitled to recognize a loss to the extent any accrued interest was previously included in its gross income and is not paid in full.

### Allocation of Plan Distributions Between Principal and Interest

The Plan provides that, to the extent that any Allowed Claim entitled to a distribution under the Plan is composed of indebtedness and accrued but unpaid interest on such indebtedness, such distribution will, to the extent permitted by applicable law, be allocated for US federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest. The Reorganized Debtor intends to take the position that any distributions made under the Plan with respect to an Allowed Claim will be allocated first to the principal amount of the Claim, with the excess over the principal amount being allocated to accrued but unpaid interest. However, current US federal income tax law is unclear on this point and no assurance can be given that the IRS will not challenge the Company's position.

### Information Reporting and Backup Withholding

Certain payments, including the payments of Claims pursuant to the Plan, are generally subject to information reporting by the payor (here the Disbursing Agent) to the IRS. Moreover, such reportable payments are subject to backup withholding under certain circumstances. Under the backup withholding rules, a holder of a Claim may be subject to backup withholding at the applicable tax rate with respect to distributions or payments made pursuant to the Plan, unless the holder: (a) comes within certain exempt categories (which generally include corporations) and, when required, demonstrates this fact or (b) provides a correct taxpayer identification number

and certifies under penalty of perjury as to the correctness of its taxpayer identification number and certain other tax matters. Backup withholding is not an additional tax. Rather, the U.S. federal income tax liability of persons subject to backup withholding will be reduced by the amount of tax withheld. If withholding results in an overpayment of U.S. federal income taxes, a holder may obtain a refund of any excess amounts withheld under the backup withholding rules by timely filing the appropriate claim for refund with the IRS.

### Importance of Obtaining Professional Tax Assistance

**THE FOREGOING DISCUSSION IS INTENDED ONLY AS A SUMMARY OF CERTAIN INCOME TAX CONSEQUENCES OF THE PLAN AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE ABOVE DISCUSSION IS FOR INFORMATIONAL PURPOSES ONLY AND IS NOT TAX ADVICE. THE TAX CONSEQUENCES ARE IN MANY CASES UNCERTAIN AND MAY VARY DEPENDING ON A CLAIMHOLDER'S PARTICULAR CIRCUMSTANCES. ACCORDINGLY, HOLDERS OF CLAIMS ARE URGED TO CONSULT THEIR TAX ADVISORS ABOUT THE US FEDERAL, STATE, LOCAL, AND APPLICABLE FOREIGN INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.**

### ARTICLE VII
### LIQUIDATION ALTERNATIVE

As with any Plan, an alternative would be conversion of the chapter 11 case to a chapter 7 case and subsequent liquidation of the Debtor by a duly appointed or elected chapter 7 trustee. In the event of a liquidation under chapter 7 the following is likely to occur:

(1)     An additional tier of administrative expenses entitled to priority over general unsecured claims under § 507(1) of the Bankruptcy Code would be incurred.  Such administrative expenses would include chapter 7 Trustee's commissions and fees to the chapter 7 Trustee's accountants, attorneys and other professionals likely to be retained by him/her for the purpose of liquidating the assets of the Debtor;

(2)     Substantially less than market value will be realized for the Debtor's assets;

(3)     Further claims would be asserted against the Debtor with respect to such matters as income and other taxes associated with the sale of the assets;

(4)     The Plan essentially provides that the Debtor's will develop, market and sell its real property, and thus continue the Debtor's business as a going concern without the additional expense incurred through the appointment of a trustee.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

The Debtor estimates its creditors would receive less of a distribution in the event of a liquidation of the Debtor's Assets by means other than that provided for in the Plan. Therefore, it is in the creditors' best interest to vote for the Plan since a liquidation would clearly result in creditors being paid less, if anything, upon liquidation other than set forth in the Plan. A Liquidation Analysis accompanies this Disclosure Statement as "**Exhibit B**."

## ARTICLE VIII
## ACCEPTANCE AND CONFIRMATION OF THE PLAN

The Debtor believes that the Plan satisfies all of the requirements for confirmation.

### A.   General Confirmation Requirements

Section 1129(a) of the Bankruptcy Code requires that a plan be proposed in good faith, that there be disclosed certain information regarding payment made or promised to be made to insiders, and that the plan comply with the applicable provisions of chapter 11. The Debtor believes that is has complied with these provisions.  Section 1121(a) of the Bankruptcy Code also requires that at least one impaired class accept the plan and that confirmation of the plan will likely not be followed by the need for further financial reorganization.  Classes 2, 3, 6, 7 and 8 are impaired under the Plan. The Debtor believes that such classes will vote to accept the Plan and if not, that "cramdown" will be successful.

### B.   Best Interest Test

Each holder of a Claim or Interest in an impaired Class must either: (I) accept the Plan or (ii) receive or retain under the Plan cash or property of a value, as of the Effective Date of the Plan, that is not less than the value that the holder would receive or retain if the Debtor was liquidated under chapter 7 of the Bankruptcy Code. The Bankruptcy Court will determine whether the Cash paid under the Plan to each Class equals or exceeds the value that would be allocated to the holders in a liquidation under chapter 7 of the Bankruptcy Code (the "Best Interest Test"). The Best Interest Test requires the Bankruptcy Court to find the Plan provides each member of each impaired Class a recovery having a value at least equal to that which each such Class member would receive if the Debtor were liquidated under chapter 7 of the Bankruptcy Code. As illustrated by the Liquidation Analysis, the Debtor believes that the Plan meets the Best Interests Test.

### C.   Classification of Claims and Interests

The Bankruptcy Code requires that a plan of reorganization place each creditor's claim and each equity security holder's interest in a class with other claims and interests that are "substantially similar." The Debtor believes the Plan meets the classification requirements of the Code.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

### D.    Confirmation Hearing

The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing on the confirmation of the Plan.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement of the adjourned date made at the Confirmation Hearing.  Any objection to confirmation must be made timely in writing, filed with the Bankruptcy Court and served upon the following parties:

Peter D. Russin, Esquire
Joshua W. Dobin, Esquire
Meland Russin & Budwick, P.A.
Attorneys for the Debtor
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, FL 33131-2385

### E.    Voting

Section 1129(a) of the Bankruptcy Code requires that each Class or Claims or Interests that is impaired under the Plan (subject to the "cramdown" exception described herein). A Class of Claims under the Plan accepts the Plan if the Plan is accepted by a class of creditors that hold at least two-thirds in amount and more than one-half in number of the Allowed Claims in the Class that actually vote on the Plan. A Class of Interests accepts the Plan if the Plan is accepted by holders of Interests that hold at least two–thirds in amount of the Allowed Interests in the Class that actually vote on the Plan. Holders of Claims or Interests that fail to vote are not counted as wither accepting or rejecting the Plan.

### F.    Financial Feasibility

The Bankruptcy Code requires that, in order to confirm a plan, the Court must find that confirmation of the Plan is not likely to be followed by liquidation of the need for further financial reorganization of the Debtor ("***Feasibility Test***"). For a Plan to meet the Feasibility Test, the Court must find that the Debtor's Estate and the Reorganized Debtor will possess the capital and other resources necessary to meet their respective obligations under the Plan.

The Debtor believes that following confirmation of the Plan, the Debtor and the Reorganized Debtor will be able to perform their obligations under the Plan without the need for further liquidation or financial reorganization.

**ARTICLE IX**
**EFFECT OF THE PLAN ON CLAIMS AND INTERESTS**

### A.    Discharge

Commencing on the Effective Date, except as otherwise expressly provided, all holders of Claims shall be precluded forever from asserting against the Debtor's estate, the Debtor or its

Assets, any other or further liabilities, liens, obligation, claims or equity interest, arising or existing prior to the Effective Date, that were or could have been the subject of any Claim, whether or not Allowed. As of the Effective Date, the Debtor shall be discharged, released from and shall hold the Assets received or retained by and pursuant to the Plan, free and clear of all liabilities, liens, claims and obligations or other claims of any nature against the Debtor or its Estate, except those duties and obligations created by the Plan.

### B.    General Injunction

In accordance with section 524 of the Bankruptcy Code, the discharge provided by this Article and section 1141 of the Bankruptcy Code, among other things, acts as a permanent injunction against the commencement or continuation of any action, employment of process or act to collect, offset or recover the Claims or Interests against the Debtor.

### C.    Exculpation

*Except as otherwise specifically provided in the Plan, the Debtor, its officers, directors, employees, representatives, attorneys, financial advisors, shareholders, stockholders, or agents, or affiliates, or any of such parties' successors and assigns, shall not have or incur, and are hereby released from, any claim, obligation, cause of action or liability to one another or to any holder of a Claim or an interest, or any other party in interest, or any of their respective officers, directors, shareholders, stockholders, employees, representatives, attorneys, financial advisors, or agents, or affiliates, or any of such parties' successors and assigns, for any act or omission in connection with, relating to, or arising out of, the chapter 11 Case, the pursuit of Confirmation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct, bad faith, breach of fiduciary duty or gross negligence.  Further, with respect to Professionals, such exculpation shall not include, or release liability based on a breach of the standard of care imposed under any applicable rule of professional conduct or governing bar association.  In all such instances and respects, such parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities in connection with the Bankruptcy case and under the Plan.*

### D.    Savings Clause

If any article, section, terms and/or subdivision of the Plan is ruled by the Bankruptcy Court to be improper or ineffective, or, if the Debtor decides to unilaterally remove any article, section, subsection, term, and/or provision of the Plan at the Confirmation Hearing, the Plan shall proceed to confirmation and be confirmed without the article(s), section(s), subsection(s), term(s), and/or provision(s) found to be improper or ineffective and/or unilaterally removed by the Debtor at the Confirmation Hearing.

### E.    No Waiver of Causes of Action

No provision of the Plan or the acceptance of any distributions hereunder shall compromise, settle or release any claims or causes of action belonging to the Debtor in respect of

the Assets, including, but not limited to, claims or causes of action defined or identified herein or related to the Third Party Litigation Claims. Except as provided by the Confirmation Order, separate order of the Court, or separate agreement of the Interested Parties, Insiders and Affiliates of the Debtor, present and former Interest Holders (or control persons of such Interest Holders), directors, officers, agents, financial advisors, brokers and employees of the Debtor shall not be discharged or released from any claims or causes of action against them based on any Claim against or Interest in the Debtor or based on any act or omission, transaction or other activity or security instrument or other agreement of any kind existing prior to the Effective Date.

### F.    Stay

Unless otherwise provided herein, all injunctions or stays provided for in the chapter 11 Case pursuant to section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the entry of the final decree closing the chapter 11 Case.

### G.    Retention and Assignment of Causes of Action by Debtor to the Reorganized Debtor – Prosecution of Third Party Litigation Claims.

Debtor and the Debtor's Estate hereby assign, transfer, and convey all claims and causes of action of the Debtor, including the Third Party Litigation Claims, to the Reorganized Debtor, which shall retain and may pursue any such claims and causes of action of the Debtor's Estate so assigned.

The Debtor's Plan will also be implemented through the prosecution of claims against third parties, if any. On the Effective Date, the Reorganized Debtor shall be authorized, except as provided for in the Plan, to commence and prosecute any and all third party litigation claims that arose before, on or after the Petition Date.  Proceeds, if any, realized from any third party litigation claims shall be added to Available Cash.

### 1.    Claims Against Purchasers that have Defaulted, or may Default, on Purchase Contracts

Pursuant to the terms and conditions of the real estate contracts that purchasers executed in conjunction with the sale of Units in the Project, in the event that a purchaser breaches the contract by defaulting on such purchaser's obligation, the Debtor may be pursuing these claims against the purchasers. The actions may seek recovery of, among other things, damages in connection with certain purchaser breaches of their respective Purchase and Sale Agreements. These potential claims are against: Isaac Sleilatt, Westvest, Barazi, Salvatore Polizzi, Jendomar and Joseph Pisano. The Debtor reserves its right to prosecute against them all causes of action arising out of such parties involvement with the Project including but not limited to breach of contract.

### 2.    Preference Actions, Avoidance Actions and Insider Claims

Within ninety (90) days prior to the Petition Date, the Debtor made payments to creditors and other parties. A list of payments to Debtor's creditors within ninety days prior to the Petition Date is included in the Debtor's Statement of Financial Affairs. Many of the recipients of payments may have defenses to the Estate's causes of action and/or the pursuit of such claims may not be economically feasible due to the amount of the payments at issue. The Debtor is continuing its investigation of any and all third party litigation claims, including but not limited to preference Actions, Avoidance Actions, and insider claims under bankruptcy law, which the Debtor may have against third parties, and specifically reserves all such claims.

### ARTICLE X
### FINAL REPORT

At such time as all of the Distributions provided for under the Plan have been made, the Reorganized Debtor shall file a final monthly operating report with the Bankruptcy Court, together with the Final Report, and shall seek entry of a final decree closing the chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

### ARTICLE XI
### EFFECTIVENESS OF THE PLAN

### A.    Conditions Precedent

The Plan shall not become effective unless and until each of the following conditions shall have been satisfied in full or waived in accordance with the provisions specified below:

### 1.    Entry of Confirmation Order.

The Court shall have entered the Confirmation Order confirming and approving the Plan in all respects by the Confirmation Date and the Confirmation Order shall become a Final Order.

### 2.    Waiver of Deadlines or Other Conditions.

As contemplated by the definition of Confirmation Date and Effective Date herein, the deadlines set forth above may be extended (if necessary) with the mutual express consent of the Interested Parties or as may be necessary to reasonably accommodate the Court's calendar.

### B.    Default Remedies

If the Reorganized Debtor is unable to perform the terms and conditions of the Plan, then it will be in default.  Remedies of Creditors are limited to claims against the Reorganized Debtor. Creditors may enforce their remedies in the same manner as they would otherwise pursue damages for breach of contract or other actions arising out of the Debtor's default.

## ARTICLE XII
## RETENTION OF JURISDICTION

**A.     Exclusive Jurisdiction of Bankruptcy Court**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, from and after the Effective Date the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising out of, arising in or related to, the chapter 11 Case to the fullest extent permitted by applicable law, including, without limitation, jurisdiction to:

1.      interpret and enforce the provisions of the Plan and Confirmation Order;

2.      allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest (whether filed before or after the Effective Date and whether or not contingent, disputed or unliquidated), including the compromise, settlement and resolution of any request for payment of any Administrative Claim or Priority Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the resolution of any dispute as to the treatment necessary to reinstate a Claim or Interest pursuant to the Plan, and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any objection to such Claim or Interest (to the extent permitted under applicable law);

3.      grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending before, on or after the Effective Date;

4.      hear and determine motions, applications, adversary proceedings, contested matters and other litigated matters pending on, or filed or commenced on or after, the Effective Date, including proceedings with respect to the rights and claims of the Reorganized Debtor to recover property under chapter 5 of the Bankruptcy Code, to commence or prosecute any cause of action (including any avoidance action), to seek a determination of any tax liability of the Debtor or Estate under section 505 of the Bankruptcy Code, or otherwise to collect or recover on account of any claim or cause of action that the Reorganized Debtor may have;

5.      hear and determine all disputes concerning the conduct of the Reorganized Debtor;

6.      determine and resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Contract to which the Debtor is a party or with respect to which the Debtor or reorganized Debtor may be liable, and to hear, determine and, if necessary, liquidate any claims, including cure Claims, arising therefrom;

7.      ensure that all payments and performance due under the Plan and the Plan Documents are accomplished as provided herein, and resolve any issues relating to distributions to holders of Allowed Claims pursuant to the provisions of the Plan and the Plan Documents;

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

8.      construe, take any action and issue such orders consistent with section 1142 of the Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and consummation of the Plan and all Plan documents, contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, including, without limitation, the Disclosure Statement, the Confirmation Order, for the maintenance of the integrity of the Plan and the Plan Documents;

9.      determine and resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of the Plan (and all Exhibits to the Plan), the Plan documents or the Confirmation Order, including the release and injunction provisions set forth in and contemplated by the Plan, the Plan documents or the Confirmation Order, or any Person's rights arising under or obligations incurred in connection therewith;

10.     entertain, approve and confirm modifications of the Plan before, on or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, or modify the Disclosure Statement, the Confirmation Order or any Plan document, contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, or remedy any defect or omission, or reconcile any inconsistency in any Court order, the Plan, the Disclosure Statement, the Confirmation Order or any Plan document, contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code, and the Plan;

11.     issue injunctions, enter, implement and enforce orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan or the Confirmation Order;

12.     enter, implement and enforce such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

13.     determine any other matters that may arise in connection with or relating to the Plan and Plan Documents, the Disclosure Statement, or the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan and Plan Documents, the Disclosure Statement, or the Confirmation Order, except as otherwise provided in the Plan;

14.     hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code;

15.     continue to enforce the automatic stay, and any other applicable stays or injunctions, through the date of entry of the final decree closing the chapter 11 Case;

16.     hear and determine (A) disputes arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order and/or the Plan documents,

or (B) issues presented or arising under the Plan, the Confirmation Order and the Plan documents, including disputes among holders of claims and arising under agreements, documents or instruments executed in connection with the Plan, the Confirmation Order and/or the Plan documents;

17.    shorten or extend, for cause, the time fixed for performance of any act or event under the Plan, the Confirmation Order and/or the Plan documents, on notice or ex parte, as the Bankruptcy Court shall determine to be appropriate;

18.    enter any order, including injunctions, necessary to enforce the title, rights and powers of the Disbursing Agent, and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Bankruptcy Court may deem necessary;

19.    review any action taken or not taken by the Disbursing Agent, and to appoint a successor Disbursing Agent, if necessary;

20.    adjudicate any settlements pursuant to Bankruptcy Rule 9019, if required under the Plan and the Confirmation Order, and all other matters contained herein; and

21.    enter a final decree closing the chapter 11 Case or converting the chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Debtor, the Estate, the Reorganized Debtor or the chapter 11 Case, this Article XIV shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter. Nothing in this Article XIII shall constitute a waiver by the United States of its rights to assert that the Bankruptcy Court lacks jurisdiction over any matter set forth in this Article XI.

## ARTICLE XIII
## MISCELLANEOUS PROVISIONS

### A.    Post Confirmation Compensation of Professionals Retained by the Debtor

Professionals retained by the Debtor shall be entitled to post confirmation, monthly interim compensation for fees and expenses incurred in carrying out their duties consistent with this Plan; provided, however such Professionals shall provide to the United States Trustee, notice of such requested fees and expenses on a monthly basis. Following such notice, if no objections to the fees and expenses set forth in the monthly statement are received in writing within 14 days, 100% of such professional's fees and expenses shall be paid. Notice of and objections to such fees and expenses shall be made via e-mail and/or facsimile. If objections to the fees and expenses are made and cannot be resolved, such objections will be heard and resolved by the Bankruptcy Court. Any such fees and expenses shall be payable from the Debtor. Such Professionals shall, no less frequently than once every four (4) months, submit applications to the Bankruptcy Court for final approval of reimbursement of fees and expenses paid to their professionals.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

The Debtor's general and litigation counsel shall be Meland Russin & Budwick, P.A. The terms of compensation for Meland Russin & Budwick, P.A. shall be the same in all respects as those approved by the Bankruptcy Court.

**B.**     **Payment of Statutory Fees; U.S. Trustee**

The Debtor or the Reorganized Debtor, as the case may be, shall pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), within ten (10) days of the Effective Date, for pre-confirmation periods. The Debtor or the Reorganized Debtor, as the case may be, shall further pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements made by the Debtor or the Reorganized Debtor, as the case may be, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code. After the Confirmation Date, the Debtor or the Reorganized Debtor, as the case may be, shall file a quarterly Post-Confirmation Operating Report which shall include, among other things, all payments made under the Plan and payments made in the ordinary course of business. The Post-Confirmation Operating Report shall be filed quarterly until the Court enters a Final Decree, dismisses the case, or converts the case to another chapter in bankruptcy.

**C.**     **Headings**

Headings are used in the Plan for convenience and reference only and shall not constitute a part of the Plan for any purpose.

**D.**     **Binding Effect**

The provisions of the Plan, Confirmation Order and plan documents shall be binding upon and inure to the benefit of the Debtor, the Estate, the Reorganized Debtor, any holder of any Claim or Interest treated herein or any Person named or referred to the Plan, and each of their respective heirs, executors, administrators, representatives, predecessors, successors, assigns, agents, officers and directors, and, as to the binding effect, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by the Plan or the Confirmation Order.

**E.**     **Withdrawal of the Plan**

The Debtor reserves the right, at any time prior to the substantial consummation (as that term is defined in section 1101(2) of the Bankruptcy Code) of the Plan, to revoke or withdraw the Plan. If the Plan is revoked or withdrawn or if the Confirmation Date does not occur, the Plan shall be null and void and have no force and effect. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims or interests by or against the Debtor or any other Person, constitute an admission of any fact or legal conclusion by the Debtor or any

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

other Person, or to prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

### F.    Modification of the Plan and Related Documents

Debtor reserves the right, in accordance with Bankruptcy Code Section 1127, to amend or modify the Plan in any manner necessary prior to entry of the Confirmation Order. After entry of the Confirmation Order, the Debtor may, in accordance with Bankruptcy Code: (1) amend or modify the Plan and documents related thereto in accordance with, and to the extent permitted by, section 1127(b) of Bankruptcy Code and Bankruptcy Rule 3019, or (2) remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### G.    Business Days

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

### H.    Filing or Execution of Additional Documents

On or before the Effective Date, the Debtor shall file with the Court or execute, as appropriate, such agreements and other documents in addition to the Exhibits as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan, including without limitation, amendments to the Schedule of Assumed Contracts.

### I.    Withholding and Reporting Requirements

In connection with the Plan, and all instruments issued in connection therewith in distributions to be made, the Debtor's Estate and Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, foreign taxing authority, and all Cash Distributions hereunder shall be subject to any such withholding and reporting requirements.

### J.    Severability of Plan Provisions
If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

**K.    Governing Law**  EXCEPT TO THE EXTENT THAT THE BANKRUPTCY CODE OR BANKRUPTCY RULES OR OTHER FEDERAL LAWS ARE APPLICABLE, AND SUBJECT TO THE PROVISIONS OF ANY CONTRACT, INSTRUMENT, RELEASE, INDENTURE OR OTHER AGREEMENT OR DOCUMENT ENTERED INTO IN CONNECTION WITH THE PLAN, INCLUDING, WITHOUT LIMITATION, THE PLAN DOCUMENTS, THE CONSTRUCTION, IMPLEMENTATION AND ENFORCEMENT OF THE PLAN AND ALL RIGHTS AND OBLIGATIONS ARISING UNDER THE PLAN SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF FLORIDA, WITHOUT GIVING EFFECT TO CONFLICTS OF LAW PRINCIPLES THAT WOULD APPLY THE LAW OF A JURISDICTION OTHER THAN THE STATE OF FLORIDA OR THE UNITED STATES OF AMERICA.

**L.    Notices**

All notices, requests and demands and other communications to the Debtor, including any objections to the Disclosure Statement, shall be in writing and shall be delivered in person or by courier, U.S. Mail (postage prepaid) or by facsimile transmission to:

Lexi Development Company, Inc.                   With copies to:
Attn: Scott Greenwald, President                 Peter D. Russin, Esq.
7301 SW 57 Ct, Ste 565                           Joshua W. Dobin, Esq.
South Miami, FL 33143                            Meland Russin & Budwick, P.A.
                                                 3200 Southeast Financial Center
                                                 200 South Biscayne Boulevard
                                                 Miami, Florida 33131


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

## ARTICLE XIV
### RECOMMENDATION

The Debtor recommends that Creditors carefully consider and review this Fourth Amended Disclosure Statement and the Plan. The Debtor believes that the Plan provides Creditors with the greatest possible value that could be realized on their Claims. There are several alternatives to confirmation of the Plan including liquidation of the Debtor under chapter 7 of the Bankruptcy Code, in which event the Debtor believes that Creditors would receive less than they will under the Plan.

For the reasons set forth above, the Debtor believes that the Distributions to each impaired Class under the Plan will be greater than distributions that might be received under a chapter 7 liquidation. The Debtor recommends that each Creditor vote to accept the Plan.

Dated: June 18, 2019.

Lexi Development Company, Inc.
a Florida corporation

By: _____
      Scott A. Greenwald
Its:    President


Efiled by:       s/ Peter D. Russin
                 Peter D. Russin, Esquire
                 Florida Bar No. 765902
                 prussin@melandrussin.com
                 Joshua W. Dobin, Esquire
                 Florida Bar No. 93696
                 jdobin@melandrussin.com
                 MELAND RUSSIN & BUDWICK, P.A.
                 3200 Southeast Financial Center
                 200 South Biscayne Boulevard
                 Miami, Florida 33131
                 Telephone: (305) 358-6363
                 Telecopy: (305) 358-1221
                 *Attorneys for Debtor*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:

LEXI DEVELOPMENT COMPANY, INC.[1],        Case No. 10-27573-AJC
                                          Chapter 11

                    Debtor.

_____/

## <u>DEBTOR'S FOURTH AMENDED PLAN OF REORGANIZATION</u>

**Nothing contained herein shall constitute an offer, acceptance or legally binding obligation of the Debtor or any other party in interest and this Plan is subject to approval of the Bankruptcy Court and other customary conditions. This Plan is not an offer with respect to any securities. This is not a solicitation of acceptances or rejections of the Plan. Acceptances and rejections with respect to this Plan may not be solicited until a disclosure statement has been approved by the United States Bankruptcy Court for the Southern District of Florida. Such a solicitation will only be made in compliance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules.**

Lexi Development Company, Inc. (the ***"Debtor"***), as Debtor-in-Possession under Chapter 11 of Title 11 of the United States Code, files its Fourth Amended Plan of Reorganization (the ***"Plan"***). Persons entitled to vote on this Plan are encouraged to read the Plan and the Disclosure Statement and their respective exhibits in their entirety before voting to accept or reject the Plan. No materials other than the Disclosure Statement and the respective exhibits attached thereto and referenced therein and approved by the Bankruptcy Court have been authorized by the Bankruptcy Court for use in soliciting acceptances or rejections of the Plan.

Please address all inquiries concerning the Debtor, this Plan, the Fourth Amended Disclosure Statement in support of the Plan, and voting to Debtor's Attorneys:

Peter D. Russin, Esquire
Joshua W. Dobin, Esquire
Meland Russin & Budwick, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
(305) 358-6363

_____

[1]The Debtor's current mailing address is 7301 SW 57 Ct, Ste 565, South Miami, FL 33143.   The last four digits of the Debtor's tax identification number are 1551.

**EXHIBIT A**

# ARTICLE I
## DEFINITIONS

**A.    Defined Terms:** The following capitalized terms shall have the meanings set forth in the numbered Paragraphs of this Article (such meanings to be equally applicable to both the singular and plural).

1.    "Administrative Claim" shall mean a Claim for payment of costs or expenses of the Chapter 11 Case as specified in sections 503(b) and 507(a)(1) of the Bankruptcy Code, including without limitation:

    (i)    the actual, necessary costs and expenses of preserving the Debtor's Estate and operating the businesses of the Debtor, incurred and paid in the ordinary course of business by the Debtor after the Petition Date;

    (ii)    claims under sections 330(a), 331 or 503 of the Bankruptcy Code for compensation for professional services rendered and reimbursement of expenses in the Chapter 11 Case, except for amounts already awarded and paid to professionals retained in Chapter 11 Case ("***Professional Fee Claims***");

    (iii)    any postpetition taxes;

    (iv)    fees and charges assessed against the Debtor's Estate pursuant to Section 1930 of Title 28 the United States Code ("***U.S. Trustee Fees***").

2.    "Allowed" when used with respect to a Claim (other than an Administrative Claim, Contested Claim or Disallowed Claim) shall mean, except as otherwise ordered by the Court, a Claim or that portion of a Claim:

    (i)    which has been scheduled (other than Claims set forth in the Debtor's Schedules as contingent, unliquidated or disputed) or timely filed with the Court as to which no objection to the allowance thereof has been interposed within the period of time limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, the Plan or Order of the Court, or

    (ii)    as to which any objection has been determined by a Final Order of the Court allowing such Claim or portion thereof.  Unless otherwise specified in the Plan or in the Final Order of the Bankruptcy Court allowing such Claim, "Allowed Claim" shall not include interest on the amount of such Claim from and after the Petition Date.

3.    "Allowed Administrative Claim" shall mean any Administrative Claim that is "Allowed" pursuant to the procedure set forth in the Plan.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

4.      "Allowed [Class Designation] Claim or Allowed [Class Designation] Interest" shall mean an Allowed Claim or Allowed Interest in the Class specified.

5.      "Assets" shall mean all personal, tangible and intangible property of the Debtor, contracts and contract rights, presently existing, or hereafter acquired, or created at any time, wherever located, and by whomever held, together with the products and proceeds thereof.

6.      "Association" shall mean Lexi Condominium Association, Inc.

7.       "Available Cash" shall mean the net proceeds from the sale or liquidation of all of the Debtor's Assets, including, without limitation a) proceeds from the sale of the Units and b) recoveries from the prosecution of Third Party Litigation Claims.

8.      "Avoidance Action" means any and all avoidance, recovery and other actions under sections 502(d), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code of the Debtor or its Estate; for the avoidance of doubt Preference Actions are included within Avoidance Actions.

9.      "Ballot" shall mean the form or forms distributed to each holder of a Claim or an Impaired Claim or Interest on which the holder indicates acceptance or rejection of the Plan or any election for treatment of such Claim or Interest under the Plan.

10.      "Ballot Date" shall mean the date set by the Court by which all Ballots must be received.

11.      "Bankruptcy Code" or "Code" shall mean Title 11 of the United States Code, as in effect from time to time, as applicable to the Chapter 11 case.

12.      "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure, as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Chapter 11 Case, including the Local Rules of the Court.

13.      "Business Day" shall mean any day other than a Saturday, Sunday or "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

14.      "Cash" means the legal currency of the United States and equivalents thereof.

15.      "Cash Collateral" shall mean the proceeds of the secured lender's collateral.

16.      "Cash Distribution" shall mean the cash and any cash equivalents ($US) to be distributed pursuant to the Plan to be derived solely from the proceeds of the net income received by the Reorganized Debtor and possibly from any recoveries from potential litigation the Reorganized Debtor may pursue.

17.      "Causes of Action" means any claims, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, and franchises of

any kind or character whatsoever, known, unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, in contract or in tort, in law or in equity, or pursuant to any other theory of law. Without limiting the foregoing, Causes of Action also include: (a) all rights of setoff, counterclaim, or recoupment and claims on contracts or for breaches of duties imposed by law; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to sections 362, 502(d), 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code (including Avoidance Actions); and (d) such claims and defenses as fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code.

18.    "Chapter 11 Case" shall mean the Debtor's above-captioned Chapter 11 case.

19.    "Claim" shall have the meaning as defined in section 101(5) of the Bankruptcy Code, including, without limitation, any right to payment from the Debtor, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, contested, uncontested, legal, equitable, secured, or unsecured, or any right to an equitable remedy for breach of performance if such breach gives rise to a right of payment from the Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmeasured, contested, uncontested, secured or unsecured.

20.    "Claims Bar Date" shall mean the deadline for filing any proofs of claim or interest that was established in the Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadlines [ECF No. 8] as October 21, 2010 or as modified pursuant to any Court order.

21.    "Class" means a category of Claims or Interests pursuant to section 1123(a)(1) of the Bankruptcy Code, and as set forth in Article III of this Plan.

22.    "Collateral" shall mean the "blanket" security interest in all inventory, equipment, accounts, general intangibles, certificates of title, fixtures, money, instruments, securities, documents, chattel paper, deposits, credits, claims, demands and other personal property owned by the Debtor at the time of the execution of the Loan Documents or thereafter acquired, together with the proceeds, products, offspring, rents, or profits of the collateral, whether held by or for the account of the Debtor.

23.    "Confirmation Date" shall mean the date upon which the Court shall enter the Confirmation Order.

24.    "Confirmation Hearing" shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code and the applicable Bankruptcy Rules, as such hearing may be continued from time to time.

25.    "Confirmation Order" shall mean an Order of the Court confirming the Plan in form mutually satisfactory to the Interested Parties.

26.    "Contested Claim" shall mean a Claim (or portion thereof) for which: (a) a proof of claim was or is deemed filed under applicable law or Order of the Court; and (b) any such timely and properly filed objection is not: (i) withdrawn or resolved by stipulation or (ii) determined in

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

whole or part by a Final Order.  For purposes of the Cash Distributions under the Plan, a Claim shall be considered a Contested Claim, in whole or in part, as applicable, before the time that an objection is filed, but only until the expiration of the time for filing objections to claims, if: (x) the amount or  classification of the Claim specified in the proof of claim exceeds the amount of or differs in classification from any corresponding Claim scheduled by the Debtor in the Schedules; (y) any corresponding Claim scheduled by the Debtor is scheduled as disputed, contingent or unliquidated; or (z) no corresponding Claim is scheduled by the Debtor in the Schedules.

27.    "Court" shall mean the United States Bankruptcy Court for the Southern District of Florida (Miami Division), Judge A. Jay Cristol, United States Bankruptcy Judge, presiding, and any other Court that exercises jurisdiction over this Chapter 11 Case.

28.    "Debtor" shall mean Lexi Development Company, Inc.

29.     "Deposit Litigation" shall mean all causes of action against purchasers who have made deposit(s) with the Debtor for the purchase and sale of Unit(s), who have defaulted and claimed an interest in such deposit(s).

30.    "DIP Accounts" shall mean all of the Debtor-in-Possession accounts maintained by the Debtor.

31.    "Disallowed" means, with reference to any Claim, a finding of the Court in a Final Order, or a provision of the Plan, providing that a Claim shall not be Allowed.

32.    "Disbursing Agent" shall mean the entity designated in the Confirmation Order authorized to make distributions under the Plan.

33.    "Disclosure Statement" shall mean the accompanying Fourth Amended Disclosure Statement required pursuant to section 1125 of the Bankruptcy Code with respect to the Plan.

34.    "Effective Date" shall mean a date, unless extended if necessary, the first business Day, fourteen (14) days after the entry of the Confirmation Order or the date on which the Confirmation Order becomes final and non-appealable, whichever is later.

35.    "Estate" shall mean the estate created in this Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

36.    "Executory Contract Rejection Claims" shall mean any Claim arising from the rejection of an executory contract in accordance with section 365 of the Bankruptcy Code.

37.    "Fee Application" shall mean an application under section 330(a), 331 or 503 of the Bankruptcy Code for allowance of any Professional Fee Claim in accordance with Local Rule 2016.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

38.     "Final Order" shall mean an Order of the Court to which: (a) the time to file an appeal, motion or petition for review or rehearing or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending; (b) any appeal taken or petition for certiorari filed has been resolved with the highest Court to which the Order or judgment was appealed or from which review, rehearing or certiorari was sought; or (c) with respect to an appeal taken from the Confirmation Order, no stay has been obtained by the Effective Date.

39.     "GFB" shall mean Great Florida Bank, the predecessor in interest to NBV Loan Acquisition, LLC, the Debtor's mezzanine lender.

40.     "Insider" shall have the meaning as defined in section 101(3) of the Bankruptcy Code.

41.     "Interested Parties" shall mean, collectively, the Debtor, creditors and any others who have a pecuniary interest in the Bankruptcy Case.

42.     "Lien Adversary Proceeding" shall mean that certain adversary proceeding commenced on September 9, 2010, captioned *Lexi Development Company, Inc. v. Lexi North Bay, LLC and Great Florida Bank*, Adv. Case No. 10-03582-AJC.

43.     "Litigation Attorneys" shall mean the attorney and law firm retained to pursue the Third Party Litigation Claims.

44.     "Litigation Proceeds" shall mean cash derived from the Third Party Litigation Claims.

45.      "Marquis Bank" shall mean Marquis Bank, the Debtor's postpetition secured lender.

46.     "NBV" shall mean NBV Loan Acquisition, LLC the successor in interest to GFB and FCB and at one time the Debtor's postpetition secured lender.

47.     "Net Sales Proceeds" shall mean the proceeds from the sale of units, less payment of *ad valorem* taxes owed on the particular Units closed, payments of commissions, if any, and closings costs, which will be paid at the time of closing on each particular Unit (the "Net Sales Proceeds").

48.     "North Bay" shall mean Lexi North Bay, LLC, at one time the Debtor's alleged secured lender.

49.     "Person" means any individual, corporation, partnership, association, multiemployer pension plan, plan trustee, plan administrator, indenture trustee, limited liability company, organization, joint stock company, joint venture, estate, trust, governmental unit or any political subdivision thereof, Interest holder, or any other entity or organization.

50.     "Petition Date" shall mean June 23, 2010, the date the Debtor's Voluntary Petition was filed.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

51.     "Plan" shall mean the Debtor's proposed Fourth Amended Plan of Reorganization and the accompanying Fourth Amended Disclosure Statement filed, either in its present form or as it may be amended or modified from time to time, in accordance with the provisions of the Bankruptcy Code and the terms hereof.

52.     "Preference Actions" means any and all claims of the Debtor or its Estate that could be brought under section 547 of the Bankruptcy Code or, in the alternative, based upon the same underlying facts under section 544 or 548 of the Bankruptcy Code, and the right to recover on account of any such claim under section 550 of the Bankruptcy Code.

53.     "Priority Claim" shall mean any Claim, if Allowed, entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than an Administrative Claim.

54.     "Professional Fee Claim" shall mean a Claim under section 330(a), 331 or 503 of the Bankruptcy Code for compensation for professional services rendered and reimbursement of expenses in the Chapter 11 Case.

55.     "Project" or "Property" shall mean the project known as "The Lexi," a 164 unit, 19 story, mixed-use residential and retail bayview condominium development located at 1700 Kennedy Causeway, North Bay Village, Florida.

56.     "Pro Rata Share" shall mean with reference to any distribution on account of any Allowed Claim or Allowed Interest in any Class, a distribution equal in amount to the ratio (expressed as a percentage) that the amount of such Allowed Claim or Allowed Interest bears to the aggregate amount of all Allowed and Contested Claims or Interests of the same Class as determined by the Disbursing Agent or the Court.

57.     "Purchase and Sale Agreement" and "Purchase and Sale Agreements" shall mean those prepetition contracts for the purchase and sale of the Units at the Debtor's Property.

58.     "Record Date" shall be the Confirmation Date as the date used by the Court for determining the holders of Claims and Interests entitled to receive distributions under the Plan.

59.     "Reorganized Debtor" shall mean the successor entity to be formed pursuant to the Plan with Assets of the Debtor.

60.     "Schedules" shall mean the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor, as required by section 521 of the Bankruptcy Code and the Bankruptcy Rules.

61.     "Secured Claim" means a Claim (a) that is secured by a lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or (b) to the extent that the holder thereof has a valid right of setoff pursuant to section 553 of the Bankruptcy Code and limited to the value thereof.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

62.     "Third Party Litigation Claims" shall mean all preserved causes of action including, but not limited to, Deposit Litigation, all adversary proceedings and/or lawsuits pending in state or federal courts, whether or not such claims have been asserted or causes of action have been commenced as of the Effective Date, including, but not limited to, causes of action for subordination under section 510 of the Bankruptcy Code; causes of action which are property of the estate under section 541 of the Bankruptcy Code; causes of action relating to turnover, Avoidance Actions and voidable transfers under sections 542 through 550 of the Bankruptcy Code; claims of action under State law; causes of action under Federal law; causes of action under other applicable non-bankruptcy law owned or belonging to the Debtors as more specifically set forth herein.

63.     "Unit" and "Units" shall refer to one or more of the condominium units for sale at the Debtor's Property.

64.     "Unsecured Claim" shall mean any Claim against the Debtor that is not an Administrative Claim, a Priority Claim or Secured Claim, but including, without limitation, the Claims arising from the rejection of executory contracts.

65.     "Unsecured Insider Claim" shall mean an Unsecured Claim by an Insider.

     **B.     Other Terms:** The words "herein", "hereof", "hereto", "hereunder" and other words and terms of similar import and construction refer to the Plan as a whole and not to any particular Article, paragraph or clause contained in the Plan.  A reference to an "Article" refers to an Article of the Plan. Any term used herein that is not defined herein shall have the meaning ascribed to that term, if any, in or by the Bankruptcy Code, or the Disclosure Statement. The rules of construction set forth in section 102 of the Bankruptcy Code shall apply in construction of the Plan.

     **C.     Exhibits and Tables:** All Exhibits and Tables to the Plan are incorporated by reference into and are made a part of the Plan as if set forth in full herein.

## ARTICLE II
## TREATMENT OF ADMINISTRATIVE CLAIMS

     As provided in section 1123(a)(1) of the Bankruptcy Code, Administrative Claims against the Debtor will not be classified for purposes of voting or receiving distributions under the Plan. All such Claims will be treated separately as unclassified Claims and obligations on the terms set forth in Article IV.

## ARTICLE III
## CLASSIFICATION OF CLAIMS AND INTERESTS

     **A.     Classification of Claims and Interests.**

     The following table designates the Classes of Claims against and Interests in the Debtor, and specifies which Classes are (a) impaired or unimpaired by this Plan, (b) entitled to vote to

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code, or (c) deemed to accept or reject this Plan:

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 | Allowed Secured Claim of Miami-Dade County Tax Collector | No | No |
| Class 2 | Allowed Secured Claim of Marquis Bank | Yes | Yes |
| Class 3 | Allowed Secured Claim of the Lexi Condominium Association, Inc. | Yes | Yes |
| Class 4 | Allowed 11 U.S.C. § 365(j) Claims | No | No |
| Class 5 | Allowed Priority Deposit Claims | No | No |
| Class 6 | Allowed General Unsecured Claims | Yes | Yes |
| Class 7 | Allowed Unsecured Claim of Scott Greenwald | Yes | Yes |
| Class 8 | Equity Interests | Yes | No (deemed to reject) |

# ARTICLE IV
## TREATMENT OF CLASSIFIED CLAIMS AND INTERESTS

### A.    Administrative Claims

**1.**        **Professional fees**: At this time the Debtor does not know the amount of attorneys' fees and costs that will ultimately be sought by the Debtor's attorneys. In this complicated case that has spanned nearly nine years, there has been significant litigation and numerous appeals. As such, as of May 31, 2019, MRB has unpaid fees of $2,257,507.88 and unpaid costs of $28,028.77. MRB may file additional interim fee applications and will be filing a final fee application. The attorneys' fees and costs and other professional fees shall be paid in full on the Effective Date of the Plan or as otherwise agreed between the Debtor and each administrative claimant.

The Debtor reserves the right to retain an accountant and special litigation or tax appeal counsel, if required.

**2.**        **United States Trustee Fees:** The Debtor shall pay the U.S. Trustee the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6), within ten (10) days of the Effective Date, for pre-confirmation periods. The Debtor shall further pay the U.S. Trustee the appropriate sums required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements made by the Debtor, respectively, until the earlier of the closing of this case by the

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code.  After the Confirmation Date, the Debtor shall file a quarterly Post-Confirmation Operating Report which shall include, among other things, all payments made under the Plan and payments made in the ordinary course of business. The Post-Confirmation Operating Report shall be filed quarterly until the Court enters a Final Decree, dismisses the case, or converts the case to another chapter in bankruptcy.

3.      **Time for filing Administrative Claims:** The Debtor intends to file a Motion to Set Administrative Claims Bar Date which will result in the entry of order of the Court setting an Administrative Claims Bar Date. Failure to timely file an Administrative Claim prior to the Administrative Claims Bar Date will result in such claim being forever barred and discharged unless otherwise ordered by the Court. This requirement shall not apply to post-petition ad valorem taxes.

4.      **Approval of Administrative Claims:** All Administrative Claims are subject to allowance by the Bankruptcy Court and its determination of the reasonableness of the amounts. Any party in interest can object to any claim for administrative fees and expenses.

5.      **Payment of Allowed Administrative Claims:** The holders of Allowed Administrative Claims shall receive, on account of such claims, cash in the amount of such claims (i) on the later of the Effective Date or within ten (10) days any such claims are determined to be Allowed or (ii) at the option of the Debtor, in accordance with the ordinary business terms of payment of such claims. Professionals employed at the expense of the estate of the Debtor and entities who may be entitled to reimbursement for the allowance of fees and expenses from the estate of the Debtor pursuant to §503(b) of the Bankruptcy Code, shall receive cash in the amount awarded to such professionals and entities at such times and only in accordance with the final order entered pursuant to §330 or §503 of the Bankruptcy Code.

B.      **Secured Claims**

1.      **Allowed Secured Claim of Miami-Dade County Tax Collector (Class 1):**

Class 1 consists of the Allowed Secured Claim of The Miami-Dade County Tax Collector (the "**MDCTC**"), plus statutory interest, for accrued and unpaid real property taxes for the Property (the "**MDCTC Claim**"). MDCTC filed Claim No. 1 in the amount of $1,567,542.21, which includes estimated taxes for 2010 and taxes for Units which had not been sold as if the time of filing. The MDCTC Claim has been eliminated by payments made from the Unit sales and the cash collateral account. All real estate taxes are paid through 2018 with only future prorations of 2019. The real estate taxes will continue to be paid out of Unit closings as they occur. Class 1 is unimpaired under the Plan.

10

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

### 2. Allowed Secured Claim of Marquis Bank (Class 2):

Class 2 consists of the Allowed Secured Claim of Marquis Bank, arising from the Marquis DIP Loan, who shall have an Allowed Secured Claim for up to $3,600,000 (plus interest) secured by the Debtor's real property.

<u>Pricing, Economic Terms and Fees</u>: Interest accrues on the amount borrowed under the DIP Facility at 6% per annum for a term of sixty (60) months. Repayment calls for 10 monthly interest only payments followed by 49 monthly principal and interest payments based on a 25-year amortization schedule with the remaining principal, accrued interest and any other charges due at maturity.

<u>Collateral</u>:

- First mortgage, security interest and assignment of rents and leases on a 22,447 SF, commercial condominium unit lot located at 1700 Kennedy Causeway, Unit CU-1, North Bay Village, FL 33141. Miami-Dade County Folio#: 23-3209-051 -1650.
- First mortgage, security interest and assignment of rents and leases on a commercial condominium unit lot located at 1700 Kennedy Causeway, Unit CU-2, North Bay Village, FL 33141. Miami-Dade County Folio#: 23·3209-051-1660.
- First mortgage, security interest and assignment of rents and leases on a 1,735 SF, 2-Bedroom/2-Bath.room, residential condominium unit lot located at 7901 Hispaniola Ave., Unit 706, North Bay Village, FL 33141. Miami-Dade County Folio#: 23-3209-051-0720.
- First mortgage, security interest and assignment of rents and leases on a 1,735 SF, 2-Bedroom/2-Bathroom, residential condominium unit lot located at 7901 Hispaniola Ave., Unit 808, North Bay Village, FL 33141. Miami-Dade County Folio#: 23- 3209-051-1010.
- First Mortgage, Security Interest, and Assignment of Rents and Leases on a 5,000 SF Lot located approximately at the Northeast corner of the Lexi Condo building site located at 1700 Kennedy Causeway, North Bay Village, FL 33141.

<u>Recourse</u>: Unconditional and unlimited guarantees from Scott Greenwald and Amy Greenwald.

Class 2 is impaired under the Plan and the holder of Allowed Class 2 claim is entitled to vote on the Plan.

### 3. Allowed Secured Claim of Lexi Condominium Association (Class 3):

Class 3 consists of the Allowed Secured Claim of the Lexi Condominium Association, Inc. (the "*Association*") (the "*Association Secured Claim*"). The Association filed Claim No. 10-1 for its alleged statutory lien granted pursuant to Chapter 718, Florida Statutes, as well as the lien rights contained in the Declaration of Condominium in the amount of $368,293.67. The Association also filed Claim 11-1 as an unsecured claim that is contingent and unliquidated to the extent the Association has any claims against the Debtor arising from alleged defects in

11

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

construction and filed amended Claim 11-2 as an unsecured claim stemming from alleged defects in construction, in the amount of $1,878,593 (the "***Association Unsecured Claim***"). The Association Secured Claim and Unsecured Claim have been resolved pursuant to the *Order Granting (I) Debtor's Emergency Motion for Authority to Obtain Postpetition Financing; (II) Resolving Creditor Lexi Condominium Association, Inc's Objection to Debtor's Emergency Motion to Obtain Post-Petition Financing [ECF No. 345]; and (III) Resolving and Settling Creditor Lexi Condominium Association Inc.'s Claims Numbers 10 and 11-2 In Their Entirety* [ECF No. 346] ("***Association Settlement***").

The Association Settlement fully sets forth the settlement terms agreed to by the Debtor and the Condominium Association. Pursuant to the Association Settlement, $185,762.16 was paid by the Debtor to the Association from the NBV DIP Loan, and the remaining amount of $184,146.83 will be an allowed secured claim and will be paid upon the Effective Date of the Debtor's Chapter 11 Plan ("***Association Secured Claim***").

The Association will withdraw the Association Unsecured Claim (Claim No. 11-1 and 11-2) in its entirety upon full satisfaction of the Association Secured Claim. The Association hereby agrees not to raise any objection to said treatment or to the Debtor's Plan as may be amended, on any grounds whatsoever and agrees to vote the full amount of the Association Secured Claim in favor of the Plan, provided the Association receives the treatment of the Association's Secured Claim as set forth herein. Class 3 is impaired under the Plan and holder of Allowed Class 3 claim is entitled to vote on the Plan.

### 4.    Allowed 11 U.S.C. § 365(j) Claims (Class 4):

Class 4 consists of all Allowed 11 U.S.C. § 365(j) Claims. Section § 365(j) of the Bankruptcy Code limits any lien rights of a purchaser whose contract has been rejected under Section 365 to that portion of the purchase price the purchaser has paid. Thus, the holders of Allowed 11 U.S.C. § 365(j) claims maintain a lien limited to the extent of their paid (but used) deposit against their particular Unit upon Court approval of such rejection. The Debtor does not know when any particular Unit relating to each individual deposit will be sold, only that all Units owned by the Debtor that are subject to the Allowed Class 4 Claims will be ultimately sold. When each Unit owned by the Debtor that is subject to an Allowed Class 4 Claim is sold, the lien that was attached to the particular Unit will attach to the Debtor's interest in the Net Sales Proceeds resulting from the sale of the Unit. The Debtor does not expect to reject any of the Purchase and Sale Agreements. If the Debtor does not reject any of the Purchase and Sale Agreements, there will be no holders of Allowed Class 4 Claims.

Holders of Allowed Class 4 Claims shall retain their lien securing their Allowed Class 4 Claim until such Allowed Class 4 Claim is paid in full. Such Class 4 Claimants shall be paid in full from the Net Sales Proceeds from the sale of their particular Unit after Classes 1, 2 and 3 have been paid in full. To the extent that the Net Sales Proceeds are insufficient to pay any Allowed Class 4 Claims, any deficiency shall be treated as an Allowed Class 6 Claim, pursuant to the terms set forth in the Plan. The Debtor reserves the right to object to, settle, compromise or adjust by mediation, arbitration or otherwise the Allowed Class 4 Claim. Class 4 Claims are unimpaired.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

5.      **Allowed Priority Deposit Claims (Class 5):**

Class 5 is comprised of the holders of Allowed Priority Deposit Claims. Section §
507(a)(7) of the Bankruptcy Code establishes a priority for "allowed unsecured claims of
**individuals**, to the extent of $2,600.00 for each such individual, arising from the deposit, before
the commencement of the case, of money in connection with the purchase, . . . of property, for
the personal, family or household use of such individuals, that were not delivered or provided."
This would apply both to the deposit of a leased rental Unit or a deposit for the purchase and sale
of a Unit.

A.      **Claimants Whose Purchase and Sale Agreement(s) Have Been Properly Terminated**

In the event it is adjudicated by the Court that a purchaser is entitled to a return of its
deposit, or if the purchaser has properly terminated its Purchase and Sale Agreement, the
purchaser shall be entitled to the return of the portion of its deposit currently held in escrow. The
balance of the deposit claim shall be treated as an Allowed General Unsecured Claim (Class 6),
as described below. The Debtor is unaware of any such claimants.

B.      **Claimants Who Breached or Defaulted Under Their Purchase and Sale Agreement**

In the event a purchaser breached or defaulted under their Purchase and Sale Agreement,
the Debtor is entitled to retain the purchaser's entire deposit and the purchaser shall have no
claim against the Debtor.

C.      **Claimants Who Perform Fully Under a Lease for a Unit**

In the event a lessee to a Lease for a Unit fully performs, once the Lease is terminated
claimant shall receive a refund of any security deposit in accordance with the terms of the
specific lease agreement.

D.      **Claimants Who Default Under a Lease for a Unit**

In the event a lessee to a Lease for a Unit defaults under the Lease, claimant shall forfeit
any security deposit and be liable for any statutory damages as set forth in the specific lease
agreement.

The Debtor reserves the right to object to, settle, compromise or adjust by mediation,
arbitration or otherwise the Allowed Class 5 Claims. Class 5 Claims are unimpaired.

6.      **Allowed General Unsecured Claims (Class 6):**

Class 6 consists of all of the Debtor's Allowed General Unsecured Claims excluding the
Allowed Unsecured Claim of Scott Greenwald (Class 7). All holders of Allowed General

Unsecured Claims shall be paid from Rental Income and the Net Sales Proceeds generated by the sale or liquidation of the Debtor's Assets and any Third Party Litigation Claims, including without limitation, the sale of the Units of the Property, in accordance with and as set forth on Exhibit C, at the agreed upon or allowed amount on the Effective Date, only after the Allowed Class 2, Allowed Class 3, Allowed Class 4, and Allowed Class 5 Claims have been paid in full. In the event there are insufficient funds to pay all of the Debtor's Allowed General Unsecured Claims in full, then a first and final *pro rata* distribution shall be made. The Debtor reserves the right to object to, settle, compromise or adjust by mediation, arbitration or otherwise the Allowed Class 6 Claims. Class 6 Claims are impaired. Class 6 is impaired under the Plan and holders of Allowed Class 6 claims are entitled to vote on the Plan.

### 7.    Allowed Unsecured Claim of Scott Greenwald (Class 7)

Class 7 consists of the Allowed Unsecured Claim of Scott Greenwald totaling $789,363 (Claim No. 6-1]. Of particular note, Scott Greenwald voluntarily subordinated his Allowed Unsecured Claim to Class 6. Accordingly, the Allowed Unsecured Claim of Scott Greenwald shall be paid from the Net Sales Proceeds generated by the sale or liquidation of Assets and any Third Party Litigation Claims, including without limitation, the sale of the Units for the Property only after the Allowed Class 2, Allowed Class 3, Allowed Class 4, Allowed Class 5 and Allowed Class 6 Claims have been paid in full. Class 7 Claims are impaired.

### 8.    Equity Interests (Class 8):

Class 8 consists of all holders of allowed equity interests in the Debtor. All Class 8 Equity Interests shall revest in the Reorganized Debtor on the Effective Date.

The holders of allowed equity interests in the Debtor shall retain their equity interests and each holder of an allowed Class 8 equity interest shall receive their pro rata distribution of any and all funds only after Classes 1 through 7 are paid in full.


## ARTICLE V
## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

### A.    Source and Application of Funds Upon Confirmation

The Plan is a plan of reorganization. The Debtor's principal sources of revenue are comprised of the Rental Income and the Net Sales Proceeds generated by the sale or liquidation of its Assets and any Third Party Litigation Claims, including without limitation, the sale of the Units of the Property in accordance with and as set forth on the attached Exhibit C. On June 17, 2019, the Debtor filed its Application for an Order Authorizing the Employment of Drew A. Kristol and Marcus and Millichap Real Estate Investment Services Company of Florida as Real Estate Broker and to Approve Representation Agreement [ECF No. 428].

14

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

The Plan provides that all Closings on the sales of Units shall be free and clear of liens, claims, encumbrances and interests with liens, claims, encumbrances and interests attaching to the proceeds of such sales. The Allowed Claims shall be paid pursuant to the terms set forth above.

### B.    Prosecution of Third-Party Litigation Claims

The Debtor's Plan will also be implemented through the prosecution of claims against third parties, if any. On the Effective Date, the Reorganized Debtor shall be authorized, except as provided for in the Plan, to commence and prosecute any and all third-party litigation claims that arose before, on or after the Petition Date. Proceeds, if any, realized from any third-party litigation claims shall be added to Available Cash. Third Party Litigation claims that have already been initiated and prosecuted by the Debtor include breach of contract, lender liability and damage claims against Regions Bank ("***Regions***"), acting for itself and as administrative agent and collateral agent for Banco Popular North America ("***Banco Popular***"), Bank Midwest, N.A. ("***Bank Midwest***"), First Charter Bank ("***First Charter***"), and Fifth Third Bank ("***Fifth Third***").

On May 14, 2010, Great Florida Bank, predecessor in interest to NBV[1], filed a Complaint (the ***"Complaint"***) naming the Debtor and other defendants in the action captioned NBV Loan Acquisition, LLC v. Lexi Development Company, Inc., Regions Bank, First Third Bank, N.A. (f/k/a First Charter Bank), Banco Popular North America, Bank Midwest, N.A., and Lexi North Bay, LLC, Case No. 10-28467 CA-15, pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the ***"State Court Action"***). The single claim against the Debtor sought an equitable lien on real property; however, that claim was automatically stayed when the Debtor filed this bankruptcy proceeding.

On August 9, 2016, the Debtor filed its Cross-Claim against Regions Bank (the "***Cross-Claim***").

On August 26, 2016, NBV filed an Amended Verified Complaint ("***Amended Complaint***"), which did not include any claims against the Debtor.

On October 13, 2016, Regions Bank moved to dismiss the Cross-Claim.

On November 23, 2016, this Court granted NBV's motion to modify the automatic stay in order to assert a claim against the Debtor in the State Court Action. [ECF No. 329].

---

[1] Florida Community Bank, N.A. ("***FCB***") acquired Great Florida Bank ("***GFB***") on January 31, 2014, at which time Claim No. 7 and related assets at issue in this action and in the related adversary proceedings (Case Nos. 10-AP-3582-AJC and 10-AP-3254-AJC) were assigned to FCB, who was thereupon substituted in the place and stead of GFB in this case and the adversary proceedings. On January 20, 2016, the Court entered its *Order Upon Defendant/Cross-Plaintiff's/Counter-Plaintiff's, Florida Community Bank, N.A. (1) Motion for Substitution of Party [ECF 220] and (2) Motion for Protection, etc. and Supplement Thereto* [ECF 222 & 229] pursuant to which NBV was substituted as the party of record in the place and stead of FCB in the Lien Adversary Proceeding. On December 19, 2015, FCB filed its Motion for Substitution of Party [ECF No. 272] which was granted on February 4, 2016 [ECF No. 289] pursuant to which NBV was substituted as the party of record in the place and stead of FCB.

15

On December 7, 2016, NBV filed its Verified Amendment to the Amended Complaint (the "***Verified Amendment***"), adding a claim against the Debtor for pre-petition breach of contract.

The Cross-Claim alleges a cause of action against Regions Bank for breach of contract. Specifically, the Cross-Claim arises from beaches of the same contract at issue in the Amended Complaint.

On December 29, 2016, Lexi filed the Notice of Removal [ECF No. 1, Adversary Proceeding No. 16-01754-AJC] ("***Pending Trial Court Case***" or "***AP 16-01754***") which removed all claims in the State Court Action to the U.S. Bankruptcy Court for the Southern District of Florida.

On May 1, 2018, Lexi, NBV and the Banks (collectively, the "***Parties***") agreed to mediate prior to any trial in the Pending Trial Court Case with respect to the subject matter of NBV's claim and filed the Joint Stipulation for Mediation [ECF No. 177, AP 16-01754], which was approved by the Court on May 7, 2018. *See* ECF No. 185 in AP 16-01754.

On May 8, 2018, the Court entered its Order Granting Bank Group's Motion to Dismiss Crossclaim [ECF No. 187, AP 16-01754], which dismissed the Crossclaim with prejudice.

Mediation between the Parties took place on May 14, 2018, whereby the Parties reached an amicable resolution and entered into a mediated settlement agreement. The Debtor and NBV also settled litigation with Popular Bank f/k/a Banco Popular North America (***"Popular"***), Armed Forces Bank, N.A. as successor by merger to Bank Midwest, N.A. (***"AFB"***) and Fifth Third Bank, N.A., on behalf of itself and as successor to First Charter Bank (***"FTB"***) (Popular, AFB, and FTB when referred together, ***"Banks"***), as set forth in Debtor's *Motion for Approval of Compromise and Settlement* [ECF No. 377]. Pursuant to the settlements the Banks paid $825,000 to NBV and NBV's ultimate claim against the Debtor's estate will be reduced dollar-for-dollar by the $825,000. Regions did not participate in this mediation, and thus this mediated settlement agreement did not affect NBV's claim against Regions.

On May 7, 2019, the Court granted Regions' Motion for Order Determining Entitlement to Fees, Costs and Expenses Against Lexi [ECF No. 561, AP 16-01754], which found that Regions is entitled to recover from Lexi its reasonable attorneys' fees, costs, and expenses incurred in connection with the Crossclaim and reserved jurisdiction to determine the amount on a subsequent motion and hearing. The Debtor reserves all of its rights to challenge this entitlement including, without limitation, all re-hearing and appellate rights.

The Court held the trial of AP 16-01754 on January 22-30, February 1, 11, and 22, and March 15, 2019. At the outset of the trial, the Court announced that it will be entering a judgment against the Debtor, and in favor of NBV, in the full amount of NBV's claim. Following trial, on June 7, 2019, the Court entered its Findings of Fact and Conclusions of Law [ECF No. 563, AP 16-01754] and Final Judgment [ECF No. 564, AP 16-01754]. The Court found for Regions on NBV's claims, and entered judgment in favor of NBV and against the Debtor for $14,629,325.00.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

**Claims Against Purchasers that have Defaulted on Purchase Contracts**

Pursuant to the terms and conditions of the real estate contracts that purchasers executed in conjunction with the sale of Units in the Project, in the event that a purchaser breached the contract by defaulting on such purchaser's obligation, the Debtor may be pursuing these claims against the purchasers. The actions may seek recovery of, among other things, damages in connection with certain purchaser breaches of their respective Purchase and Sale Agreements. These potential claims are against: Isaac Sleilatt, Westvest, Barazi, Salvatore Polizzi, Jendomar and Joseph Pisano. The Debtor reserves its right to prosecute against them all causes of action arising out of such parties involvement with the Project including but not limited to breach of contract and all such claims are expressly reserved.

**C.      Cancellation of Instruments and Other Documentation**

Except to the extent otherwise provided under the Plan, or the Confirmation Order, upon the Effective Date, all Prepetition agreements of the Debtor, credit agreements, Prepetition loan documents and Post-Petition loan documents to which the Debtor is a party, and all lien claims and other evidence of liens against the Debtor, shall be deemed to be cancelled and of no further force and effect, without any further action on the part of the Debtor. The holders of or parties to such cancelled instruments, agreements, and other documentation will have no remaining rights arising from or relating to such document or the cancellation thereof, except the rights provided pursuant to the Plan and the Confirmation Order and any rights that, by the terms of the applicable agreement, survive the termination of such agreement.

**D.      Revesting of Assets**

Except as otherwise provided in the Plan or Confirmation Order, title to all of the Debtor's Assets will revest in the Reorganized Debtor, free and clear of all claims and interests on the Effective Date. After the Effective Date the Reorganized Debtor may operate its respective property and may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, except as otherwise provided in the Plan or Confirmation Order. As of the Effective Date, the Debtor's Estate will be free and clear of all claims and interest except as otherwise provided in the Plan or the Confirmation Order.

**E.      Post-Confirmation Operations**

Following Confirmation, the Reorganized Debtor shall execute such documents and take such other actions as are necessary to make effective the transactions provided for in the Plan.

**F.      Post-Confirmation Accounts**

The Debtor may establish one or more interest-bearing accounts as it determines may be necessary or appropriate to effectuate the provisions of the Plan consistent with section 345 of the Bankruptcy Code and any orders of the Bankruptcy Court.

### G.      Closing of the Chapter 11 Case

Notwithstanding anything to the contrary in the Bankruptcy Rules or Local Rules providing for earlier closure of the chapter 11 case, when all Contested Claims against the Debtor have become Allowed Claims or Disallowed Claims, and all remaining Assets of the Debtor have been liquidated and converted into Available Cash (other than those Assets abandoned by the Debtor), and such Available Cash has been distributed in accordance with the Plan, or at such earlier time as the Reorganized Debtor deems appropriate, the Reorganized Debtor shall seek authority from the Bankruptcy Court to close the chapter 11 Case in accordance with the Bankruptcy Code and the Bankruptcy Rules.

### H.      Elimination of Vacant Classes

Any Class of Claims or Interests that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily allowed by the Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### I.      Voting Classes

Unless otherwise ordered by the Court, each holder of an Allowed Claim in Classes 2, 3, 6 and 7 are impaired and shall be entitled to vote to accept or reject the Plan and shall be required to return its Ballot on or prior to the Ballot Date. Any holder of a Contested Claim or Interest whose entire Claim or Interest is objected to by the Debtor or other person qualified to object prior to Ballot Date shall <u>not</u> have the right to vote to accept or reject the Plan until the Contested Claim or Interest is resolved unless the holder of such Contested Claim or Interest requests an order from the Court pursuant to applicable Bankruptcy Rules temporarily allowing such Contested Claim for voting purposes. Any Ballot received from any such holder of a Contested Claim or Interest shall not be considered in determining whether the Plan has been accepted by a particular impaired Class of Claims or Interests. If a Class contains Claims or Interests eligible to vote and no holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Debtor may request a ruling at the Confirmation Hearing that the Plan shall be deemed accepted by the holders of such Claims or Interests in such Class.

### ARTICLE VI
### <u>EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>

### A.      Rejection of Executory Contracts and Unexpired Leases; Exceptions

EXCEPT FOR THOSE EXECUTORY CONTRACTS AND UNEXPIRED LEASES THAT WILL BE THE SUBJECT OF MOTION(S) TO ASSUME OR REJECT TO BE FILED ON OR BEFORE THE DATE OF THE CONFIRMATION HEARING, ALL PURCHASE AND SALE AGREEMENTS AND LEASE AGREEMENTS FOR RESIDENTIAL UNITS WILL BE DEEMED ASSUMED AND ALL OTHER EXECUTORY CONTRACTS AND UNEXPIRED

LEASES OF THE DEBTOR WILL BE REJECTED PURSUANT TO SECTION 365 OF THE BANKRUPTCY CODE ON THE EFFECTIVE DATE.

### B.    Approval of Rejection; Rejection Damages Claims Bar Date

The Confirmation Order shall constitute an Order of the Bankruptcy Court approving the rejections of all the Debtor's executory contracts and unexpired leases that have not been assumed by the Debtor pursuant to Court Order. Any Claim for damages arising from any such rejection must be filed within 30 days from the date of service of the Confirmation Order or such Rejection Claim shall be forever barred, shall not be enforceable against the Debtor, its estate or any of their respective properties and shall receive no distribution under the Plan or otherwise on account of such Rejection Claim. **TO REITERATE, THE FAILURE TO TIMELY FILE EXECUTORY CONTRACT REJECTION CLAIMS SHALL BAR SUCH CLAIMS AND THE HOLDERS THEREOF SHALL NOT BE ENTITLED TO ANY DISTRIBUTIONS UNDER THE PLAN.**

### C.    Treatment Under the Plan of Executory Contract Rejection Claims

Unless otherwise ordered by the Bankruptcy Court, an Allowed Executory Contract Rejection Claim shall be treated as an Allowed General Unsecured Claim (i.e., Allowed Class 6) under the Plan.

### D.    Section 1146 Exemption

To the fullest extent permitted under section 1146(a) of the Bankruptcy Code, the execution, delivery or recording of an instrument of transfer made after the Plan is confirmed, or the transfer or sale of any real, personal or other Property by the Debtor, Trustee, or Reorganized Debtor made after the Plan is confirmed, shall be considered a transfer made after confirmation of the Plan and shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.  Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax.

The execution, delivery or recording of an instrument of transfer made prior to the confirmation of the Plan, or the transfer or sale of any real, personal or other Property by the Debtor or Trustee made prior to confirmation of the Plan, shall be subject to all applicable transfer taxes.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

# ARTICLE VII

## PROVISIONS FOR AND DISTRIBUTIONS IN
## RESPECT OFCONTESTED CLAIMS AND INTERESTS

### A.    Objections to Claims.

All objections to Claims shall be filed by the Debtor and served on the applicable claimant by the date established by the Court. After the Confirmation Date, only the Reorganized Debtor shall have the authority to file, settle, compromise, withdraw, or litigate to judgment objections to Claims, including, without limitation, any counterclaim, offset, recoupment or similar claim asserted against Debtor's Estate arising under or relating to or in connection with any of the claims or causes of action assigned to Reorganized Debtor.  This provision shall not preclude the Debtor from objecting to any Claim prior to the Confirmation Date for voting purposes. If a Claim is objected to prior to the Confirmation Date, such claimant shall not have the right to vote to accept or reject the Plan until the objection is resolved, unless such claimant requests an order from the Court pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim for voting purposes only.

### B.    No Distributions Pending Allowances.

Notwithstanding any other provisions of the Plan, no payment or distribution shall be made with respect to any Claim to the extent it is a Contested Claim unless and until such Contested Claim becomes an Allowed Claim.

### C.    Withholding and Distribution in Respect of Contested Claims.

**1.    Contested Claims Reserve.**  The Disbursing Agent will withhold from the property that would otherwise be distributed to holders of Claims within a given Class an amount sufficient to be distributed on account of Claims that are not Allowed Claims within that Class as of the Effective Date, and shall place such withheld property in a reserve (the "*Contested Claims Reserve*"), which thereafter will be retained and administered by the Reorganized Debtor.

**2.    Distribution in Respect of Contested Claims.**  Payments and distributions to holders of Contested Claims to the extent that such Claims ultimately become Allowed Claims, will be made from the Contested Claims Reserve and thereafter from the Reorganized Debtor in accordance with the provisions of this Plan governing the Class of Claims to which the respective Claim holder belongs.

**3.    Distributions After Disallowance.**  If any of the property withheld in the Contested Claims Reserve remains after all objections to Contested Claims of a particular Class have been resolved, then such property will be retained and administered by the Reorganized Debtor to be distributed in accordance with the provisions of the Plan governing the Class of Claims to which the Disallowed Claims belong.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

## ARTICLE VIII
## DISTRIBUTION UNDER THE PLAN

**A.      Disbursing Agent.**

The Disbursing Agent designated in the Confirmation Order shall make all Cash Distributions pursuant to the Plan.

**B.      Investment of Cash.**

Cash Distributions to be held by the Disbursing Agent for distribution shall be invested by the Disbursing Agent in United States Treasury Bills, interest bearing certificates of deposit, interest bearing savings accounts and other investments permitted by Section 345 of the Bankruptcy Code or order of the Court, and the Disbursing Agent shall use its best efforts to maximize the rates of interest in light of liquidity requirements necessary to make Cash Distributions. All interest earned on such Cash Distributions shall be held by the Disbursing Agent and thereafter transferred to the Reorganized Debtor.

**C.      Manner of Payment Under the Plan.**

Any Cash Distributions made by the Disbursing Agent pursuant to the Plan may be made, at the option of Disbursing Agent, either by check drawn on a domestic bank or by wire transfer from a domestic bank.

**D.      Withholding Taxes.**

The Disbursing Agent shall be entitled to deduct any federal, state or local withholding taxes from any payments under the Plan. As a condition to making distribution under the Plan, the designated Disbursing Agent shall be entitled to require that the holder of any Allowed Claim or Allowed Interest provide such holder's taxpayer identification number and such other certification as may be deemed necessary to comply with applicable tax reporting and withholding laws.

**E.      Setoffs and Recoupments.**

By so instructing the designated Disbursing Agent, the Debtor's Estate or Reorganized Debtor, but shall not be required to, setoff against or recoup from any Claim and the payments to be made pursuant to the Plan in respect of such Claim, any claim of any nature whatsoever that the Debtor's Estate or Reorganized Debtor may have against the holder of a Claim, but neither the failure to do so nor the Allowance of any Claim hereunder shall constitute a waiver or release by the Debtor's Estate, or Reorganized Debtor of any such Claim or causes of action the Debtor's Estate or Reorganized Debtor may have against such holder.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

### F.    Undeliverable Distributions.

If the designated Disbursing Agent is unable to make cash Distributions to the holder of an Allowed Claim or Allowed Interest under the Plan for lack of a current address of the holder, if, after the passage of 180 days (from the Effective Date) and after any additional effort to locate the holder that the Court may direct, the payment or distribution and any further payment or distribution to the holder shall be transferred to the Reorganized Debtor and the Claim or Interest shall be deemed satisfied to the same extent as if payment or distribution had been made to the holder of the Claim or Interest.

### G.    Estimation.

Prior to or subsequent to the Effective Date, in order to effectuate Cash Distributions pursuant to the Plan and to avoid undue delay in the administration of the Chapter 11 Case, the Debtor, or Reorganized Debtor, as the case may be, shall have the right to seek an order of the Court, pursuant to Section 502(c) of the Bankruptcy Code, after notice and a hearing (which notice may be limited to the holder of such Contested Claim or Interest and which hearing may be held on an expedited basis, if necessary), estimating or limiting the amount of the Cash Distribution or Common Stock that must be withheld from distributions on account of Contested Claims or Interests.

### H.    Other General Provisions Concerning Disbursing Agent.

**1.    Exculpation of Disbursing Agent.**  From and after the Effective Date, the Disbursing Agent designated in the Confirmation Order shall be exculpated by all persons receiving distributions under the Plan from any and all Claims, causes of actions and other assertions of liability (including breach of fiduciary duty) arising out of the Disbursing Agent's discharge of the powers and duties conferred upon it by the Plan, the Confirmation Order or any order of the Court entered pursuant to or in furtherance of the Plan, or applicable law, except solely for actions or omissions arising out of the gross negligence or willful misconduct of such Disbursing Agent. No holder of a Claim or an Interest shall pursue any Claim or case of action against the designated Disbursing Agent for making payments or distributions in accordance with the Plan or for implementing the provisions of the Plan. Nothing in this Paragraph shall be deemed to release or waive the right of a holder of an Allowed Claim or Interest to receive its distribution under the Plan.

**2.    Power of Disbursing Agent.**  The Disbursing Agent shall be empowered to take all steps and execute all instruments and documents necessary to effectuate or implement the Plan, make the Cash Distributions, comply with the Plan and the obligations hereunder and exercise such other powers as may be vested in the designated Disbursing Agent by the Confirmation Order or any other order of the Court, pursuant to the Plan, or as deemed by the designated Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

**3.    Expense Incurred on or After the Effective Date.**  Except as otherwise ordered by the Court or provided herein, the amount of any objectively reasonable fees and expenses incurred by the designated Disbursing Agent on or after the Effective Date (including taxes) and

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

any compensation and expense reimbursement claims (including reasonable fees and expenses of counsel) made by a designated Disbursing Agent, may be paid by the Reorganized Debtor (on account of distributions of Interests) or the Debtor's Estate on account of Cash Distributions to holders of Allowed Claims without further Order of the Court.

## ARTICLE IX
## EFFECT OF THE PLAN ON CLAIMS AND INTERESTS

### A.    Discharge

Commencing on the Effective Date, except as otherwise expressly provided, all holders of Claims shall be precluded forever from asserting against the Debtor's Estate, the Reorganized Debtor or its respective assets, any other or further liabilities, liens, obligations, claims or equity interest, arising or existing prior to the Effective Date, that were or could have been the subject of any Claim whether or not Allowed. As of the Effective Date, the Reorganized Debtor shall be discharged, released from and shall hold all the assets received or retained by and pursuant to the Plan, free and clear of all liabilities, liens, claims and obligations or other claims of any nature against the Debtor or its Estate.

### B.    General Injunction

In accordance with section 524 of the Bankruptcy Code, the discharge provided by this Article and section 1141 of the Bankruptcy Code, among other things, acts as a permanent injunction against the commencement or continuation of any action, employment of process or act to collect, offset or recover the Claims or Interests against the Debtor.

### C.    Exculpation

*Except as otherwise specifically provided in the Plan, the Debtor, its officers, directors, employees, representatives, attorneys, financial advisors, shareholders, stockholders, or agents, or affiliates, or any of such parties' successors and assigns, shall not have or incur, and are hereby released from, any claim, obligation, cause of action or liability to one another or to any holder of a Claim or an interest, or any other party in interest, or any of their respective officers, directors, shareholders, stockholders, employees, representatives, attorneys, financial advisors, or agents, or affiliates, or any of such parties' successors and assigns, for any act or omission in connection with, relating to, or arising out of, the chapter 11 Case, the pursuit of Confirmation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their willful misconduct, bad faith, breach of fiduciary duty or gross negligence.  Further, with respect to Professionals, such exculpation shall not include, or release liability based on a breach of the standard of care imposed under any applicable rule of professional conduct or governing bar association.  In all such instances and respects, such parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities in connection with the Bankruptcy case and under the Plan.*

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

D.     **Savings Clause**

If any article, section, terms and/or subdivision of the Plan is ruled by the Bankruptcy Court to be improper or ineffective, or, if the Debtor decides to unilaterally remove any article, section, subsection, term, and/or provision of the Plan at the Confirmation Hearing, the Plan shall proceed to confirmation and be confirmed without the article(s), section(s), subsection(s), term(s), and/or provision(s) found to be improper or ineffective and/or unilaterally removed by the Debtor at the Confirmation Hearing.

E.     **No Waiver of Causes of Action**

No provision of the Plan or the acceptance of any distributions hereunder shall compromise, settle or release any claims or causes of action belonging to the Debtor in respect of the Assets, including, but not limited to, claims or causes of action defined or identified herein or related to the Third Party Litigation Claims. Except as provided by the Confirmation Order, separate order of the Court, or separate agreement of the Interested Parties, Insiders and Affiliates of the Debtor, present and former Interest Holders (or control persons of such Interest Holders), directors, officers, agents, financial advisors, brokers and employees of the Debtor shall not be discharged or released from any claims or causes of action against them based on any Claim against or Interest in the Debtor or based on any act or omission, transaction or other activity or security instrument or other agreement of any kind existing prior to the Effective Date.

F.     **Stay**

Unless otherwise provided herein, all injunctions or stays provided for in the chapter 11 Case pursuant to section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the entry of the final decree closing the chapter 11 Case.

G.     **Retention and Assignment of Causes of Action by Debtor to the Reorganized Debtor – Prosecution of Third Party Litigation Claims.**

Debtor and the Debtor's Estate hereby assign, transfer, and convey all claims and causes of action of the Debtor, including the Third Party Litigation Claims, to the Reorganized Debtor, which shall retain and may pursue any such claims and causes of action of the Debtor's Estate so assigned.

The Debtor's Plan will also be implemented through the prosecution of claims against third parties, if any. On the Effective Date, the Reorganized Debtor shall be authorized, except as provided for in the Plan, to commence and prosecute any and all third party litigation claims that arose before, on or after the Petition Date.  Proceeds, if any, realized from any third party litigation claims shall be added to Available Cash.

24

**1.      Claims Against Purchasers that have Defaulted, or may Default, on Purchase Contracts**

Pursuant to the terms and conditions of the real estate contracts that purchasers executed in conjunction with the sale of Units in the Project, in the event that a purchaser breaches the contract by defaulting on such purchaser's obligation, the Debtor may be pursuing these claims against the purchasers. The actions may seek recovery of, among other things, damages in connection with certain purchaser breaches of their respective Purchase and Sale Agreements. These potential claims are against: Isaac Sleilatt, Westvest, Barazi, Salvatore Polizzi, Jendomar and Joseph Pisano. The Debtor reserves its right to prosecute against them all causes of action arising out of such parties involvement with the Project including but not limited to breach of contract.

**2.      Preference Actions, Avoidance Actions and Insider Claims**

Within ninety (90) days prior to the Petition Date, the Debtor made payments to creditors and other parties. A list of payments to Debtor's creditors within ninety days prior to the Petition Date is included in the Debtor's Statement of Financial Affairs. Many of the recipients of payments may have defenses to the Estate's causes of action and/or the pursuit of such claims may not be economically feasible due to the amount of the payments at issue. The Debtor is continuing its investigation of any and all third party litigation claims, including but not limited to preference Actions, Avoidance Actions, and insider claims under bankruptcy law, which the Debtor may have against third parties, and specifically reserves all such claims.

**ARTICLE X**
**FINAL REPORT**

At such time as all of the Distributions provided for under the Plan have been made, the Reorganized Debtor shall file a final monthly operating report with the Bankruptcy Court, together with the Final Report, and shall seek entry of a final decree closing the chapter 11 Case pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

**ARTICLE XI**
**EFFECTIVENESS OF THE PLAN**

**A.      Conditions Precedent.**

The Plan shall not become effective unless and until each of the following conditions shall have been satisfied in full or waived in accordance with the provisions specified below:

**1.      Entry of Confirmation Order.**

The Court shall have entered the Confirmation Order confirming and approving the Plan in all respects by the Confirmation Date and the Confirmation Order shall become a Final Order.

25

2.      **Waiver of Deadlines or Other Conditions.**

As contemplated by the definition of Confirmation Date and Effective Date herein, the deadlines set forth above may be extended (if necessary) with the mutual express consent of the Interested Parties or as may be necessary to reasonably accommodate the Court's calendar.

B.      **Default Remedies.**

If the Reorganized Debtor is unable to perform the terms and conditions of the Plan, then it will be in default. Remedies of Creditors are limited to claims against the Reorganized Debtor. Creditors may enforce their remedies in the same manner as they would otherwise pursue damages for breach of contract or other actions arising out of the Debtor's default.

## ARTICLE XII
## RETENTION OF JURISDICTION

A.      **Exclusive Jurisdiction of the Bankruptcy Court.**

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, from and after the Effective Date the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising out of, arising in or related to, the chapter 11 Case to the fullest extent permitted by applicable law, including, without limitation, jurisdiction to:

1.      interpret and enforce the provisions of the Plan and Confirmation Order;

2.      allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest (whether filed before or after the Effective Date and whether or not contingent, disputed or unliquidated), including the compromise, settlement and resolution of any request for payment of any Administrative Claim or Priority Claim, the resolution of any objections to the allowance or priority of Claims or Interests and the resolution of any dispute as to the treatment necessary to reinstate a Claim or Interest pursuant to the Plan, and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any objection to such Claim or Interest (to the extent permitted under applicable law);

3.      grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for periods ending before, on or after the Effective Date;

4.      hear and determine motions, applications, adversary proceedings such as the Lien Adversary Proceeding, contested matters and other litigated matters pending on, or filed or commenced on or after, the Effective Date, including proceedings with respect to the rights and claims of the Reorganized Debtor to recover property under chapter 5 of the Bankruptcy Code, to commence or prosecute any cause of action (including any avoidance action), to seek a determination of any tax liability of the Debtor or Estate under section 505 of the Bankruptcy

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

Code, or otherwise to collect or recover on account of any claim or cause of action that the Reorganized Debtor may have;

5.  hear and determine all disputes concerning the conduct of the Reorganized Debtor;

6.  determine and resolve any matters related to the assumption, assumption and assignment, or rejection of any Executory Contract to which the Debtor is a party or with respect to which the Debtor or reorganized Debtor may be liable, and to hear, determine and, if necessary, liquidate any claims, including cure Claims, arising therefrom;

7.  ensure that all payments and performance due under the Plan and the Plan Documents are accomplished as provided herein, and resolve any issues relating to distributions to holders of Allowed Claims pursuant to the provisions of the Plan and the Plan Documents;

8.  construe, take any action and issue such orders consistent with section 1142 of the Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and consummation of the Plan and all Plan documents, contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, including, without limitation, the Disclosure Statement, the Confirmation Order, for the maintenance of the integrity of the Plan and the Plan Documents;

9.  determine and resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of the Plan (and all Exhibits to the Plan), the Plan documents or the Confirmation Order, including the release and injunction provisions set forth in and contemplated by the Plan, the Plan documents or the Confirmation Order, or any Person's rights arising under or obligations incurred in connection therewith;

10.  entertain, approve and confirm modifications of the Plan before, on or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, or modify the Disclosure Statement, the Confirmation Order or any Plan document, contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, or remedy any defect or omission, or reconcile any inconsistency in any Court order, the Plan, the Disclosure Statement, the Confirmation Order or any Plan document, contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code, and the Plan;

11.  issue injunctions, enter, implement and enforce orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with consummation, implementation or enforcement of the Plan or the Confirmation Order;

12.  enter, implement and enforce such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

13.     determine any other matters that may arise in connection with or relating to the Plan and Plan Documents, the Disclosure Statement, or the Confirmation Order, or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan and Plan Documents, the Disclosure Statement, or the Confirmation Order, except as otherwise provided in the Plan;

14.     hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code;

15.     continue to enforce the automatic stay, and any other applicable stays or injunctions, through the date of entry of the final decree closing the chapter 11 Case;

16.     hear and determine (A) disputes arising in connection with the interpretation, implementation or enforcement of the Plan, the Confirmation Order and/or the Plan documents, or (B) issues presented or arising under the Plan, the Confirmation Order and the Plan documents, including disputes among holders of claims and arising under agreements, documents or instruments executed in connection with the Plan, the Confirmation Order and/or the Plan documents;

17.     shorten or extend, for cause, the time fixed for performance of any act or event under the Plan, the Confirmation Order and/or the Plan documents, on notice or ex parte, as the Bankruptcy Court shall determine to be appropriate;

18.     enter any order, including injunctions, necessary to enforce the title, rights and powers of the Disbursing Agent, and to impose such limitations, restrictions, terms and conditions on such title, rights and powers as the Bankruptcy Court may deem necessary;

19.     review any action taken or not taken by the Disbursing Agent, and to appoint a successor Disbursing Agent, if necessary;

20.     adjudicate any settlements pursuant to Bankruptcy Rule 9019, if required under the Plan and the Confirmation Order, and all other matters contained herein; and

21.     enter a final decree closing the chapter 11 Case or converting the chapter 11 Case to a case under chapter 7 of the Bankruptcy Code.

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Debtor, the Estate, the Reorganized Debtor or the chapter 11 Case, this Article XII shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter. Nothing in this Article XII shall constitute a waiver by the United States of its rights to assert that the Bankruptcy Court lacks jurisdiction over any matter set forth in this Article XII.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

# ARTICLE XIII
## MISCELLANEOUS PROVISIONS

### A.    Post Confirmation Compensation of Professionals Retained by the Debtor

Professionals retained by the Debtor shall be entitled to post confirmation, monthly interim compensation for fees and expenses incurred in carrying out their duties consistent with this Plan; provided, however such Professionals shall provide to the United States Trustee, notice of such requested fees and expenses on a monthly basis. Following such notice, if no objections to the fees and expenses set forth in the monthly statement are received in writing within 14 days, 100% of such professional's fees and expenses shall be paid. Notice of and objections to such fees and expenses shall be made via e-mail and/or facsimile. If objections to the fees and expenses are made and cannot be resolved, such objections will be heard and resolved by the Bankruptcy Court. Any such fees and expenses shall be payable from the Debtor. Such Professionals shall, no less frequently than once every four (4) months, submit applications to the Bankruptcy Court for final approval of reimbursement of fees and expenses paid to their professionals.

The Debtor's general and litigation counsel shall be Meland Russin & Budwick, P.A. The terms of compensation for Meland Russin & Budwick, P.A. shall be the same in all respects as those approved by the Bankruptcy Court.

### B.    Payment of Statutory Fees; U.S. Trustee

The Debtor or the Reorganized Debtor, as the case may be, shall pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6), within ten (10) days of the Effective Date, for pre-confirmation periods. The Debtor or the Reorganized Debtor, as the case may be, shall further pay the U.S. Trustee the appropriate sum required pursuant to 28 U.S.C. § 1930(a)(6) for post-confirmation periods within the time period set forth in 28 U.S.C. § 1930(a)(6), based upon all post-confirmation disbursements made by the Debtor or the Reorganized Debtor, as the case may be, until the earlier of the closing of this case by the issuance of a Final Decree by the Bankruptcy Court, or upon the entry of an Order by the Bankruptcy Court dismissing this case or converting this case to another chapter under the United States Bankruptcy Code. After the Confirmation Date, the Debtor or the Reorganized Debtor, as the case may be, shall file a quarterly Post-Confirmation Operating Report which shall include, among other things, all payments made under the Plan and payments made in the ordinary course of business. The Post-Confirmation Operating Report shall be filed quarterly until the Court enters a Final Decree, dismisses the case, or converts the case to another chapter in bankruptcy.

### C.    Headings

Headings are used in the Plan for convenience and reference only and shall not constitute a part of the Plan for any purpose.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363

### D.        Binding Effect

The provisions of the Plan, Confirmation Order and plan documents shall be binding upon and inure to the benefit of the Debtor, the Estate, the Reorganized Debtor, any holder of any Claim or Interest treated herein or any Person named or referred to the Plan, and each of their respective heirs, executors, administrators, representatives, predecessors, successors, assigns, agents, officers and directors, and, as to the binding effect, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by the Plan or the Confirmation Order.

### E.        Withdrawal of Plan

The Debtor reserves the right, at any time prior to the substantial consummation (as that term is defined in section 1101(2) of the Bankruptcy Code) of the Plan, to revoke or withdraw the Plan. If the Plan is revoked or withdrawn or if the Confirmation Date does not occur, the Plan shall be null and void and have no force and effect. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims or interests by or against the Debtor or any other Person, constitute an admission of any fact or legal conclusion by the Debtor or any other Person, or to prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

### F.        Modifications of Plan and Related Documents

Debtor reserves the right, in accordance with Bankruptcy Code Section 1127, to amend or modify the Plan in any manner necessary prior to entry of the Confirmation Order. After entry of the Confirmation Order, the Debtor may, in accordance with Bankruptcy Code: (1) amend or modify the Plan and documents related thereto in accordance with, and to the extent permitted by, section 1127(b) of Bankruptcy Code and Bankruptcy Rule 3019, or (2) remedy any defect or omission or reconcile any inconsistency in the Plan in such manner as may be necessary to carry out the purpose and intent of the Plan.

### G.        Business Days

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

### H.        Filing or Execution of Additional Documents

On or before the Effective Date, the Debtor shall file with the Court or execute, as appropriate, such agreements and other documents in addition to the Exhibits as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

### I.    Withholding and Reporting Requirements

In connection with the Plan, and all instruments issued in connection therewith in distributions to be made, the Debtor's Estate and Reorganized Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local, foreign taxing authority, and all Cash Distributions hereunder shall be subject to any such withholding and reporting requirements.

### J.    Severability of Plan Provisions

If any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### K.    Governing Law

EXCEPT TO THE EXTENT THAT THE BANKRUPTCY CODE OR BANKRUPTCY RULES OR OTHER FEDERAL LAWS ARE APPLICABLE, AND SUBJECT TO THE PROVISIONS OF ANY CONTRACT, INSTRUMENT, RELEASE, INDENTURE OR OTHER AGREEMENT OR DOCUMENT ENTERED INTO IN CONNECTION WITH THE PLAN, INCLUDING, WITHOUT LIMITATION, THE PLAN DOCUMENTS, THE CONSTRUCTION, IMPLEMENTATION AND ENFORCEMENT OF THE PLAN AND ALL RIGHTS AND OBLIGATIONS ARISING UNDER THE PLAN SHALL BE GOVERNED BY, AND CONSTRUED AND ENFORCED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF FLORIDA, WITHOUT GIVING EFFECT TO CONFLICTS OF LAW PRINCIPLES THAT WOULD APPLY THE LAW OF A JURISDICTION OTHER THAN THE STATE OF FLORIDA OR THE UNITED STATES OF AMERICA.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

**L.     Notices**

All notices, requests and demands and other communications to the Debtor, including any objections to the Disclosure Statement, shall be in writing and shall be delivered in person or by courier, U.S. Mail (postage prepaid) or by facsimile transmission to:


Lexi Development Company, Inc.                  <u>With copies to</u>:
Attn: Scott Greenwald, President                Peter D. Russin, Esq.
7301 SW 57 Ct, Ste 565                          Joshua W. Dobin, Esq.
South Miami, FL 33143                           Meland Russin & Budwick, P.A.
                                                3200 Southeast Financial Center
                                                200 South Biscayne Boulevard
                                                Miami, Florida 33131


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3200 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363

## ARTICLE XIV
## <u>RECOMMENDATION</u>

The Debtor recommends that Creditors carefully consider and review this Plan. The Debtor believes that the Plan provides Creditors with the greatest possible value that could be realized on their Claims. There are several alternatives to confirmation of the Plan including liquidation of the Debtor under chapter 7 of the Bankruptcy Code, in which event the Debtor believes that Creditors would receive less than they will under the Plan.

For the reasons set forth above, the Debtor believes that the Distributions to each impaired Class under the Plan will be greater than distributions that might be received under a chapter 7 liquidation. The Debtor recommends that each Creditor vote to accept the Plan.

Dated: June 18, 2019.

Lexi Development Company, Inc.
a Florida corporation

By: _____
Scott A. Greenwald
Its:    President

Efiled by:    s/ Peter D. Russin
Peter D. Russin, Esquire
Florida Bar No. 765902
prussin@melandrussin.com
Joshua W. Dobin, Esquire
Florida Bar No. 93696
jdobin@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221
*Attorneys for Debtor*

33

## SUMMARY OF FEASIBILITY AND LIQUIDATION ANALYSIS

| Assets | Reorg. Value | Liquid. Value |
|---|---|---|
| Residential Real Property (Note 1) (2 of 164 of Units remaining) | $ 860,000.00 | $ 800,000.00 |
| Less: assessment costs re Residential (Note 4) | $ (74,410.00) | $ (74,4100.00) |
| Less: commissions and closing costs due at closing re Residential (Note 2) | $ (64,500.00) | $ (60,000.00) |
| Commercial Real Property (2 units) (Note 3) | $ 7,000,000.00 | $ 6,000,000.00 |
| Less: assessment costs re Commercial (Note 4) | $ (425,000.00) | $ (425,000.00) |
| Less: commissions and closing costs due at closing re Commercial (Note 5) | $ (350,000.00) | $ (300,000.00) |
| Cash on Hand – as of May 31, 2019 | $ 14,732.55 | $ 14,732.55 |
| Deposits re Residential (Note 6) | $ 340,605.00 | $ 340,605.00 |
| Third Party Litigation Claims Recovery (unknown) | $ 0.00 | $ 0.00 |
| Total Assets Available | $ 7,726,427.55 | $ 6,720,927.55 |
| **Liabilities** | **Reorg. Value** | **Liquid. Value** |
| Administrative Expense Claims: (Note 7) | $ 2,400,000.00 | $ 2,350,000.00 |
| Class 1: Miami-Dade County Tax Collector –est. (Note 8) | $ 0.00 | $ 0.00 |
| Class 2: Secured Lender (Note 9) | $ 3,600,000.00 | $ 3,600,000.00 |
| Class 3: Condominium Association | $ 184,146.83 | $ 184,146.83 |
| Class 4: Allowed 365(j) (Note 10) | $ 0.00 | $ 0.00 |
| Class 5: Priority Deposit Claims (Note 11) | $ 340,605.00 | $ 340,605.00 |
| Class 6: General Unsecured Claims (Note 12) | $ 13,950,000.00 | $ 13,950,000.00 |
| Class 7: Scott Greenwald's Unsecured Claim | $ 789,363.00 | $ 789,363.00 |
| Class 8: Equity Interests | $ 0.00 | $ 0.00 |
| Chapter 7 Trustee Expenses (Note 13) | $ 0.00 | $ 275,000.00 |
| **Total Liabilities** | **$ 21,264,114.80** | **$ 21,489,114.80** |
| **Total Assets** | **$ 7,726,427.55** | **$ 6,720,927.55** |
| **Total Liabilities** | **$ 21,264,114.80** | **$ 21,489,114.80** |
| | **$ (13,537,687.20)** | **$ (14,768,187.20)** |

**EXHIBIT B**

**Purpose of Liquidation Analysis**

This liquidation analysis (the "Analysis") was prepared solely for the inclusion in the Disclosure Statement in compliance with the United States Bankruptcy Code. The Analysis involves estimating the proceeds that are expected to be generated in the liquidation of the assets of the Estate and reducing such amount by the secured claims, costs of liquidation, post-confirmation administrative claims, administrative expenses and priority claims, to arrive at estimated net proceeds available for distribution to unsecured creditors. The Analysis is based on the assumptions discussed in the notes below.

**Estimates of Liquidation Value**

The Analysis is an estimate of the proceeds that the Debtor believes will be generated as a result of the liquidation of its Assets on June 18, 2019 (the "Analysis Date") and is based on the information available as of the date thereof. The information presented is not prepared in accordance with generally accepted accounting principles and has not been subject to any compilation, review or audit procedures by an independent accounting firm. No independent evaluation or appraisal of the Assets has occurred. The various estimates of value presented in this Analysis apply to this purpose only and may not be used out of the context presented herein.

Principally, values are based on financial information included in the Disclosure Statement, the petition for relief, bankruptcy schedules and statement of financial affairs (the "Schedules"), the Debtor's independent evaluation of its financial condition, the Debtor's monthly financial reports filed with the Bankruptcy Court, certain of the Debtor's financial records and pleadings and other filings with the Bankruptcy Court.

The estimates of liquidation value do not purport to reflect appraisals, or necessarily reflect the actual market value which may be realized if assets are sold. The Analysis is premised on various estimates and assumptions that are inherently subject to significant economic, competitive and operational uncertainties and contingencies that are difficult to predict and are beyond the control of the Debtor. The validity of the assumptions may be affected by the occurrence of events or the existence of conditions not now contemplated or by other factors, and there can be no assurance that the assumptions and estimates employed in determining the liquidation value of the Assets will result in an accurate estimate of the proceeds that would be realized in an actual liquidation. Additional information may become available after the date of this Analysis that could result in materially different values for certain assets and liabilities. Consequently, the estimates of value presented herein should not be regarded as a representation or warranty that the estimated liquidation values will be realized, and actual liquidation values of the Assets could vary.

## Reservation of Rights

The Debtor reserves all of its rights in connection with the estimated values of recoveries as set forth herein and the ability to pursue additional claims and causes of action and objections to claims. This analysis shall not be deemed a waiver of or estoppel in connection with such rights.

## NOTES

Note 1:     For Reorganization Value, this value is calculated based on the closing of the remaining 2 units at the market adjusted price of $248/sq.ft., subject to an appraisal.

For Liquidation Value, this value is calculated based on the closing of the remaining 2 units as a distressed sale at a discounted price of $231/sq.ft., subject to an appraisal.

Note 2:     For Reorganization Value, the calculation is based on a 6% commission and 1.5% for closing costs on the sales of the remaining 2 units at the market and adjusted price of $248/sq.ft.

For Liquidation Value, the calculation is based on a 6% commission and 1. 5% for closing costs on the sales of the remaining 2 units as a distressed short sale at a discounted price of $231/sq.ft.

Note 3:     For Reorganization Value, this value is calculated based on the closing of the retail unit at the market adjusted price of $333/sq.ft., and the outparcel at $500,000.00, subject to an appraisal.

For Liquidation Value, this value is calculated based on the sale as a distressed sale at a discounted rate of $290/sq.ft., and the outparcel at $350,000, subject to an appraisal.

Note 4:     For Reorganization Value, this value reflects the pending anticipated association assessment for construction and renovation.

For Liquidation Value, this value reflects pending anticipated association assessment for construction and renovation.

Note 5:     For Reorganization Value, the calculation is based on a 4% commission and 1% for closing costs on the sale of the retail units plus leasing commissions on the retail space.

For Liquidation Value, the calculation is based on a 4% commission and 1% for closing costs on the sale of the retail units as a distressed sale.

Note 6:     For both Reorganization Value and Liquidation Value, the deposit calculation

reflects the retention of the entire deposit amounts based on Purchaser defaults.

Note 7:        Expenses consist of the anticipated fees and costs of the Debtor's professionals through the Effective Date of the Plan, including U.S. Trustee fees.

Note 8:        Real estate taxes will continue to be paid out of Unit closings as they occur.

Note 9:        Secured claim of Marquis Bank.

Note 10:       The Debtor does not anticipate rejecting any purchase and sale agreements and in that event there would be no Allowed 11 U.S.C. §365(j) Claims.

Note 11:       This amount was calculated by taking the balance of deposits currently held.

Note 12:       General Unsecured Claims include any claim Regions may have as a result of the Order Granting Regions' Entitlement to Attorney's Fees and Costs Against Lexi [ECF No. 561] but in an unliquidated amount as the Court has not yet determined any amount and as the Debtor has reserved all of its rights to challenge the entitlement, including, without limitation, all re-hearing and appellate rights.

Note 13:       This amount is comprised of the Chapter 7 Trustee's statutory fee formula under section 326 of the Bankruptcy Code and is calculated based on the expected disbursements in a Chapter 7 case, as well as an additional estimated $50,000.00 for the administrative professional fees of the Chapter 7 trustee.

The Lexi - SUMMARY

| RESIDENTIAL INVENTORY | UNITS | | Sq Ft | Avg Size | $ PSF | PRICE | $ UNIT |
|---|---|---|---|---|---|---|---|
| NON-LEASED UNITS | 1 | | 1,735 | 1,735 | $248 | $430,000 | 430,000 |
| LEASED UNITS | 1 | | 1,735 | 1,735 | $248 | $430,000 | 430,000 |
| TOTAL RESIDENTIAL UNITS | 2 | | 3,470 | 1,735 | $248 | $860,000 | 430,000 |

| COMMERCIAL UNITS | | | | | | |
|---|---|---|---|---|---|---|
| Retail Value | 1 | 20,000 | | $325 | $6,500,000 |
| Outparcel Value | 1 | | | | $500,000 |
| COMMERCIAL UNITS | 2 | | | | $7,000,000 |

| TOTAL VALUE | | | | | $7,860,000 |
|---|---|---|---|---|---|

| CAPITAL STRUCTURE | Interest Rate | Balance |
|---|---|---|
| MAMI DADE TAX COLLECTOR * | | |
| SECURED NOTE -** | 4.500% | $3,600,000 |
| ADMINISTRATIE AND  CONDOMINIUM ASSOCIATION | | $2,500,000 |
| GENERAL UNSECURED CLAIMS | | $13,950,000 |

THE FOLLOWING ANALYSIS IS BASED ON PROJECTED INCOME AND EXPENSES.

**EXHIBIT C**

**PROPERTY DESCRIPTION AND ASSUMPTIONS**

| Residential Space | Units | Average Per Unit | |
|---|---|---|---|
| Existing Rental Income | 1 | $3,400 | $3,400 |
| Average Sales Tax - Rentals Monthly | | | $250 |
| Residential Condo Fees | 2 | $877 | $1,753 |
| Average Sale Price | | | $430,000 |
| Residential Assesment | | | $74,410 |
| Closing Costs & R.E. Comm. - Year 1 | | | 7.50%  (6% RE Comm,  1.75% Closing) |
| Residential Assesment - Monthly | | | $760 |
| **Retail Space** | | | |
| Total Existing | | | 19,500 |
| Currently Leased | | | 17,850 |
| Current Monthly  Gross Rent | | | $50,000 |
| Retail Space - Under Construction | | | 1,650 |
| Retail Assesment | | | $425,000 |
| Retail Condo Fees - Monthly | | | $9,635 |
| Retail Assesment - Monthly | | | $4,323 |
| Closing Costs & R.E. Comm. - Year 1 | | | 5.00%  (4% RE Comm,  1% Closing) |

| Year 1 - Income and Expenses | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 | Total Year 1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Rental Income** | | | | | | | | | | | | | |
| **Residential Rents** | 3,400 | 3,400 | 3,400 | 3,400 | 3,400 | 3,400 | 3,400 | 3,400 | 3,400 | 3,400 | 3,400 | 3,400 | 40,800 |
| **Retail Rents** | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 50,000 | 600,000 |
| **Total Rental Income** | 53,400 | 53,400 | 53,400 | 53,400 | 53,400 | 53,400 | 53,400 | 53,400 | 53,400 | 53,400 | 53,400 | 53,400 | 640,800 |
| Less: | | | | | | | | | | | | | |
| **Rental Expenses** | | | | | | | | | | | | | |
| **Administrative** | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| **Average Sales Tax - Rentals** | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 3,000 |
| **Condo Fees Payment** | 16,472 | 16,472 | 16,472 | 16,472 | 16,472 | 16,472 | 16,472 | 16,472 | 16,472 | 16,472 | 16,472 | 16,472 | 197,660 |
| **Total Rental Expenses** | 17,722 | 17,722 | 17,722 | 17,722 | 17,722 | 17,722 | 17,722 | 17,722 | 17,722 | 17,722 | 17,722 | 17,722 | 212,660 |
| **Net Rental Income** | 35,678 | 35,678 | 35,678 | 35,678 | 35,678 | 35,678 | 35,678 | 35,678 | 35,678 | 35,678 | 35,678 | 35,678 | 428,140 |

| Year 1 | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 | Total Year 1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Sales Income** | | | | | | | | | | | | | |
| **Residential Sales** | - | - | - | - | - | - | - | - | - | - | - | 860,000 | 860,000 |
| **Retail Sales** | - | - | - | - | - | - | - | - | - | - | - | 7,000,000 | 7,000,000 |
| **Residential Sales** | - | - | - | - | - | - | - | - | - | - | - | 7,860,000 | 7,860,000 |
| **Cost of Sales** | | | | | | | | | | | | | |
| **Pending Assesments Paid at Closing** | - | - | - | - | - | - | - | - | - | - | - | 499,410 | 499,410 |
| **Real Estate Taxes Paid at Closing** | - | - | - | - | - | - | - | - | - | - | - | 33,000 | 33,000 |
| **Closing Costs & R.E. Comm.  Residential Estimated @ 7.5%** | - | - | - | - | - | - | - | - | - | - | - | 64,500 | 64,500 |
| **Closing Costs & R.E. Comm. Retail Estimated @ 5.0%** | - | - | - | - | - | - | - | - | - | - | - | 350,000 | 350,000 |
| **Total Cost of Sales** | - | - | - | - | - | - | - | - | - | - | - | 946,910 | 946,910 |
| **Net Sales Proceeds** | - | - | - | - | - | - | - | - | - | - | - | 6,913,090 | 6,913,090 |

| Year 1 - Total Income and Expenses | | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 | Total Year 1 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Total Income and Expenses** | | | | | | | | | | | | | | |
| Rental Income | | 53,400 | 53,400 | 53,400 | 53,400 | 53,400 | 53,400 | 53,400 | 53,400 | 53,400 | 53,400 | 53,400 | 53,400 | 640,800 |
| Sales Income | | - | - | - | - | - | - | - | - | - | - | - | 7,860,000 | 7,860,000 |
| Total Projected Income | | 53,400 | 53,400 | 53,400 | 53,400 | 53,400 | 53,400 | 53,400 | 53,400 | 53,400 | 53,400 | 53,400 | 7,913,400 | 8,500,800 |
| | | | | | | | | | | | | | | |
| **Expenses** | | | | | | | | | | | | | | |
| Total Rental Expenses | | 17,722 | 17,722 | 17,722 | 17,722 | 17,722 | 17,722 | 17,722 | 17,722 | 17,722 | 17,722 | 17,722 | 17,722 | 212,660 |
| Total Costs of Sales | | - | - | - | - | - | - | - | - | - | - | - | 946,910 | 946,910 |
| Professional Fees | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| Attorney Fees | | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 30,000 |
| Interest on Secured Note | | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 18,000 | 216,000 |
| U.S. Trustee Fees | | 4,875 | - | - | 4,875 | - | - | 4,875 | - | - | 4,875 | - | - | 19,500 |
| Total Expenses | | 44,097 | 39,222 | 39,222 | 44,097 | 39,222 | 39,222 | 44,097 | 39,222 | 39,222 | 44,097 | 39,222 | 986,132 | 1,437,070 |
| | | | | | | | | | | | | | | |
| Net Projected Income | | 9,303 | 14,178 | 14,178 | 9,303 | 14,178 | 14,178 | 9,303 | 14,178 | 14,178 | 9,303 | 14,178 | 6,927,268 | 7,063,730 |

| Capital Structure | Balance | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Secured Note | $3,600,000 | $3,600,000 | $3,600,000 | $3,600,000 | $3,600,000 | $3,600,000 | $3,600,000 | $3,600,000 | $3,600,000 | $3,600,000 | $3,600,000 | $3,600,000 | $0 | $0 |
| Administrative Claims and Condominium | $2,500,000 | $2,500,000 | $2,500,000 | $2,500,000 | $2,500,000 | $2,500,000 | $2,500,000 | $2,500,000 | $2,500,000 | $2,500,000 | $2,500,000 | $2,500,000 | $0 | |
| General Unsecured Claims | $13,950,000 | $13,950,000 | $13,950,000 | $13,950,000 | $13,950,000 | $13,950,000 | $13,950,000 | $13,950,000 | $13,950,000 | $13,950,000 | $13,950,000 | $13,950,000 | $12,986,270 | 12,986,270 |

The Lexi -

| YEAR END INVENTORY / CAPITAL PAYMENTS | Initial | Year 1 |
|---|---|---|
| Remaining Unsold Units | 2 | - |
| Remaining Residential Value | $860,000 | $0 |
| Plus Retail Value | $7,000,000 | $0 |
| Total Value | $7,860,000 | $0 |
| Secured Note Balance | $3,600,000 | - |