UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:

LEXI DEVELOPMENT COMPANY, INC.,

      Debtor.

_____/

Case No. 10-27573-AJC

Chapter 11

## REGIONS' OBJECTION TO CONFIRMATION[1]

Pursuant to 11 U.S.C. §§ 1128(b) and 1129(a), and Fed. R. Bankr. P. 3020(b), Regions objects to the confirmation of Lexi's Fourth Amended Plan of Reorganization (ECF No. 433) ("Plan"). The Plan violates §§ 1129(a)(3) and 1129(b)(2)(B)(ii) as lacking in good faith and permitting Lexi's shareholders to retain equity in violation of the absolute priority rule. In support of its objection, Regions would show the Court as follows:

1.      Regions holds an unsecured claim (amount pending determination) against the Estate for reasonable attorney's fees and costs in defending against Lexi's facially time-barred Crossclaim. *See* Order Granting Regions' Entitlement to Attorney's Fees and Costs Against Lexi dated May 7, 2019; NBV Adversary, ECF No. 561 ("Lexi Fee Order").

2.      The Plan proposes to pay all unpaid attorney's fees and costs incurred by Lexi in litigation and appeals exceeding $2 million. Plan at 9. These include substantial fees and costs for Lexi's filing a baseless Crossclaim against Regions and Lexi's counsel's gratuitous and unnecessary participation in NBV's trial against Regions, despite Lexi's having stipulated to

---

[1] "Regions" is Regions Bank; "Lexi" is Lexi Development Company, Inc.; "NBV" is NBV Loan Acquisition, LLC. Other capitalized terms are as defined in the Court's Findings of Fact and Conclusions of Law in NBV's adversary, Adv. Pro. 16-01754-AJC. All emphasis and brackets are added.

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

judgment within the first few minutes of the trial's beginning.  *See* NBV Adversary, ECF No. 564. Regions will separately file an objection to Lexi's Final Fee Application (ECF No. 446) ("Fee Application").

3.      The Plan further groups all allowed unsecured claims, consisting primarily of NBV's claim of $14,629,325, representing outstanding principal and interest on the GFB-Lexi Loan, and Regions' claim for fees and costs, in Class 6.  *See* Plan at 13-14.  Unsecured creditors will be paid only after payment in full of administrative expenses and Classes 2-5.  *Id.*  NBV's claim should be equitably subordinated to Regions' and other unsecured creditors' claims under § 510(c)(1).  As the Court found following trial in the NBV Adversary, NBV's claim was "contrived" by Allen and Scott, "[the] opportunistic obligor and guarantor" of the GFB-Lexi Loan. *See* NBV Adversary, ECF No. 563 ("Opinion") at 48.  Moreover, Allen (with Scott's assistance) formed NBV to conceal Allen's purchase of his family debt from FCB, *see id.* at 37-40, with the intent of abandoning any efforts to collect from the Greenwald family (the primary obligor and guarantors on the GFB-Lexi Loan) and instead from Regions, "or not at all."  *Id.* at 41.  Based on its inequitable conduct, NBV's claim should be subordinated to Regions' claim and claims of any other unsecured creditors.

4.      Finally, the Plan violates the absolute priority rule by permitting shareholders to retain equity interests even if creditors are not paid in full.  11 U.S.C. § 1129(b)(2)(B)(ii).

## Plan Not Proposed in Good Faith

### A.      Administrative Expenses Are Unreasonable

5.      Section 1129(a)(4) requires administrative expenses to be reasonable.  Regions will more specifically detail the unreasonable nature of Lexi's request for administrative expenses in a separate objection to the Fee Application, but in summary, Lexi's counsel seeks millions in fees

2

and costs incurred for prosecuting a Crossclaim clearly and facially time-barred and unnecessarily attending the 11 day trial of NBV's claim against Regions.  Lexi's counsel (at all times one partner, and at many times, two partners) attended the trial despite having stipulated to entry of judgment on NBV's claim against Lexi within minutes of the first day.  Moreover, the putative NBV-Lexi dispute was never real; it was first pled in state court together with the Crossclaim to enable Lexi to remove the NBV-Regions dispute and the Crossclaim to this Court, where NBV and Lexi perceived (wrongly it turns out) they would have home-court advantage.  This misconduct should not be rewarded.

6.     According to the Fee Application, $1,235,014.50 of the $1,944,628.50 in fees requested—or approximately 64% of the total administrative expense claim—was incurred on the Crossclaim and NBV's claim against Regions.  *See* Fee Application at 6-7.  This equates to 2,903.6 of the 4,388.9 hours expended by Lexi's counsel on the entire case (or more than 66% of the total hours).  The grand result of this effort:  Lexi's Crossclaim—filed more than 7 years and 8 months after accrual—was dismissed with prejudice as facially time-barred (NBV Adversary, ECF No. 187), and NBV (even with assistance of Lexi's counsel) failed to present "a scintilla of evidence" of any damages caused by Regions' breach.  *See* Opinion at 3.  Having been an integral part of NBV's "contrived claim," *id*. at 48, Lexi's counsel should not be rewarded with fees and costs incurred in the frivolous endeavor.

7.     Lexi is obligated to pay reasonable fees and costs incurred by Regions in connection with the Crossclaim.  *See* Lexi Fee Order at 2.  Having filed an untenable claim, and incurred wholly unnecessary fees and costs on NBV's claim against Regions, Lexi's counsel should not  be permitted to recover Estate assets to Regions' detriment.  *See In re Worldwide Direct, Inc.*, 334

3

B.R. 112, 132-33 (Bankr. D. Del. 2005) (disallowing attorney's fees incurred by noteholders' independent counsel duplicating work by committee counsel).

**B.      NBV's Claim Should Be Equitably Subordinated**

8.      Section 510(c)(1) permits the Court to "subordinate for the purposes of distribution all or part of an allowed claim to all or part of another allowed claim."  Equitable subordination is appropriate where: (1) the claimant has engaged inequitable conduct; (2) injuring other creditors or providing unfair advantage to the claimant; and (3) subordination is not inconsistent with bankruptcy law.  *Matter of Lemco Gypsum, Inc.*, 911 F.2d 1553, 1556 (11th Cir. 1990); *In re Holywell Corp.*, 913 F.2d 873, 880 (11th Cir. 1990); *In re Eddy*, 572 B.R. 774, 781 (Bankr. M.D. Fla. 2017).  The doctrine applies "even when a claim has apparent legal validity."  *In re Colony Beach & Tennis Club, Ltd.*, 578 B.R. 909, 916 (Bankr. M.D. Fla. 2017) (citations omitted).

9.      Where the claimant is an insider, the Court must subject the conduct "to special scrutiny, examining [it] with a large measure of watchful care."  *Eddy*, 572 B.R. at 781 (citing *Lemco Gypsum*).  Once material evidence of unfair conduct is presented, the burden shifts to the claimant "to prove both good faith and the fairness of its dealings or the claim *will be* equitably subordinated."  *Id.* at 581-82 (italics in original) (citing *Lemco Gypsum*); *Holywell Corp.*, 913 F.2d at 880-81.

*(i)      NBV is an insider of Lexi*

10.     The Code defines "insiders" of a corporate debtor to "include[]":

(i)      director of the debtor;
(ii)     officer of the debtor;
(iii)    person in control of the debtor;
(iv)    partnership in which the debtor is a general partner;
(v)     general partner of the debtor; or
(vi)    relative of a general partner, director, officer, or person in control of the debtor.

4

11 U.S.C. § 101(31)(B).  Allen, Scott's father, is a statutory insider of Lexi, at the very least under (vi).[2]

11.     The Code's use of "includes" in defining "insider" "is not limiting" but intended as "illustrative rather than exhaustive."  *In re U.S. Medical, Inc.*, 531 F.3d 1272, 1276 (10th Cir. 2008) (quoting *In re Kunz*, 489 F.3d 1072, 1078 (10th Cir. 2007)).  Because NBV is Allen's alter ego, NBV is also an insider of Lexi.  Under Florida law, courts will disregard the entity form if it "is a mere device or sham to accomplish some ulterior purpose, or is a mere instrumentality or agent of another corporation or individual owning all or most of its stock, or where the purpose is to evade some statute or to accomplish some fraud or illegal purpose."  *Eckhardt v. U.S.*, 463 Fed. Appx. 852, 855 (11th Cir. 2012) (quoting *Aztec Motel, Inc. v. Faircloth*, 251 So. 2d 849, 852 (Fla. 1971)).  Piercing the veil requires:

(1)     the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence was in fact non-existent and the shareholders were in fact alter egos of the corporation;

(2)     the corporate form must have been used fraudulently or for an improper purpose; and

(3)     the fraudulent or improper use of the corporate form caused injury to the claimant.

*Id.* at 855-56 (quoting *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008)).

12.     NBV is a single member LLC wholly owned and controlled by Allen from inception.  Opinion at 39.  Another important factor for veil-piercing is "whether corporate funds were used for the individual's benefit," *id.* at 856 (citing *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1120 (Fla. 1984)).  As the Court found, the sole purpose for Allen's forming and

---

[2]  Allen owns or controls 17.648% of Lexi's shares representing his own interest and that of his wife's estate.

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

funding NBV was to enable him to surreptitiously acquire his family debt and FCB's litigation claims against Regions.  Opinion at 37-40.

13.    The Court has already found the latter two elements for veil-piercing, discussed in more detail below.

> ### (ii)    *NBV's inequitable conduct*

14.    For subordination purposes, "inequitable conduct"

> may be lawful, yet shocks one's good conscience ... a secret or open fraud ... an unjust enrichment, not ... by astuteness or business acumen, but enrichment through another's loss brought about by one's own unconscionable, unjust, unfair, close or double dealing or foul conduct.

*Eddy*, 572 B.R. at 782 (quotations omitted; ellipses in original).

15.    The Court has already noted the "bad smell" emanating from Allen's formation and use of NBV to conceal his acquisition of the family debt from FCB.  *See* Opinion at 40.  NBV based its damage theory against Regions on the core allegation that the GFB-Lexi Loan was uncollectible.  *See* NBV Adversary, ECF No. 1-200 at ¶ 78 (had Regions sent timely notice letters to GFB, "the [GFB-Lexi Loan] would have been paid.").  This Court resoundingly rejected this averment:

> Although Allen can certainly collect the GFB-Lexi Loan from himself and his family, he has decided to waive those rights and seek collection from Regions, or not at all.  "Not at all" is the result here.
>
> The GFB-Lexi Loan is not uncollectible; it is merely in the hands of an opportunistic obligor and guarantor who has contrived this claim.  The Court concludes the equities of this case lie with Regions Bank.

Opinion at 48.

16.    Allen misused NBV to fraudulently purchase his family debt.  Although Allen was NBV's control person from inception, Scott and Allen concealed this from FCB to provide "better bargaining ability in its purchase of the [GFB-Lexi Loan]."  *Id.* at 37-38 (quoting Scott) (brackets

6

in original).  Allen retained Salpeter to form NBV in Delaware, which permits anonymous LLCs,

and NBV Member in Florida, which was NBV's sole member.  Salpeter was the "strawman"

purportedly acting as  "authorized agent" for NBV and sole member/manager of NBV Member.

17.    On December 29, 2015, FCB moved to substitute NBV as party-plaintiff in the

NBV Adversary (then pending in state court), as substituted-creditor in Lexi's bankruptcy, and as

defendant/cross-plaintiff in the North Bay Adversary.  *See* Stipulation for Substitution of Party

(ECF No. 272 at 4) (Salpeter signing for NBV "As its sole Manager; Friedman signing for FCB).

18.    North Bay opposed substitution because, among other grounds, "FCB has not

disclosed if the proposed 'new' party NBV Loan Acquisition, LLC is an insider of the Debtor."

*Id*. at ¶ 12(b); North Bay Adversary, ECF No. 226 at ¶ 2.  At the January 14, 2016 hearing,

Friedman, representing both FCB and NBV, stated to the Court that North Bay's opposition "takes

the form of, 'Well, wait a second, there's discovery pending as to FCB, and perhaps there's an

insider transaction going on here,' and for that reason they opposed substitution."  *See* 1/14/16

Hrg. Tr. at 6:20-25.  However, Friedman carefully avoided the subject of an insider transaction,

and did not disclose to the Court or the creditor-body that NBV was, in fact, Allen.

19.    NBV (through Friedman) also did not disclose that eight days earlier, NBV had

signed (but withheld filing with the Florida Secretary of State) articles of amendment to NBV

Member's Florida filing, replacing Allen for Salpeter as member and manager.  Opinion at 40.

20.    NBV and its counsel misled the Court that NBV was an arm's-length third-party

purchaser of FCB's position, with no affiliation with the Estate.  Five days after the Court orally

granted substitution at the hearing, with Allen no longer needing subterfuge, Salpeter filed the

NBV Member amendment and Allen's status with NBV became public knowledge, leading the

Court to observe that "[t]here appears to be a bad smell here."  *Id.*

7

21.    Salpeter confirmed his strawman role, testifying that he had only been involved "[v]ery tangentially" with the FCB purchase negotiations, and "had little to nothing" to do with the purchase, and "was pretty much told what the terms would be." *Id.* at 38.

22.    Subordination is not limited to the manner in which the claim was initially acquired, "but may arise out of any unfair conduct." *Eddy*, 572 B.R. at 782-83.  The proper focus, then, is not on GFB's conduct in making the GFB-Lexi Loan, but on NBV's conduct in acquiring it.

### (iii)        *Injury to other creditors or unfair advantage to NBV*

23.    NBV was never damaged through an inability to collect the GFB-Lexi Loan.  As the Court found (and Allen admitted), NBV could have collected the loan from the Greenwald family, who collectively received about $16.5 million from their interest in two shopping centers *Id.* at 40-41.  As the Court readily found, the doctrine of avoidable consequences precluded NBV's damages claim against Regions.  *Id.* at 45-48.

24.    The conduct of NBV and Lexi in contriving the claim against Regions, and of Allen (with Scott's assistance) in forming NBV to fraudulently conceal Allen's purchase of the family debt, has both harmed Lexi's creditors (by substantially increasing the claims against the Estate that have always been collectible from the obligor and guarantors)[3] and given NBV/Allen an unfair advantage by permitting NBV to recover at least a *pro rata* portion of its claim while producing Regions' claim, which only exists because of their unfair conduct.

### (iv)        *Not inconsistent with bankruptcy law*

25.    The majority of courts have ruled that Congress' enactment of § 510 to the Bankruptcy Code moots or substantially minimizes the third element.  *Eddy*, 572 B.R. at 783

---

[3]  Had Allen caused NBV to look to Allen and the Greenwald family for repayment, the claim would have been repaid in full and claims against the Estate would have been reduced by more than $14 million.

8

(citations omitted). In any event, § 510(c) expressly authorizes the equitable subordination of claims, "which clearly makes the concept 'consistent with bankruptcy law.'" *Id.*

    **C.**    **Plan Violates Absolute Priority Rule**

    26.    Section 1129(b)(1) requires Lexi, as Plan proponent, to demonstrate that the Plan does not discriminate unfairly and is "fair and equitable" to each impaired class that does not accept the Plan.[4] The "fair and equitable" standard includes the absolute priority rule, which states:

    (B)    With respect to a class of unsecured claims—

        (i)    the plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

        (ii)    the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property ….

11 U.S.C. § 1129(b)(2)(B). Thus, "each senior class of claims or interests [must] be fully satisfied before any junior class of claims or interests could participate in the reorganization." *In re SM 104 Ltd.*, 160 B.R. 202, 221 (Bankr. S.D. Fla. 1993).

    27.    The Plan discriminates unfairly and is not fair and equitable because it enables Lexi's shareholders to retain their equity in the reorganized entity. The "new value" exception to the absolute priority rule could never apply here because it permits equity holders to retain their respective interests only where three conditions are met: (1) the equity holders make a new monetary contribution for their shares; (2) the contribution must be necessary for the proposed reorganization; and (3) "the purchase price paid by old equity for some or all of the equity in the reorganized debtor must be reasonably equivalent to the value of the new equity; that is, old equity

---

[4] Lexi did not serve a copy of the Ballot on Regions. *See* ECF No. 442 at 2 and 21. Nonetheless, Regions will file a Ballot rejecting the Plan.

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

must pay a fair price for the right to participate in the reorganized debtor." *Id.* at 226-27. The Plan

provides for no "new value" for the equity interests, thereby violating the absolute priority rule.

## <u>CONCLUSION</u>

The Court should deny confirmation of the Plan.

Respectfully submitted,

**GARBETT, ALLEN & ROZA, P.A.**
*Counsel to Regions Bank*
Brickell City Tower, Suite 3100
80 S.W. 8th Street
Miami, Florida 33130
Tel:  (305) 536-8866

By:_____/s/ Brian P. Yates_____
       David S. Garbett, FBN 356425
       dgarbett@garlawfirm.com
       Philip A. Allen, III, FBN 338575
       pallen@garlawfirm.com
       Brian P. Yates, FBN 071257
       byates@garlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I certify that on July 24, 2019, a copy of the foregoing was electronically filed and furnished

via CM/ECF to all parties registered to receive service, including those listed on the service list

below.

/s/ Brian P. Yates

Joaquin J. Alemany, Esq. on behalf of BPNA and Bank Midwest, N.A.
joaquin.alemany@hklaw.com, jose.casal@hklaw.com

Jeffrey P. Bast, Esq. on behalf of The Lexi Condominium Association, Inc.
jbast@bastamron.com, jdepina@bastamron.com, kjones@bastamron.com,
jmiranda@bastamron.com, mdesvergunat@bastamron.com

Steven L Beiley, Esq. on behalf of Allen Greenwald
sbeiley@aspalaw.com, 5386491420@filings.docketbird.com

Paul M Botros, Esq. on behalf of The Lexi Condominium Association, Inc.
pmb@botroslawfirm.com

Julie S. Brady, Esq. on behalf of Fifth Third Bank
jsingerbrady@bakerlaw.com, mrios@bakerlaw.com

Ileana Cruz, Esq. on behalf of Creditor Miami-Dade County Tax Collector
cao.bkc@miamidade.gov

Joshua W. Dobin, Esq. on behalf of Lexi Development Company, Inc.
jdobin@melandrussin.com, ltannenbaum@melandrussin.com, mrbnefs@yahoo.com,
jdobin@ecf.courtdrive.com, ltannenbaum@ecf.courtdrive.com, phornia@ecf.courtdrive.com

Elizabeth Interthal, Esq. on behalf of Regions Bank
einterthal@gsarlaw.com, bibbe01@gmail.com

Morgan B. Edelboim, Esq. on behalf of Allen Greenwald, Amy S. Greenwald and Scott A.
Greenwald
morgan@elrolaw.com, eservice@elrolaw.com

Paul D. Friedman, Esq. on behalf of NBV Loan Acquisition, LLC
paul@friedmanfrost.com, service@friedmanfrost.com;alex@friedmanfrost.com

Anna M. Gamez, Esq. on behalf of BPNA and Bank Midwest, N.A.
annie.hernandezgamez@hklaw.com, maria.gonzalez@hklaw.com

Michael B. Green, Esq. on behalf of Lexi North Bay LLC
mgreen@gunster.com, virastorza@gunster.com

Laura F. Gross, Esq. on behalf of Lexi North Bay LLC
lauraf.gross@cemex.com, jhoppel@gunster.com

Zachary P. Hyman, Esq. on behalf of Suniland Associates, Ltd. and Stephen Bittel
zhyman@bergersingerman.com, clamb@bergersingerman.com, efile@bergersingerman.com,
efile@ecf.inforuptcy.com, efile@ecf.inforuptcy.com

Evan B. Klinek, Esq. on behalf of Creditor Marcia Sabates and Roland Sabates
evan.klinek@gmlaw.com, rene.vazquez@gmlaw.com

Andrew V. Layden, Esq. on behalf of Fifth Third Bank
alayden@bakerlaw.com, orlbankruptcy@bakerlaw.com, cmartin@bakerlaw.com

David H. Lichter, Esq. on behalf of Mediator David H. Lichter
dlichter@lichterlawfirm.com

GARBETT, ALLEN & ROZA, P.A., ATTORNEYS AT LAW
80 SOUTHWEST EIGHTH STREET, SUITE 3100, MIAMI, FLORIDA 33130 • TELEPHONE (305) 579-0012

Aleida Martinez Molina, Esq. on behalf of Creditor City of North Bay Village
amartinez@wsh-law.com, isevilla@wsh-law.com

Kenneth Mather, Esq. on behalf of Lexi North Bay, LLC
kmather@gunster.com, tkennedy@gunster.com, mweaver@gunster.com

Raymond V. Miller, Esq on behalf of Lexi North Bay LLC
rmiller@gunster.com, vyon@gunster.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Eric Ostroff, Esq. on behalf of Lexi Development Company, Inc.
eostroff@melandrussin.com, ltannenbaum@melandrussin.com, mrbnefs@yahoo.com,
eostroff@ecf.courtdrive.com, ltannenbaum@ecf.courtdrive.com, phornia@ecf.courtdrive.com

David L. Rosendorf, Esq. on behalf of Florida Community Bank
dlr@kttlaw.com, rcp@kttlaw.com, ycc@kttlaw.com

Peter D. Russin, Esq. on behalf of Lexi Development Company, Inc.
prussin@melandrussin.com, ltannenbaum@melandrussin.com, mrbnefs@yahoo.com,
prussin@ecf.courtdrive.com, ltannenbaum@ecf.courtdrive.com, phornia@ecf.courtdrive.com

Alexander A. Salinas, Esq. on behalf of NBV Loan Acquisition, LLC
alexander.salinas@squirepb.com

Lawrence M. Schantz, Esq. on behalf of 3rd Pty Defendant Allen Greenwald
lschantz@aspalaw.com

Melinda S. Thornton, Esq. on behalf of Creditor Miami-Dade County Tax Collector
cao.bkc@miamidade.gov

Brian P. Yates, Esq. on behalf of Regions Bank
byates@garlawfirm.com, emiller@garlawfirm.com, hcohen@garlawfirm.com,
gguzman@garlawfirm.com

12